**No. 24-1864**

United States Court of Appeals
for the Federal Circuit

APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION,
*Plaintiffs–Appellants*

EDWARDS LIFESCIENCES CORPORATION, EDWARDS LIFESCIENCES LLC,
*Plaintiffs*

v.

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

*Defendant-Appellee*

On Appeal from the United States District Court for the Northern District of California in No. 5:20-cv-06128-EJD, Judge Edward J. Davila

# BRIEF OF THE NATIONAL RETAIL FEDERATION, THE HIGH TECH INVENTORS ALLIANCE, THE ALLIANCE FOR AUTOMOTIVE INNOVATION, AND THE COMPUTER AND COMMUNICATIONS INDUSTRY ASSOCIATION AS AMICI CURIAE IN SUPPORT OF APPLE AND REVERSAL

Joseph Matal
CLEAR IP, LLC
800 17th St., NW Suite 500
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

Debra J. McComas
David L. McCombs
HAYNES AND BOONE, LLP
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
(214) 651-5375
Debbie.McComas@haynesboone.com
David.McCombs@haynesboone.com

*Counsel for Amici Curiae*

August 12, 2024

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for the National Retail Federation, the High Tech Inventors Alliance, the Computer and Communications Industry Association, and the Alliance for Automotive Innovation certifies that:

1. The full name of the parties that I represent are the National Retail Federation, the High Tech Inventors Alliance, the Computer and Communications Industry Association, and the Alliance for Automotive Innovation
2. There are no real parties in interest of the parties that I represent
3. There are no parent corporations or publicly held companies that own ten percent or more of the stock of the parties that I represent
4. No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the parties that I represent in the originating court or are expected to so appear in this Court
5. I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case
6. No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

August 12, 2024 /s/ *Joseph Matal*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTEREST OF AMICI CURIAE ..... viii

ARGUMENT ..... 1

I. *Fintiv* as applied eliminates access to PTAB review in multiple circumstances ..... 1

A. *Fintiv* was initially applied to deny review almost every time another tribunal set an early hearing ..... 2

1. The Western and Eastern Districts of Texas ..... 5

2. ITC proceedings ..... 7

3. Hatch-Waxman litigation ..... 8

B. A look behind the scenes: *Fintiv* is the product of top-down command rather than adjudicative discretion ..... 10

C. The current guidance confirms *Fintiv*'s outcome-determinative nature ..... 14

D. *Fintiv* negates substantive conditions of patentability and prejudices defendants ..... 20

II. Exempting *Fintiv* from rulemaking undermines the purposes of the APA ..... 24

CONCLUSION ..... 26

# TABLE OF AUTHORITIES

***Cases***

*General Elec. Co. v. E.P.A.*, 290 F.3d 377 (D.C. Cir. 2002)............................... 17, 20

*Heckler v. Chaney*, 470 U.S. 821 (1985)...............................................................24

*McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317 (D.C. Cir. 1988)................ 16

*National Mining Ass'n v. McCarthy*, 758 F.3d 243 (D.C. Cir. 2014) .......................24

*Public Citizen, Inc. v. U.S. Nuclear Regul. Comm'n*, 940 F.2d 679 (D.C. Cir. 1991) ............................................................................................................... 17

***Statutes***

21 U.S.C. § 355(c)(3)(C).............................................................................................8

21 U.S.C. § 355(j)(5)(B)(iii) .......................................................................................8

35 U.S.C. § 314(a).....................................................................................................23

35 U.S.C. § 314(b).......................................................................................................6

35 U.S.C. § 315(a)(11) ................................................................................................6

35 U.S.C. § 315(b)............................................................................................17, 18, 23

35 U.S.C.§ 315(e).......................................................................................................23

35 U.S.C. § 316(e).....................................................................................................23

37 C.F.R. § 42.107(b)...................................................................................................5

***PTAB Decisions***

*10x Genomics, Inc. v. President and Fellows of Harvard*, IPR2023-01299 (Mar. 7, 2024)..........................................................................................................17, 18

*10X Genomics, Inc. v. United Kingdom Research and Innovation et al.*, IPR2020-01467 (Feb. 22, 2021)........................................................................3

*3shape Trios A/S v. Densys Ltd.*, IPR2021-00236 (May 20, 2021)............................3

*Allergan, Inc. v. BTL Healthcare Techs. A.S.*, PGR2021-00016 (Jun. 17, 2021) .....7, 8

*Amazon.com, Inc. v. CustomPlay, LLC*, IPR2018-01498 (2019) .............................. 13

*Apple v. Fintiv*, IPR2020-00019 (May 13, 2020) ....................................................2

*Apple, Inc. v. Fintiv, Inc.*, IPR2020-00019 (Mar. 20, 2020).............................*passim*

*Boe Tech. Grp. Co., Ltd. v. Element Cap. Com. Co. Pte. Ltd.*, IPR2023-00808 (Nov. 15, 2023) ..............................................................................................17, 18

*Canadian Solar Inc. and Canadian Solar (USA) Inc. v. Solaria Corp.*, IPR2021-00659 (Sep. 30, 2021)..................................................................................7

*Cisco Sys., Inc. v. Estech Sys., Inc.*, IPR2021-00333 (Jul. 7, 2021) ............................14

*Cisco Sys., Inc. v. Monarch Networking Sols. LLC*, IPR2020-01226 (Mar. 4, 2021)..................................................................................................................3, 6

*Cisco Sys., Inc. v. Oyster Optics, LLC*, IPR2021-00319 (Jun. 8, 2021) ...................2, 5

*Cisco Sys., Inc. v. Ramot at Tel Aviv U. Ltd.*, IPR2020-00484 (Aug. 18, 2020) .........4

*Cisco Systems Inc. v. Ramot at Tel Aviv U. Ltd.*, IPR2020-00122 (May 15, 2020) ....................................................................................................................4

*Code200, UAB et al v. Luminati Networks Ltd.*, IPR2020-01358 (Feb. 2, 2021).... 3, 5

*Comcast Cable Commc'ns, LLC v. Rovi Guides, Inc.*, IPR2020-00800 (Oct. 22, 2020) ....................................................................................................................7

*Daiichi Sankyo, Inc. v. Seagen Inc.*, PGR2021-00042 (Jun. 24, 2021)................ 2, 4, 5

*Duplo U.S.A. Corp. v. MGI Digital Tech. S.A.*, IPR2023-00935 (Dec. 4, 2023) ...... 17

*Duplo U.S.A. Corp. v. MGI Digital Tech. S.A.*, IPR2023-00936 (Dec. 5, 2023) .17, 19

*EClinicalWorks, LLC v. Decapolis LLC*, IPR2022-00229, at 9 (PTAB Apr. 13, 2022) ............................................................................................................. 13

*Ericsson Inc. v. Godo Kaisha IP Bridge 1*, IPR2022-00726 (Nov. 2, 2022)...........18, 19

*Fitbit, Inc. v. Koninklijke Philips N.V.*, IPR2020-00771 (Oct. 19, 2020) ....................7

*Garmin Int'l, Inc. v. Koninklijke Philips N.V.*, IPR2020-00754, (Oct. 27, 2020)........7

*Google LLC f/k/a Google Inc. v. Ikorongo Technology LLC et al.*, IPR2021-00204 (Jun. 7, 2021) ..........................................................................2

*Google LLC v. Ecofactor, Inc.*, IPR2020-00968, (Nov. 18, 2020) ............................7

*Google LLC v. EcoFactor, Inc.*, IPR2021-00488 (Aug. 11. 2021)...............................3

*Google LLC v. Ikorongo Tech. LLC*, IPR2021-00204 (Jun. 7, 2021)......................... 13

*Google v. EcoFactor*, IPR2020-00968 (Nov. 18, 2020) ............................................2

*IBM Corp. v. Digital Doors, Inc.*, IPR2023-00967, IPR2023-00968 (Dec. 1, 2023)................................................................................................ 17

*IBM Corp. v. Digital Doors, Inc.*, IPR2023-00970 (Jan. 12, 2024).......................... 17

*IBM Corp. v. Digital Doors, Inc.*, IPR2023-00971, IPR2023-00969 (Dec. 5, 2023)................................................................................................ 17

*IBM Corp. v. Digital Doors, Inc.*, IPR2023-00972 (Jan. 11, 2024) .......................... 17

*Immersion Sys. LLC v. Midas Green Techs., LLC*, IPR2021-01176 (Jan. 6, 2022)..........................................................................................2, 14

*Immersion Sys. LLC v. Midas Green Techs., LLC*, PGR2021-00104 (Jan. 31, 2022)..........................................................................................2, 14

*KioSoft Techs., LLC et al v. PayRange Inc.*, CBM2020-00026 (Mar. 22, 2021).........2

*KISS Nail Prods., Inc. v. Lashify, Inc.*, PGR2021-00046 (Aug. 9, 2021) ...................7

*LG Elecs., Inc. v. Ancora Techs., Inc.*, IPR2021-00581 (Jun. 10, 2021) .......................3

*Mylan Laboratories Ltd. v. Janssen Pharmaceutica NV*, IPR2020-00440 (Sep. 16, 2020) .............................................................................................8

*Nokia of Am. Corp. and Ericsson Inc. v. Godo Kaisha Ip Bridge 1*, IPR2022-00755 (Nov. 2, 2022) ..........................................................................18

*NXP USA, Inc. v. Impinj, Inc.*, IPR2021-01556 (Sep. 7, 2022) .............................. 18

*NXP USA, Inc. v. Impinj, Inc.*, PGR2022-00005 (Aug. 25, 2022) .......................... 18

*Ocado Group plc v. AutoStore Tech. AS*, IPR2021-00274 (Jun. 3, 2021) ..................... 7

*OpenSky Indus., LLC v. VLSI Tech. LLC*, IPR2021-01064 (May 12, 2023) ........... 21

*Patent Quality Assurance, LLC v. VLSI Tech. LLC*, IPR2021-01229 (Jun. 13, 2023) ..................................................................................................... 21

*Philip Morris USA Inc. v. RAI Strategic Holdings Inc.*, IPR2020-00921 (Nov. 16, 2020) ..................................................................................................... 4

*Precision Planting, LLC v. Deere & Company*, IPR2019-01044 (2019) ..................... 13

*Regeneron Pharms., Inc. v. Novartis Pharma*, AG, IPR2020-01317 (Jan. 15, 2021) ..................................................................................................... 7, 8

*Roku, Inc. v. Ioengine*, LLC, IPR2022-01553 (May 5, 2023) .................................... 17

*Samsung Elecs. Co., Ltd. et al v. Clear Imaging Research, LLC*, IPR2020-01399 (Feb. 3, 2021) ..................................................................................................... 3

*Samsung Elecs. Co., Ltd. v. Cal. Inst. of Tech.*, IPR2023-00131 (May 4, 2023) ......... 18

*Samsung Elecs. Co., Ltd. v. Mojo Mobility Inc.*, IPR2023-01091 (Jan. 8, 2024) ......... 17

*Samsung Elecs. Co., Ltd. v. Mojo Mobility Inc.*, IPR2023-01096 (Feb. 6, 2024) ... 17, 18

*SharkNinja Operating LLC v. iRobot Corp.*, IPR2021-00544 (Jun. 25, 2021) ............ 7

*SK Innovation Co., Ltd. v. LG Chem, Ltd.*, IPR2020-01036, (Nov. 30, 2020) ........... 7

*Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019 (Dec. 1, 2020) .................... 15

*Sprint Spectrum L.P. v. Intellectual Ventures II LLC*, IPR2018-01770 (2019) ........... 13

*Stanley Black & Decker, Inc. et al v. Zircon Corp.*, IPR2020-01572 (Apr. 19, 2021) ..................................................................................................... 7

*TA Instruments-Waters LLC v. Malvern Panalytical Inc.*, IPR2021-00210 (May 27, 2021) ..................................................................................................... 3

*TCO AS v. NCS Multistage Inc.*, PGR2020-00077 (Feb. 18, 2021) .........................2

*Thorne Research, Inc. v. Trustees of Dartmouth College*, IPR2021-00491 (Aug. 12, 2021) ........................................................................................9, 14

*T-Mobile USA, Inc. v. Cobblestone Wireless LLC*, PGR2024-00136 (Jun. 5, 2024)..............................................................................................17

*Uber Techs., Inc. v. AGIS Software Dev. LLC*, IPR2021-010306 (Jan. 7, 2022) ... 9, 14

*Vector Flow, Inc. v. HID Global Corp.*, IPR2023-00353 (Jul. 17, 2023) .................... 17

*Verizon Bus. Network Servs. LLC v. Huawei Techs. Co. Ltd.*, IPR2020-01278 (Jan. 26, 2021) ......................................................................................3, 5

*Verizon Bus. Network Servs. LLC v. Huawei Techs. Co. Ltd.*, IPR2020-01290 (Jan. 25, 2021) ..........................................................................................3

*Zhuhai CosMX Battery Co., Ltd. v. Ningde Amperex Tech. Ltd.*, IPR2023-00585 (Oct. 24, 2023) ................................................................... 17

*Zhuhai CosMX Battery Co., Ltd. v. Ningde Amperex Tech. Ltd.*, IPR2023-00587 (Sep. 22, 2023) .................................................................17, 18

***Other Authorities***

157 Cong. Rec. S5429 (daily ed. Sep. 8, 2011).....................................................23

Britain Eakin, "Intel Hit With $949M Verdict In Latest VLSI Patent Fight," Law360, Nov. `5, 2022 ..................................................................................21

Britain Eakin, "West Texas Judge Says He Can Move Faster Than PTAB," Law360, Nov. 27, 2019...................................................................................6

Changes Under Consideration to Discretionary Institution Practices, Petition Word-Count Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board, 88 Fed. Reg. 24505 (Apr. 21, 2023)...........................................................22, 23

Comments of Amazon.com, Inc., Changes Under Consideration to Discretionary Institution Practices, Jun. 18, 2023....................................... 19, 22

Comments of the Association for Accessible Medicines, USPTO Request for Comments on Discretion to Institute Trials Before the Patent Trial and Appeal Board, Dec. 3, 2020 .......... 9

Dani Kass, "Reps. Tell Vidal She Is Overstepping with USPTO Power," Law360, Apr. 27 2023 .......... 25

H.R. Rep. No. 96-1307, 96th Cong. (1980) .......... 21

"Intel loses U.S. patent trial, ordered to pay $2.18 billion to VLSI Tech," Reuters, Mar. 2, 2021 .......... 21

J. Jonas Anderson & Paul R. Gugliuzza, Federal Judge Seeks Patent Cases, 71 Duke L. J. 419, 458 (2021) .......... 5, 6

Patrick Leahy and Bob Goodlatte, "Flawed Fintiv Rule Should Be Deemed Overreach In Tech Suit," Law360, Jun. 20, 2024 .......... 23

Rules Governing Pre-Issuance Internal Circulation and Review of Decisions Within the Patent Trial and Appeal Board, 89 Fed. Reg. 49808 (Jun. 12, 2024) .......... 15

United States Government Accountability Office, Patent Trial and Appeal Board: Preliminary Observations on Oversight of Judicial Decision-Making, July 21, 2022 .......... 10, 11, 12, 13

USITC, Section 337 Statistics: Average Length of Investigations .......... 7

USITC, Section 337 Statistics: Number of New, Completed, and Active Investigations By Fiscal Year .......... 7

USPTO, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings With Parallel District Court Litigation, Jun. 21, 2022 .......... 14, 15, 16, 17

USPTO, PTAB Parallel Litigation Study, June 2022 .......... 6, 14

Weekly Compilation of Presidential Documents, President Jimmy Carter, Dec. 12, 1980, Vol. 16, No. 50 .......... 21

## INTEREST OF AMICI CURIAE

The National Retail Federation is the world's largest retail trade association. Retail is by far the largest private-sector employer in the United States, supporting one in four U.S. jobs—approximately 52 million American workers—and contributing $3.9 trillion to the annual GDP.

The High Tech Inventors Alliance (HTIA) represents leading technology providers and includes some of the most innovative companies in the world. HTIA member companies are global leaders in software, ecommerce, cloud computing, artificial intelligence, quantum computing, digital advertising and marketing, streaming, networking and telecommunications hardware, computers, smartphones, and semiconductors. HTIA includes four of the top six software companies in the world, two of the top ten providers of 5G network infrastructure, three of the ten largest tech hardware companies, and three of the ten largest semiconductor companies in the world.

The Computer & Communications Industry Association is an international, not-for-profit trade association representing a broad cross section of communications and technology firms. For more than fifty years, CCIA has promoted open markets, open systems, and open networks. CCIA members employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy. CCIA members are

at the forefront of research and development in technological fields such as artificial intelligence and machine learning, quantum computing, and other computer-related inventions. CCIA members are also active participants in the patent system, holding approximately 5% of all active U.S. patents and significant patent holdings in other jurisdictions such as the EU and China.

The Alliance for Automotive Innovation's members include the manufactures of nearly 98% of all new cars and light trucks that are sold in the United States. Other members include original equipment suppliers, technology and other automotive-related companies, and other trade associations. Automakers invest billions of dollars each year in new technologies, including fuel-saving technologies such as electrification to transition to a low-carbon transportation future.

Amici's members are frequent targets of patent assertions. In many cases, the asserted patents claim things that were already known at the time the patent was filed. In these circumstances, post-issuance review at the Patent Trial and Appeal Board can prove to be a critical tool. In amici's members' experience, the technical expertise of PTAB judges produces highly reliable and accurate patentability judgments. Conducting validity review in the PTAB removes much of the unpredictability of litigation and creates business certainty that allows companies to develop products and innovate. Amici's members thus have a keen interest in ensuring that

PTAB review remains reliably available and is not subject to arbitrary and unpredictable restrictions.[1]

[1] No counsel for any party wrote any part of this brief. No party other than amici curiae's members contributed any money that was intended to fund the preparation or submission of this brief. (Although plaintiffs-appellants are variously members of HTIA and CCIA, none of them participated in the decision to file or the preparation of this brief or provided funding intended for this brief.) This brief is filed with the consent of all parties.

# ARGUMENT

## I. *Fintiv* as applied eliminates access to PTAB review in multiple circumstances

The district court's holding—that *Apple, Inc. v. Fintiv, Inc.*, IPR2020-00019 (Mar. 20, 2020), articulates a general statement of policy rather than a rule within the meaning of the Administrative Procedure Act—was grounded in its conclusion that *Fintiv* is not outcome-determinative for any set of facts. The court found that *Fintiv*'s six-factor test "expressly leaves the Board with genuine discretion to evaluate all facts and circumstances relevant to the institution or denial of IPR." D.Ct. at 22.

The district court principally relied on the language of the *Fintiv* decision itself. It highlighted the decision's statements that an early trial date is merely a "non-dispositive factor" in a "holistic analysis" and part of "a balanced assessment of all relevant circumstances." D.Ct. at 11, 19, 22 (quoting *Fintiv*). The court thus credited the government's argument that "the Fintiv factors do not require any particular outcome in a given case," D.Ct. at 18, and "are not outcome-determinative." D.Ct. at 20.

The district court's conclusions are belied by how *Fintiv* has been applied in practice. At times, *Fintiv* has made an early trial date *entirely* outcome-determinative of whether institution will be granted. For about a year and half, for example, *Fintiv* was applied to deny review in almost every case in which a hearing in another tribunal

would precede the PTAB's final written decision by more than a month or two. A Government Accountability Office report has since revealed the cause of this surprising consistency: *Fintiv* was enforced behind the scenes by agency officials who were directing the outcomes of PTAB institution decisions. Although the current Director's reforms have curbed the worst of these excesses, they also highlight that *Fintiv* continues to operate as an outcome-determinative rule in which time to trial predominates over all other factors.

### A. *Fintiv* was initially applied to deny review almost every time another tribunal set an early hearing

In the *Fintiv* case itself, institution was denied on account of a district-court trial that was set to occur just two months before the PTAB would decide the case. *See Apple v. Fintiv*, IPR2020-00019 (May 13, 2020). This decision set the mold for how *Fintiv* was applied for the next year and a half. In case after case, a perceived scheduling advantage in district court of just three to six months almost always resulted in a denial of review.[2] Unsurprisingly, longer scheduling gaps between the

[2] *See, e.g.*, *Google v. EcoFactor*, IPR2020-00968 (Nov. 18, 2020) (denial for 3 month scheduling advance in district court); *Google LLC f/k/a Google Inc. v. Ikorongo Technology LLC et al.*, IPR2021-00204 (Jun. 7, 2021) (3 months); *Immersion Sys. LLC v. Midas Green Techs., LLC*, IPR2021-01176 (Jan. 6, 2022) (3 months); *Immersion Sys. LLC v. Midas Green Techs., LLC*, PGR2021-00104 (Jan. 31, 2022) (4 months); *TCO AS v. NCS Multistage Inc.*, PGR2020-00077 (Feb. 18, 2021) (4 months); *Daiichi Sankyo, Inc. v. Seagen Inc.*, PGR2021-00042 (Jun. 24, 2021) (4 months); *KioSoft Techs., LLC et al v. PayRange Inc.*, CBM2020-00026 (Mar. 22, 2021) (5 months); *Cisco Sys., Inc. v. Oyster Optics, LLC*, IPR2021-00319 (Jun. 8, 2021) (6 months);

PTAB and a district court also virtually always resulted in a denial of review.[3] (*Fintiv* defers to a district court's supposed "speed," despite the fact that with post-trial motions, a civil action will almost certainly still be in the district court long after a PTAB decision would have become final and been appealed to this Court.)

What is striking about this era of *Fintiv*'s application is not just the volume or consistency of denials based on just a few months' scheduling advance in district court; the individual decisions themselves make clear that the trial-schedule factor is outcome determinative and predominates over all other factors.

*Fintiv* itself, for example, suggested that review was more likely to be granted "[i]f the evidence shows that the petitioner filed the petition expeditiously, such as promptly after becoming aware of the claims being asserted." *Fintiv*, IPR2020-

---

*Google LLC v. EcoFactor, Inc.*, IPR2021-00488 (Aug. 11. 2021) (6 months); *TA Instruments-Waters LLC v. Malvern Panalytical Inc.*, IPR2021-00210 (May 27, 2021) (6 months).

[3] *See, e.g.*, *10X Genomics, Inc. v. United Kingdom Research and Innovation et al.*, IPR2020-01467 (Feb. 22, 2021) (7 months); *3shape Trios A/S v. Densys Ltd.*, IPR2021-00236 (May 20, 2021) (7 months); *Verizon Bus. Network Servs. LLC v. Huawei Techs. Co. Ltd.*, IPR2020-01290 (Jan. 25, 2021) (8 months); *Verizon Bus. Network Servs. LLC v. Huawei Techs. Co. Ltd.*, IPR2020-01278 (Jan. 26, 2021) (8 months); *LG Elecs., Inc. v. Ancora Techs., Inc.*, IPR2021-00581 (Jun. 10, 2021) (8 months); *Code200, UAB et al v. Luminati Networks Ltd.*, IPR2020-01358 (Feb. 2, 2021) (9 months); *Cisco Sys., Inc. v. Monarch Networking Sols. LLC*, IPR2020-01226 (Mar. 4, 2021) (9 months); *Samsung Elecs. Co., Ltd. et al v. Clear Imaging Research, LLC*, IPR2020-01399 (Feb. 3, 2021) (10 months).

00019, at 11. This promise did not bear out in practice. Even extreme diligence by petitioners has been deemed insufficient to overcome a *Fintiv* trial-date bar.

In *Cisco Systems Inc. v. Ramot at Tel Aviv U. Ltd.*, IPR2020-00122 (May 15, 2020), for example, *Fintiv* was applied to deny review despite the petitioner's filing its petition less than two months after receiving the patent owner's infringement contentions. *See id.* at 6 (Crumbley, J., dissenting). In a related case, when the patent owner asserted an additional patent in its litigation, *Fintiv* was applied to block review of a petition that was filed just *seven weeks* after the patent was first asserted. *See Cisco Sys., Inc. v. Ramot at Tel Aviv U. Ltd.*, IPR2020-00484 (Aug. 18, 2020); see also id. at 2-3 (Crumbley, J., dissenting).

Similarly, in *Philip Morris USA Inc. v. RAI Strategic Holdings Inc.*, IPR2020-00921 (Nov. 16, 2020), a review petition was filed just *one month* after service of an infringement complaint. The panel found that no substantive issues had yet been decided by the district court, noted that the petitioner had stipulated not to raise the same invalidity grounds in court, and concluded that "[t]he merits of Petitioner's three grounds are particularly strong on the preliminary record." *Id.* at 18, 19, 26. The Board nevertheless applied *Fintiv* to deny review based on an early trial date.

Other decisions from this era confirm that while on their face all the *Fintiv* factors are equal, in practice the trial-date factor is more equal than all the others. In *Daiichi Sankyo, Inc.*, PGR2021-00042, for example, the Board found that the parties' and district court's investment in the civil litigation was "not substantial" and that

the petitioner had "acted diligently" by filing its petition just two weeks after the patent owner asserted the challenge claims. *Id.* at 16. The PTAB nevertheless denied review because of a district court hearing that was scheduled just four months before the panel would reach a final written decision. *See id.* at 14; *see also Verizon Bus. Network Servs.*, IPR2020-01290 (applying *Fintiv* bar to a petition filed just two months after receiving preliminary infringement contentions); *Code200, UAB*, IPR2020-01358 (applying *Fintiv* bar to a petition filed three months after claims were first disclosed in district court); *Cisco Sys. v. Oyster Optics*, IPR2021-00319 (applying *Fintiv* to bar a petition filed six months before the statutory deadline for filing).

Decisions such as these give little reason for participants in PTAB proceedings to expect that filing a petition "expeditiously," *Fintiv*, IPR2020-00019, at 11, or any other circumstance will allow a petitioner in a fast-moving jurisdiction to overcome a *Fintiv* bar. Because of the dominant role played by the hearing-date factor, *Fintiv*'s impact during this era was particularly severe for parties that were sued in the following venues or under the following statutory regimes:

### 1. The Western and Eastern Districts of Texas

In the U.S. District Court for the Western District of Texas, Waco Division, the court's standing orders for patent cases set trial for 18 months after a complaint is filed. *See* J. Jonas Anderson & Paul R. Gugliuzza, Federal Judge Seeks Patent Cases, 71 Duke L. J. 419, 458 (2021). Given that the PTAB is scheduled to enter a final decision 18 months after a petition is filed (*see* 37 C.F.R. § 42.107(b); 35 U.S.C.

§§ 314(b), 315(a)(11)), a party sued in that court would need to file its petition almost immediately after it is served with a complaint to avoid accruing a district-court timing advantage for purposes of *Fintiv*. As the court itself has noted, this local schedule effectively allows patent owners who file their infringement complaints there to ensure that patent validity challenges will not be heard at the PTAB. *See* Anderson, *supra*, at 460; Britain Eakin, "West Texas Judge Says He Can Move Faster Than PTAB," Law360, Nov. 27, 2019.[4]

Similarly, in the Eastern District of Texas, patent cases proceed quickly: during the recent year, the average time to trial in the district was just 16 months. *See* DocketNavigator data, *infra*, at n. 28. This means that to beat a *Fintiv* bar, a defendant sued in the district would need to file its PTAB petition two months *before* it is sued for infringement.

Unsurprisingly, during this period, nearly half of all *Fintiv* denials arose out of just these two judicial districts. *See* USPTO, PTAB Parallel Litigation Study, June 2022, at 31.[5]

---

[4] Notably, *Fintiv* as applied during this period accepted trial scheduling orders at face value. *See, e.g.*, *Cisco Sys. v. Monarch Networking Sols.*, IPR2020-01226 (applying a *Fintiv* bar based a scheduled trial date despite the fact that 60 trials were nominally scheduled for the relevant two-month period and six were scheduled for the same trial date).

[5] Available at https://www.uspto.gov/sites/default/files/documents/20220621PTABparallellitigationstudy.pdf.

### 2. ITC proceedings

*Fintiv* makes express that its bar can be applied based on a copending investigation at the International Trade Commission. *See Fintiv*, IPR2020-00019, at 8-9. ITC investigations are expedited—during the last three years, for example, their average duration has been about 18 months. *See* USITC, Section 337 Statistics: Average Length of Investigations (updated Apr. 22, 2024).[6]

Consistent with its treatment of district courts, *Fintiv* was applied remorselessly to bar review based on ITC hearing dates. Although ITC cases are filed at a much lower rate than district-court actions—only 52 were filed in 2020, for example[7]—they became a major source of *Fintiv* denials.[8]

---

[6] Available at https://www.usitc.gov/intellectual_property/337_statistics_average_length_investigations.htm.

[7] *See* USITC, Section 337 Statistics: Number of New, Completed, and Active Investigations By Fiscal Year (updated Apr. 22, 2024), available at https://www.usitc.gov/intellectual_property/337_statistics_number_new_completed_and_active.htm.

[8] *See, e.g.*, *Fitbit, Inc. v. Koninklijke Philips N.V.*, IPR2020-00771 (Oct. 19, 2020); *Comcast Cable Commc'ns, LLC v. Rovi Guides, Inc.*, IPR2020-00800 (Oct. 22, 2020); *Garmin Int'l, Inc. v. Koninklijke Philips N.V.*, IPR2020-00754, (Oct. 27, 2020); *Google LLC v. Ecofactor, Inc.*, IPR2020-00968, (Nov. 18, 2020); *SK Innovation Co., Ltd. v. LG Chem, Ltd.*, IPR2020-01036, (Nov. 30, 2020); *Regeneron Pharms., Inc. v. Novartis Pharma*, AG, IPR2020-01317 (Jan. 15, 2021); *Stanley Black & Decker, Inc. et al v. Zircon Corp.*, IPR2020-01572 (Apr. 19, 2021); *Ocado Group plc v. AutoStore Tech. AS*, IPR2021-00274 (Jun. 3, 2021); *Allergan, Inc. v. BTL Healthcare Techs. A.S.*, PGR2021-00016 (Jun. 17, 2021); *SharkNinja Operating LLC v. iRobot Corp.*, IPR2021-00544 (Jun. 25, 2021); *KISS Nail Prods., Inc. v. Lashify, Inc.*, PGR2021-00046 (Aug. 9, 2021); *Canadian Solar Inc. v. Solaria Corp.*, IPR2021-00659 (Sep. 30, 2021).

*Fintiv* was also applied to ITC investigations in a way that made clear that an early hearing date predominated over all other factors. In *Regeneron Pharmaceuticals*, IPR2020-01317, for example, the Board denied review despite the fact that the petition had been filed just *one month* after the ITC complaint—and the hearing was scheduled to precede the Board's decision by only six weeks. *See id.* at 14-15.

Another telling example is *Allergan, Inc.*, PGR2021-00016. The patent owner in that case argued that review should be denied because the petitioner took four months to prepare and file its PTAB petitions. *Id.* at 14. The Board agreed and applied *Fintiv*—despite acknowledging that during those four months, the petitioner "prepared and filed twelve PGR petitions on more than 200 claims across seven patents in response to 85 claims across six patents asserted in the ITC." *Id.*

The USPTO's actual practice of applying *Fintiv* to ITC cases during this period further belies representations of a balanced or holistic approach and confirms that early hearing dates predominate over all other factors.

**3. Hatch-Waxman litigation**

Finally, the expedited scheduling of civil actions challenging an Abbreviated New Drug Application—which typically are timed to coordinate with the statutory 30-month stay of FDA approval[9]—makes it difficult to overcome a *Fintiv* bar when facing such litigation. *See, e.g.*, *Mylan Labs. Ltd. v. Janssen Pharmaceutica NV*,

[9] *See* 21 U.S.C. §§ 355(c)(3)(C), (j)(5)(B)(iii).

IPR2020-00440 (Sep. 16, 2020); *see also* Comments of the Association for Accessible Medicines,[10] USPTO Request for Comments on Discretion to Institute Trials Before the Patent Trial and Appeal Board, Dec. 3, 2020, at 10 (noting that "the *Fintiv* rule deeply prejudices petitioners engaged in Hatch-Waxman litigation").

* * * *

In mid-2021, *Fintiv*'s application began to change. While many petitions continued to receive *Fintiv* bars, others that could not conceivably have been granted during the first year and a half of *Fintiv* nevertheless began to be instituted. *See, e.g.*, *Thorne Rsch., Inc. v. Trustees of Dartmouth College*, IPR2021-00491 (Aug. 12, 2021) (institution granted despite a trial date set for 11 months before a PTAB decision; no *Sotera* stipulation not to raise could-have-raised prior art in district court); *Uber Techs., Inc. v. AGIS Software Dev. LLC*, IPR2021-010306 (Jan. 7, 2022) (10 months' district-court lead; no *Sotera* stipulation).

The next section discusses the apparent reasons why *Fintiv*'s multi-factor test was applied so single-mindedly during this initial period—and why that consistency later slackened.

[10] Available at https://www.regulations.gov/comment/PTO-C-2020-0055-0790.

### B. A look behind the scenes: *Fintiv* is the product of top-down command rather than adjudicative discretion

The district court concluded that *Fintiv* "expressly leaves the Board with genuine discretion to evaluate all facts and circumstances relevant to institution" and that it is "clear that the Board undertakes a holistic analysis." D.Ct. at 22.

These conclusions are at odds not only with how *Fintiv* has been applied but also with the findings of a recent investigation by the Government Accountability Office. The GAO's report[11] found that USPTO officials broadly interfered in PTAB decision making in AIA cases—particularly with respect to "discretionary" policies such as *Fintiv*.

Among the report's findings are that PTAB judges felt that they no longer had the ability to decide cases independently. The report notes that "the majority of judges we surveyed who reported working on AIA proceedings indicated they have felt pressure to change or modify an aspect of their decision in an AIA proceeding based upon the Management Review process." GAO report at 15.

The GAO found that management dictates were enforced through a variety of mechanisms—including summarily removing judges from cases:

> While many judges we interviewed attributed their sense of obligation to a need to follow directives from their superiors, some reported through interviews that management had occasionally contacted the

[11] *See* United States Government Accountability Office, Patent Trial and Appeal Board: Preliminary Observations on Oversight of Judicial Decision-Making, July 21, 2022, available at https://www.gao.gov/assets/gao-22-106121.pdf.

> panel members directly to mandate a change, and indicated, at times, that the panel could be changed to replace the judge that did not make the desired changes. For example, some judges we interviewed reported a fellow judge was removed from a panel for disagreeing with the intended outcome of the decision, and the decision issued with two judges, as opposed to three. Some judges we interviewed thought that management had removed a number of judges from AIA proceedings for reported noncompliance and that this made judges feel that they must follow management directives or their careers could be affected.

*Id.* at 17-18.

PTAB judges described a process in which they were given no indication as to who was actually deciding their cases or what decisional criteria were being applied:

> [S]ome judges described Management Review as a "black box" with little transparency into what happens between the time they submit their draft decision for review and when they receive comments. Many judges we interviewed expressed uncertainty, for example, as to who in management is reviewing the decisions, the timing of reviews, the extent to which judges can converse with management about the comments, what criteria management use in reviews, and what role, if any, USPTO directors play in approving these comments.

*Id.* at 18.

One judge described a case in which management review resulted in extensive revision of a dissenting opinion, including deletion of half of the dissent.[12] Another

[12] *See id.* ("[D]uring the Management Review process, several members of the Management Review 'team' extensively revised my dissenting opinion, which resulted in a dramatic rewriting, including a wholesale deletion of about the half of the decision. The revisions and/or rewritings were all substantive in nature. Due to the lack of transparency of the process, I never knew who was responsible for the revisions and/or rewritings.").

described an incident in which the judge was removed from a case without being told of the removal—the judge learned of his removal only when the opinion issued without his participation.[13]

The GAO found that these practices undermined PTAB panels' independence and discretion. Judges described:

> [the] lasting effects on the culture of PTAB from former directors or PTAB management who have at times interceded or applied pressure to judges. Some judges we interviewed noted that while they personally have not been on a case in which management or a director directly interfered, they have heard about certain cases that were alleged to have negative consequences for judges who pushed back on management's revisions. They stated that they have, therefore, then felt pressure as to how they render their own decisions, irrespective of management's involvement.

*Id.* at 16.

Finally, the GAO's report notes that the commandeering of the PTAB was principally directed at the application of *Fintiv*. Judges told GAO that political interference typically did not affect merits decisions, but rather "discretionary areas driven by agency policy or guidance"—such as "judges' decision to institute an AIA trial." *Id.* at 16. The report singles out the application of a "decision designated precedential in 2020 [that] outlines several factors that a PTAB judge should consider when deciding whether to deny institution" of review because of "a potentially

[13] *See id.* at 22 ("A former judge recounted being replaced on a panel, presumably because management wanted a unanimous decision, and this judge was not aware of the replacement until the decision was issued.").

parallel district court proceeding," *id.* at 15—and notes that management directives "dictated which factors should be given more weight." *Id.*

The GAO's investigation lays bare why a facially "holistic" analysis of six non-exclusive factors in practice amounted to a rule that overwhelmingly denied review based on copending trial schedules.

The report also suggests why application of *Fintiv* became inconsistent in the second half of 2021: during a period without appointed agency leadership, some Board panels continued to follow their earlier *Fintiv* instructions, while others reverted to their native inclination to follow the statute.[14] Thus this period continued to see some panels *deny* review based on slight district-court scheduling advances[15]

[14] Before *Fintiv* was made precedential, PTAB panels confronted with arguments that they should deny review because of the advanced state of district court litigation routinely held that such an approach would be contrary to law. *See, e.g.*, *Amazon.com, Inc. v. CustomPlay, LLC*, IPR2018-01498 (2019) ("[S]ection 315(b) provides a one-year period after service of a complaint alleging infringement" and "[t]he statute does not set forth any basis for treating petitions differently depending on which day within that year they are filed."); *see also id.* ("[T]he legislative history of the AIA indicates that Congress was aware the one-year period in § 315(b) would be used" by petitioners to "try to better understand the asserted claims, the bases for the infringement allegations by Patent Owner, and to identify relevant prior art."); *Precision Planting, LLC v. Deere & Company*, IPR2019-01044 (2019) ("[T]he statutory scheme specifically contemplates a Petition filed with co-pending litigation by allowing filing one year after service of the complaint."); *Sprint Spectrum L.P. v. Intellectual Ventures II LLC*, IPR2018-01770 (2019) ("[F]iling within the one-year period provided by 35 U.S.C. § 315(b) is presumptively proper.").

[15] *See, e.g.*, *EClinicalWorks, LLC v. Decapolis LLC*, IPR2022-00229, at 9 (PTAB Apr. 13, 2022) (denying review because of a district-court trial that would precede a PTAB final decision by just "one or two months"); *Google LLC v. Ikorongo Tech.*

and despite petitioners' stipulations not to raise prior art in district court,[16] while other panels *granted* review over district-court trial advances of nearly a year and without requiring *Sotera* stipulations.[17]

As the next section describes, recent USPTO changes have mitigated *Fintiv*'s inconsistent application and some of its excesses—but in the process have made clear that *Fintiv* operates as a legislative rule.

### C. The current guidance confirms *Fintiv*'s outcome-determinative nature

On June 21, 2022, the USPTO Director issued an interim guidance memorandum that modifies aspects of *Fintiv*'s application.[18] The Interim Guidance eliminates ITC investigations as a basis for *Fintiv* denials. *See* Memo at 6. In a separate

---

*LLC*, IPR2021-00204 (Jun. 7, 2021) (denying review because of three-month advance in a trial against a *different, unrelated* party); *Immersion Sys. LLC v. Midas Green Techs., LLC*, IPR2021-01176 (Jan. 6, 2022) (three months advance); *Immersion Sys. LLC v. Midas Green Techs., LLC*, PGR2021-00104 (Jan. 31, 2022) (four months).

[16] *See Cisco Sys., Inc. v. Estech Sys., Inc.*, IPR2021-00333 (Jul. 7, 2021) (denying review despite entry of a *Sotera* stipulation not to raise prior art in district court that could have been raised in PTAB review).

[17] *See Thorne Research*, IPR2021-00491 (Aug. 12, 2021); *Uber Techs.*, IPR2021-010306 (Jan. 7, 2022). The USPTO's Parallel Litigation Study confirms that "*Fintiv* denials peaked in FY21 Q2 and dropped significantly afterwards." *See* USPTO Study, *supra* n.5, at 16. The study's data also confirm that whether review would be granted depended more on the period when institution was decided rather than factors such as the entry of a stipulation. *See id.* at 28 (noting that in the first half of 2021, 46 petitions were denied under *Fintiv* despite the petitioner's entry of a stipulation not to raise prior art in district court).

[18] *See* USPTO, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings With Parallel District Court Litigation, Jun. 21, 2022, available at

action, the USPTO has also promulgated rules that prohibit agency officials from interfering in PTAB adjudications that are pending before a panel.[19]

Most significantly, the Interim Guidance modifies the early-trial factor: it requires panels to look to the *median* trial dates in a district rather than scheduled trial dates—which, as the memo notes, "are unreliable and often change." *Id.* at 8.

Finally, the Interim Guidance codifies two exceptions to *Fintiv*: an early time to trial can be overcome if the petitioner presents "compelling merits" evidence at the institution stage, or if the petitioner stipulates not to raise in district court any prior that it could have raised at the PTAB. *See id.* at 3-5, 7-8.[20]

The 2022 Interim Guidance (which still governs today) eliminates some of the unpredictability and excesses of *Fintiv*'s previous application. In doing so, however, it confirms that *Fintiv* is, at bottom, a legislative rule that generally bars review if the petitioner is sued in a fast-moving district.

---

https://www.uspto.gov/sites/default/files/documents/interim_proc_discretionary_denials_aia_parallel_district_court_litigation_memo_20220621_.pdf.

[19] *See* Rules Governing Pre-Issuance Internal Circulation and Review of Decisions Within the Patent Trial and Appeal Board, 89 Fed. Reg. 49808 (Jun. 12, 2024).

[20] Such stipulations were previously identified as a factor favoring review. *See Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019 (Dec. 1, 2020). As noted previously, however, they often proved ineffective at overcoming a *Fintiv* bar. *See supra* n. 17 and accompanying text. The Interim Guidance makes institution mandatory when a stipulation is entered.

Of *Fintiv*'s six enumerated factors, factors 3 and 5—investment in the district court litigation and whether petitioner is a party to the district-court litigation—are heavily related to the district-court time-to-trial factor: if the patent owner sued the petitioner in a court that moves fast, that court is also likely to conduct some proceedings earlier, and the petitioner will be a party to that litigation.

*Fintiv* factors 4 and 6—overlap with issues in district court and the catch-all factor, which generally focuses on the strength of the petition[21]—are now effectively incorporated into and operate as two exceptions to *Fintiv*: the use of stipulations to avoid overlap and a showing of "compelling merits." The fact that a rule has exceptions, of course, does not detract from its nature as a rule for APA purposes. *See McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1321 (D.C. Cir. 1988) ("Though such a provision for exceptions [allowing consideration of non-enumerated factors] obviously qualifies a rule . . . , it does not push it much in the direction of a policy statement.").[22]

*Fintiv*'s nature as a rule that blocks review for defendants sued in fast-moving courts once again is highlighted by how it has been applied in practice. To distinguish a rule from a mere policy statement, courts look to whether it "is applied by

---

[21] *See also* Interim Guidance, *supra* n. 18, at 4-5 (noting that a petition's merits are considered under factor 6).

[22] In amici's experience, the first *Fintiv* factor—whether the court will grant a stay of litigation—is almost always neutral and thus irrelevant; district courts rarely broadcast in advance whether they will grant a stay if institution is granted.

the agency in a way that indicates it is binding." *General Elec. Co. v. E.P.A.*, 290 F.3d 377, 383 (D.C. Cir. 2002); *see also id.* ("[A rule is a rule] if the affected private parties are reasonably led to believe that failure to conform will bring adverse consequences, such as denial of an application.") (citation omitted); *Public Citizen, Inc. v. U.S. Nuclear Regul. Comm'n*, 940 F.2d 679, 682-83 (D.C. Cir. 1991) ("[C]ases concerned with the policy statement/substantive rule distinction confirm that the agency's application of a disputed rule is crucial.").

Under the Interim Guidance, the USPTO continues to deny review to petitioners facing an early district-court trial date, despite their filing within one year of service of the district-court complaint as prescribed by Congress. *See* 35 U.S.C. § 315(b). Amici have identified at least 35 petitions for PTAB review that have been *Fintiv*-barred under the new guidance.[23]

[23] *See, e.g.*, *T-Mobile USA, Inc. v. Cobblestone Wireless LLC*, PGR2024-00136 (Jun. 5, 2024); *10x Genomics, Inc. v. President and Fellows of Harvard*, IPR2023-01299 (Mar. 7, 2024); *Samsung Elecs. Co., Ltd. v. Mojo Mobility Inc.*, IPR2023-01096, IPR2023-01099, IPR2023-01098, IPR2023-01094 (Feb. 6, 2024); *Samsung Elecs. Co., Ltd. v. Mojo Mobility Inc.*, IPR2023-01091, IPR2023-01092, IPR2023-01093 (Jan. 8, 2024); *IBM Corp. v. Digital Doors, Inc.*, IPR2023-00970 (Jan. 12, 2024); *IBM Corp. v. Digital Doors, Inc.*, IPR2023-00972 (Jan. 11, 2024); *IBM Corp. v. Digital Doors, Inc.*, IPR2023-00971, IPR2023-00969 (Dec. 5, 2023); *IBM Corp. v. Digital Doors, Inc.*, IPR2023-00967, IPR2023-00968 (Dec. 1, 2023); *Duplo U.S.A. Corp. v. MGI Digital Tech. S.A.*, IPR2023-00936 (Dec. 5, 2023); *Duplo U.S.A. Corp. v. MGI Digital Tech. S.A.*, IPR2023-00935 (Dec. 4, 2023); *Boe Tech. Grp. Co., Ltd. v. Element Cap. Com. Co. Pte. Ltd.*, IPR2023-00808 (Nov. 15, 2023); *Zhuhai CosMX Battery Co., Ltd. v. Ningde Amperex Tech. Ltd.*, IPR2023-00585 (Oct. 24, 2023); *Zhuhai CosMX Battery Co., Ltd. v. Ningde Amperex Tech. Ltd.*, IPR2023-00587 (Sep. 22, 2023); *Vector Flow, Inc. v. HID Global Corp.*, IPR2023-00353 (Jul. 17, 2023); *Roku, Inc. v. Ioengine*, LLC,

As with past applications of *Fintiv*, the USPTO continues to enforce the rule in a way that makes clear that an early time to trial predominates over all other factors. Thus earlier this year, four inter partes review petitions were *Fintiv*-barred despite petitioner's break-neck pace of filing just four months after the plaintiff submitted infringement contentions asserting nearly 100 claims.[24] Even slight advances in time to trial invoke the bar: petitions have been denied in which trial was scheduled to occur just one month before the Board would issue a final decision.[25] Review has also been denied when a "faster" time to trial was largely the result of the patent owner's gamesmanship of filing *but not serving* its infringement complaint (thus delaying notice to and a response from the defendant).[26] PTAB panels applying *Fintiv*

IPR2022-01553, IPR2022-01554, IPR2022-01551, IPR2022-01552 (May 5, 2023); *Samsung Elecs. Co., Ltd. v. Cal. Inst. of Tech.*, IPR2023-00131, IPR2023-00133, IPR2023-00130, IPR2023-00137 (May 4, 2023); *Ericsson Inc. v. Godo Kaisha IP Bridge 1*, IPR2022-00726, IPR2022-00725 (Nov. 2, 2022); *Nokia of Am. Corp. and Ericsson Inc. v. Godo Kaisha Ip Bridge 1*, IPR2022-00755 (Nov. 2, 2022); *NXP USA, Inc. v. Impinj, Inc.*, IPR2021-01556 (Sep. 7, 2022) (Director Review affirming *Fintiv* denial); *NXP USA, Inc. v. Impinj, Inc.*, PGR2022-00005, IPR2021-01556 (Aug. 25, 2022).

[24] *See Samsung Elecs. v. Mojo Mobility*, IPR2023-01096, at 13; IPR2023-01099, IPR2023-01098, IPR2023-01094 (related petitions).

[25] *See 10x Genomics*, IPR2023-01299, at 17; *see also Zhuhai CosMX Battery Co.*, IPR2023-00587, at 10 (denial for 3 months' advance).

[26] *See Boe Tech. Grp.*, IPR2023-00808, at 20. The *statutory* time bar precludes such gamesmanship by relying on the *service* of the complaint rather than its mere filing. *See* 35 U.S.C. § 315(b).

have even expressly stated that an early time to trial "weighs heavily in favor of discretionary denial."[27]

And once again, *Fintiv*'s application has been particularly severe for defendants sued in the Western and Eastern Districts of Texas. As noted by HTIA member Amazon.com, in the Eastern District of Texas, the median time to trial recently was just 16 months:[28]




In effect, defendants sued in districts that move quickly are almost automatically subject to *Fintiv*. The data confirm *Fintiv*'s disparate impact: of the 35 petitions

[27] *See Duplo U.S.A. Corp.*, IPR2023-00936, at 17; *Ericsson v. Godo Kaisha IP Bridge*, IPR2022-00726, at 10; IPR2022-00725, at 9.

[28] *See* Comments of Amazon.com, Inc., Changes Under Consideration to Discretionary Institution Practices, at 7, Jun. 18, 2023, available at https://tinyurl.com/bdhmyp77.

that amici have identified that were blocked by *Fintiv* in the last two years, 31 were barred because of copending litigation in the Western and Eastern Districts of Texas.

*Fintiv* is a rule for APA purposes. Because of how it is applied in practice, PTAB petitioners "are reasonably led to believe that failure to conform will bring adverse consequences, such as denial of an application." *General Elec. Co.*, 290 F.3d at 383.

And as the next section describes, being subject to a *Fintiv* bar—or seeking to invoke its safe harbors—has serious consequences for defendants.

### D. *Fintiv* negates substantive conditions of patentability and prejudices defendants

In amici's experience, some types of prior-art validity questions can only reliably and predictably be assessed at the PTAB. Juries will readily entertain an anticipation defense based on product prior art, but they often are resistant to combining different patents and printed publications in an obviousness analysis. This is especially so if the claimed technology is complex—few jurors have technical backgrounds. In amici's members' experience, even when a strong printed-prior-art obviousness defense is available, experienced trial counsel often will advise not to use limited court time to present it to a jury.

Amici are not alone in their skepticism of civil litigation's reliability as a forum for addressing all patentability issues. Congress itself has repeatedly recognized a need for patent-validity review by technical experts at the Patent Office. Prior-art

challenges in district court have always been available, but since 1980, Congress has authorized—and repeatedly reenacted and refined—post-issuance review at the USPTO.[29] Congress has decided that civil litigation alone is insufficient for assessing some types of patent-validity questions.

Unfortunately, recent experience under *Fintiv* has confirmed the importance of access to PTAB review. When *Fintiv* was made precedential in March 2020, it was applied retroactively even to pending petitions for inter partes review. As a result, a dozen petitions filed by Intel Corp. were *Fintiv* barred. Subsequently, several of the affected patents were used to secure multi-billion-dollar damages awards against Intel.[30] But when other entities later challenged the same patents, the USPTO readily concluded that the asserted claims are invalid.[31] Amici now know

---

[29] *See* H.R. Rep. No. 96-1307, 96th Cong., at 4 (1980) (emphasizing the need "to have the validity of patents tested in the Patent office where the most expert opinions exist and at a much reduced cost") (report to accompany H.R. 6933, authorizing reexamination of patents); Weekly Compilation of Presidential Documents, President Jimmy Carter, Dec. 12, 1980, Vol. 16, No. 50 (Statement on Signing H.R. 6933 into Law) ("Patent reexamination will make it possible to focus extra attention on the most commercially significant patents. This legislation will improve the reliability of reexamined patents, thereby reducing the costs and uncertainties of testing patent validity in the courts.")

[30] *See* Britain Eakin, "Intel Hit With $949M Verdict In Latest VLSI Patent Fight," Law360, Nov. 5, 2022; "Intel loses U.S. patent trial, ordered to pay $2.18 billion to VLSI Tech," Reuters, Mar. 2, 2021.

[31] *See OpenSky Indus., LLC v. VLSI Tech. LLC*, IPR2021-01064 (May 12, 2023) (finding all challenged claims unpatentable); *Patent Quality Assurance, LLC v. VLSI Tech. LLC*, IPR2021-01229 (Jun. 13, 2023) (same).

for certain that *Fintiv*'s bar on access to PTAB review allows invalid patents to be enforced against their members.

The USPTO's two new safe harbors from *Fintiv* also carry substantial consequences for petitioners who use them. A stipulation not to raise prior art in district court can badly skew damages awards—it allows a plaintiff to misrepresent an incremental invention as a pioneering one. It also tends to distort claim construction, allowing a patent owner to advance broad constructions that it otherwise would avoid because they read on prior art.[32]

The USPTO's "compelling merits" exception applies a standard that is undefined at common law, although the USPTO has stated that it requires more than a preponderance of the evidence and that it draws all reasonable inferences in favor of the *patent owner* rather than the non-movant.[33] The exception appears to operate as a super-obviousness standard that limits challenges to anticipation or near-anticipation prior art. Regardless of its precise boundaries, it plainly blocks from consideration some petitions that would otherwise prevail on their merits.

Finally, all these features of *Fintiv* rewrite key parts of the USPTO's authorizing statute. *Fintiv* itself effectively shortens the § 315(b) deadline—despite the fact

[32] *See also* Comments of Amazon.com, *supra* n. 28, at 10-11.

[33] *See* Changes Under Consideration to Discretionary Institution Practices, Petition Word-Count Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board ("ANPRM"), 88 Fed. Reg. 24505, 24507-08 (Apr. 21, 2023).

that Congress specifically extended that deadline from six months to one year during its deliberations on the America Invents Act.[34] The USPTO has even contemplated transforming *Fintiv* into a rule that simply shortens the § 315(b) deadline to six months—effectively reversing the decision made by Congress.[35] Similarly, *Fintiv* stipulations accelerate the effect of the statutory estoppels at 35 U.S.C. § 315(e) by one year—could-have-raised estoppel now applies in district court *before* PTAB review is conducted rather than after as prescribed by Congress. And "compelling merits" plainly departs from the statute's "reasonable likelihood" test, *see* 35 U.S.C. § 314(a)—it is even higher than the preponderance standard that applies to final written decisions. *See* 35 U.S.C. § 316(e).

Setting aside whether it is lawful for an agency to depart from its authorizing statute, it should at least be plain that by rewriting the rules enacted by Congress, *Fintiv* itself qualifies as a rule.[36]

---

[34] *See* 157 Cong. Rec. S5429 (daily ed. Sep. 8, 2011) (noting that one year was chosen to ensure that petitioners have adequate time to conduct a prior art search and learn how claims are asserted in district court).

[35] *See* ANPRM, *supra* n. 33, 88 Fed. Reg. at 24515.

[36] The congressional leaders who enacted the AIA have specifically noted—and condemned—*Fintiv*'s departure from the statute. *See* Patrick Leahy and Bob Goodlatte, "Flawed Fintiv Rule Should Be Deemed Overreach in Tech Suit," Law360, Jun. 20, 2024 ("Congress passed the AIA after years of careful consideration, bipartisan compromise, and input from stakeholders and the public. When unelected agency officials attempt to rewrite the law, they distort the accountability between constituents and representatives.").

## II. Exempting *Fintiv* from rulemaking undermines the purposes of the APA

PTAB proceedings are not enforcement proceedings in which the agency investigates and prepares its case. They are adjudicative proceedings in which the *petitioner* develops the evidence and brings the case to the agency—the PTAB simply decides whether the petitioner has met its burden of proof. General statements of policy are appropriate for *investigative* proceedings because an agency typically cannot investigate and bring proceedings in every potential case. *See National Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014) (a "general statement of policy" explains how an agency will exercise its "enforcement discretion"); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (enforcement discretion is unreviewable under the APA because "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing"). In the case of PTAB proceedings, by contrast, there is no question that the USPTO *can* address the merits of every PTAB petition that is presented to it—it generally *did* do so before *Fintiv*. There is no enforcement-discretion justification for exempting *Fintiv* from rulemaking.

There also can be no doubt that *Fintiv* has serious consequences for petitioners. The fact that it has been applied unpredictably and chaotically at times does not mitigate that harm—it instead highlights why rulemaking should be required. The fact that the USPTO Director, for example, could decide tomorrow to again apply *Fintiv* to ITC proceedings—cutting off review for virtually every petition accompanied by an ITC case—makes it *more* appropriate to require notice-and-comment

rulemaking, not *less*. APA rulemaking would at least provide some predictability to businesses: it would allow them to know what the rules will be tomorrow, and even next week.

Subjecting *Fintiv* to notice-and-comment rulemaking would also allow amici and other affected parties to make their case to the executive branch that *Fintiv* is bad policy and is contrary to the bargain that Congress struck in the AIA. Even when agency actions are not judicially reviewable, appeals to follow the law can prick the conscience of executive officials—and draw the attention of Congress.[37]

Finally, if *Fintiv*'s facial commitment to a "balanced" and "holistic" assessment is sufficient to justify an exception from notice-and-comment rulemaking, all administrative agencies now have a roadmap for evading the APA. All they need to do is articulate their rules as nonexclusive factors, add the word "holistic," and—even if, in practice, one factor effectively dictates the outcome—the rule is no longer a rule. That cannot be what the APA demands. *Fintiv* should be subject to notice-and-comment rulemaking.

---

[37] *See* Dani Kass, "Reps. Tell Vidal She Is Overstepping with USPTO Power," Law360, Apr. 27 2023.

## CONCLUSION

The district court's judgment that *Fintiv* is not a rule subject to the Administrative Procedure Act should be reversed.

Respectfully submitted,

/s/ *Joseph Matal*

Joseph Matal
CLEAR IP, LLC
800 17th St., NW
Suite 500
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

Debra J. McComas
David L. McCombs
HAYNES AND BOONE, LLP
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
(214) 651-5375
Debbie.McComas@haynesboone.com
David.McCombs@haynesboone.com

*Counsel for Amici Curiae*

Dated: August 12, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amici curiae certifies that this brief:

(1) complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) and Federal Circuit Rule 29(b) because it contains 6995 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(2) complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word and is set in the Equity font in a size equivalent to 14 points or larger.

Dated: August 12, 2024

/s/ *Joseph Matal*