No. 2024-1864

IN THE

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION, EDWARDS LIFESCIENCES CORPORATION, EDWARDS LIFESCIENCES LLC,

*Plaintiffs-Appellants*,

*v.*

KATHERINE K. VIDAL, in Her Official Capacity as Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of California
Judge Edward J. Davila in Case No. 20-06128

**BRIEF OF UNIFIED PATENTS LLC AND ZERO MOTORCYCLES INC AS *AMICI CURIAE* IN SUPPORT OF APPELLANTS**

Mark S. Davies
Adam Greenfield
WHITE & CASE LLP
701 13th St NW, # 600
Washington, DC 20005
(202) 626-3600

Amanda Woodall
WHITE & CASE LLP
609 Main St, Ste 2900
Houston, TX 77002
(832) 786-6145

Yar Chaikovsky
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Sq, Ste 900.
Palo Alto, CA 94306
(650) 213-0320

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii
CASES ........ ii
STATUTES AND RULES ........ ii
OTHER AUTHORITIES ........ iii
STATEMENT OF INTEREST ........ 1
SUMMARY OF ARGUMENT ........ 2
BACKGROUND ........ 3
ARGUMENT ........ 6
I. The *Fintiv* Factors Are Substantive and Required Notice-and-Comment Rulemaking in Compliance With the APA. ........ 6
II. Notice-and-Comment Rulemaking Serves a Vital Role in Executive Branch Function. ........ 7
III. *Loper Bright Enterprises* Necessitates Intervention by This Court. ........ 8
CONCLUSION ........ 11
CERTIFICATE OF COMPLIANCE ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Apple Inc. v. Fintiv, Inc.*,
IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (designated precedential May 5, 2020) ....3

*Apple, Inc. v. Vidal*,
No. 20-cv-06128-EJD, 2024 WL 1382465 (Mar. 31, 2024) .... *passim*

*CommScope Techs. LLC et al. v. Dali Wireless, Inc.*,
IPR2022-01242, Paper 23 (PTAB Feb. 27, 2023) .... 4, 5, 9

*East Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) .... 6

*Int'l. Union, United Mine Works of Am. v. Mine Safety & Health Admin.*,
626 F.3d 84 (D.C. Cir. 2010) .... 6, 7

*La. Forrestry Ass'n Inc. v. Sec. U.S. Dept. of Labor*,
745 F.3d 653 (3d Cir. 2014) .... 6

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244 (2024) .... 2, 8

*Make The Road N.Y. v. Wolf*,
962 F.3d 612 (D.C. Cir. 2020) .... 7

*Mid Continent Nail Corp. v. U.S.*,
846 F.3d 1364 (Fed. Cir. 2017) .... 6, 7

*U.S. v. Mingo*,
964 F.3d 134 (2d Cir. 2020) .... 6

### STATUTES AND RULES

35 U.S.C. § 2(b)(2)(B) .... 3, 6

35 U.S.C. § 314(2) .... 3

35 U.S.C. § 314(a) .... 2, 3, 9

35 U.S.C. § 315(b) ....................2, 3, 4

**OTHER AUTHORITIES**

Andrew Dietrick & Jonathan Stroud, *Rules to Bind You: Problems with the USPTO's PTAB Rulemaking Procedures*, 51 N.M. L. REV. 430 (2021)........5, 7

Clarisa Long, *PTO and the Market for Influence in Patent Law*, 157 U. PA. L. Rev. 1965 (2009)....................3

Memorandum from Katherine K. Vidal to PTAB, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation 2 (June 21, 2022) ....................4

RPX Empower, *Public Comments Reveal Fault Lines over USPTO's NHK-Fintiv Rulemaking Proposal*, June 26, 2023 ....................8

## STATEMENT OF INTEREST[1]

Unified Patents LLC ("Unified") is a membership organization dedicated to deterring non-practicing entities ("NPEs"), particularly patent assertion entities ("PAEs"), and litigation investment entities ("LIEs"), from extracting nuisance settlements from operating companies based on patents that are likely invalid. Unified's 3,000-plus members are Fortune 500 companies, start-ups, automakers, industry groups, cable companies, banks, credit card companies, technology companies, open-source software developers, manufacturers, and others dedicated to reducing the drain on the U.S. economy of now-routine baseless litigations asserting infringement of patents of dubious validity.

Unified also files post-issuance administrative challenges—including *inter partes* review ("IPR") petitions with the Patent Office's Patent Trial and Appeal Board ("PTAB" or "Board")—against PAE patents it believes are unpatentable or invalid. This includes both international and domestic administrative challenges. Thus, Unified seeks to deter the assertion of poor-quality patents. Unified acts and litigates independently from its members. In 2023, Unified was the most frequent reexamination requester by far.

---

[1] No party's counsel authored this brief in whole or in part. No party, party's counsel, or any person other than amici or its counsel contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

Zero Motorcycles Inc. ("ZM") is an innovator and global leader in high performance electric motorcycles. As a pioneer in electric motorcycles, having a healthy and fair patent system that promotes and protects technological investment and development while preserving access to market alternatives and lawful competition is critical to ZM's growth, sustainability, and success.

IPR is vital to that system. It efficiently and expertly weeds out the bad patents that stand behind abusive litigation and in the way of real innovation and fair competition. The precedential *Fintiv* factors have empowered (and emboldened) the PTAB to deny institution of IPR petitions based on the existence of co-pending district court litigation. The District Court below has refused to question the USPTO's rulemaking as substantive, thereby permitting it to bypass notice-and-comment rulemaking requirements under the Administrative Procedure Act ("APA"). Amici have been deprived of their ability under the APA to provide comments before *Fintiv's* implementation.

## SUMMARY OF ARGUMENT

With its decision in *Apple, Inc. v. Vidal*, No. 20-cv-06128-EJD, 2024 WL 1382465 (Mar. 31, 2024), the Northern District of California has rubber-stamped the USPTO's admitted bypassing of the APA's notice-and-comment rulemaking requirement, allowing the outcome-determinative (and unreviewable) *Fintiv* factors to derail Congress' intended use of IPR to curtail the assertion of bad patents—just

because there is co-pending district court litigation. By accepting the Director's *ipse dixit* that the *Fintiv* factors are non-substantive, the District Court has improperly deprived the public and interested stakeholders of their ability to comment on USPTO rules before they go into effect.

While the USPTO's precedential application of the *Fintiv* factors to deny institution of meritorious IPRs has become entrenched, the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), provides a path for course correction, laying bare the compounded impropriety of this agency's actions. The USPTO has not only failed to follow the APA's required rulemaking procedure but also has promulgated the *Fintiv* factors in the absence of any ambiguity under 35 U.S.C. §§ 314(a) and 315(b). *Loper Bright Enterprises* makes clear that judicial scrutiny of the USPTO's misinterpretation of Congress' expressed intent is not merely justified, it is required.

## BACKGROUND

In 1999, Congress passed the American Inventors Protection Act ("AIA"), "which reorganized the [USPTO] and established it" as an independent executive agency. *See* Clarisa Long, *PTO and the Market for Influence in Patent Law*, 157 U. PA. L. Rev. 1965, 1973-74 (2009). Under the AIA, the USPTO "may establish regulations…which…*shall be made in accordance with [the notice-and-comment procedure of the APA].*" *See* 35 U.S.C. § 2(b)(2)(B) (citing 5 U.S.C. § 553, the rule-

making section of the APA) (emphasis added). Congress' intention to subject the USPTO to the standards of the APA is express and unavoidable.

So too is the Congressional language setting forth the parameters for institution of an IPR. The AIA sets forth (1) the substantive threshold for institution of an IPR: "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition", 35 U.S.C. § 314(a), (2) the temporal deadline for a petitioner's request, barring institution "if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent", 35 U.S.C. § 315(b), and (3) the circumstances where related civil actions bar institution of an IPR, barring institution if "the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent." 35 U.S.C. § 315(a).

Despite the unambiguous language of the AIA, the USPTO determined that "potential conflicts" between proceedings before the PTAB and district courts justified designating as precedential *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (designated precedential May 5, 2020), which set forth six "factors" to determine "whether to institute an AIA post-grant proceeding where there is parallel district court litigation:

1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;

2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;

3. investment in the parallel proceeding by the court and the parties;

4. overlap between issues raised in the petition and in the parallel proceeding;

5. whether the petitioner and the defendant in the parallel proceeding are the same party; and

6. other circumstances that impact the Board's exercise of discretion, including the merits.

*See* Memorandum from Katherine K. Vidal to PTAB, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation 2 at 1-2 (June 21, 2022), https://tinyurl.com/bd9kp23s, ("2022 Memorandum"). In so doing, the USPTO exploded the unambiguous 1-year bar to institution of Section 315(b) into a five-factor bouncer that takes priority over the merits of the petition itself. *See CommScope Techs. LLC et al. v. Dali Wireless, Inc.*, IPR2022-01242, Paper 23 at 4 (PTAB Feb. 27, 2023) (PTAB may "only consider compelling merits if they first determined that *Fintiv* factors 1-5 favored a discretionary denial.") Such overreach is unsurprising; the USPTO has also conceded that its "compelling merits standard is a higher standard than the [unambiguous] standard for institution set by statute." *Id.* at 2.

Through the precedential treatment of the *Fintiv* factors and other rules changes over the years, the USPTO has established a pattern of bypassing the APA's requirements. *See, e.g.*, Andrew Dietrick & Jonathan Stroud, *Rules to Bind You:*

*Problems with the USPTO's PTAB Rulemaking Procedures*, 51 N.M. L. REV. 430, 442-48 (2021) (detailing USPTO's move away from complying with APA's notice-and-comment procedure over years, starting with receipt and consideration of numerous comments in connection with changes to Trial Practice Guide in 2012 to perfunctory notice that included caveat that change to patentability standard was "procedural" and did not require APA compliance in 2018).

## ARGUMENT

### I. The *Fintiv* Factors Are Substantive and Required Notice-and-Comment Rulemaking in Compliance With the APA.

Amici recognize that appellants will have fully addressed issues related to the District Court's analysis of whether APA notice-and-comment rulemaking was required under applicable law. Amici simply note that before proceeding to discuss the applicable standard under the APA for determining whether the *Fintiv* factors are substantive, requiring notice-and-comment rulemaking under the APA, *Apple, Inc.*, 2024 WL 1382465 at *8-12, the District Court passingly referenced the USPTO's own classification of *Fintiv* as substantive—by noting that the 2022 Memorandum stated that the USPTO will be "proposing rules to install *Apple v. Fintiv* and related guidance, with additional proposed reforms", *id.* at *3. If the Director's position during litigation were correct, that *Fintiv* is not substantive, then there would be no need to "install" *Fintiv* through APA rulemaking procedures.

## II. Notice-and-Comment Rulemaking Serves a Vital Role in Executive Branch Function.

Federal agencies, including the USPTO, may not ignore the APA's rulemaking requirements. *See* 35 U.S.C. § 2(b)(2)(B) (citing 5 U.S.C. § 553). And for good reason—vital administrative purposes are served by compliance.

First, the quality of agency rulemaking is improved by testing proposed rules through exposure to public scrutiny and commentary. *Mid Continent Nail Corp. v. U.S.*, 846 F.3d 1364, 1373 (Fed. Cir. 2017); *Int'l. Union, United Mine Works of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 95 (D.C. Cir. 2010). The notice-and-comment procedure enables the public and potentially impacted persons to participate in the adoption and implementation of rules by offering information, comments, and suggesting alternatives, *U.S. v. Mingo*, 964 F.3d 134, 140 n. 11 (2d Cir. 2020); *La. Forrestry Ass'n Inc. v. Sec. U.S. Dept. of Labor*, 745 F.3d 653, 677 (3d Cir. 2014), resulting in rules that are likely more fair and educated in their intent and impact, *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021) (comments may reflect impact of proposed rule). The USPTO knows this from its early practice under the AIA; it held open the 2012 Trial Practice Guide for comments and changed certain proposed rules in response to public comments. *See* Dietrick & Stroud, *Rules to Bind You*, supra, at 442-43.

Second, notice-and-comment rulemaking ensures fairness to affected parties by alerting them to potential impacts on their substantive rights and giving them an

opportunity to be heard. *Mid Continent Nail Corp.*, 846 F.3d at 1373; *Int'l. Union, United Mine Works of Am.*, 626 F.3d at 95.

Third, compliance with the APA's rulemaking requirements helps develop a record for judicial review, for which there is a "strong presumption." *Make The Road N.Y. v. Wolf*, 962 F.3d 612, 623, 634 (D.C. Cir. 2020) (internal citations omitted). One means of developing a record for review is through the public's submission of evidence and information in support of comments or objections to a proposed rule. *Int'l. Union, United Mine Works of Am.*, 626 F.3d at 95.

None of these APA objectives were satisfied before the USPTO's implementation of the *Fintiv* factors. Nor does the USPTO's after-the-fact attempt at compliance with the APA's notice-and-comment rulemaking, *see Apple, Inc.*, 2024 WL 1382465 at *3, undo the harms inflicted for over four years on the petitioners who's meritorious IPR petitions were rejected based on extra-legislative restrictions set by the USPTO. Indeed, the number and breadth of comments received on the USPTO's tardy APA compliance effort evidence the impact of *Fintiv* on interested parties across the spectrum. *See* RPX Empower, *Public Comments Reveal Fault Lines over USPTO's NHK-Fintiv Rulemaking Proposal*, June 26, 2023, https://tinyurl.com/4d43wevj (noting over 760 comments on Federal Register and that "proposal has proven controversial across the spectrum.").

## III. *Loper Bright Enterprises* Necessitates Intervention by This Court.

*Loper Bright Enterprises* represents a sea change in APA law—essentially requiring *de novo* review of all questions of statutory interpretation by an agency such as the USPTO and that the "best reading" of the statute should be found, rather than merely a "permissible" one. *Loper Bright Enters.*, 144 S. Ct. at 2266. The Supreme Court held that "by directing courts to interpret constitutional and statutory provisions without differentiating between the two, Section 706 [of the APA] makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference. Under the APA, it thus remains the responsibility of the court to decide whether the law means what the agency says." *Id.* at 2261 (emphasis in original, internal citations omitted). From now on, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 2273. "[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.*

Here, it is irrefutable that the USPTO has gone beyond the "best reading" of the AIA by imposing more exacting, and extraneous, criteria under which the PTAB may deny (and has consistently denied) the institution of IPRs. Section 314(a) sets the substantive threshold for institution, requiring simply "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged." 35 U.S.C. § 314(a). And Sections 315(a)-(b) define the circumstances in which

parallel civil actions bar institution. Yet the USPTO has conceded that it applies a standard above and beyond that set by statute—a compelling merits standard. *CommScope Techs. LLC*, IPR2022-01242, Paper 23 at 2 ("compelling merits standard is a higher standard than the [unambiguous] standard for institution set by statute."). And this "threshold" showing has been rendered secondary by the USPTO's imposition of "practical," imported considerations about co-pending district court litigation, represented in the first five *Fintiv* factors. *Id.* at 4 (prioritizing considerations regarding co-pending litigation above merits).

In addition to increasing the threshold for institution, USPTO routinely ignores the statute's requirement to provide an explanation of its reasonable likelihood determination in all institution decisions. The AIA mandates that the Director "shall notify the petitioner and patent owner . . . of the Director's determination under subsection (a)." 35 U.S.C. § 314(c). Contrary to the USPTO's practice, this "determination" under subsection (a) does not refer to whether or not to institute trial; instead, it cross-references whether the Director "determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

Simply put, nothing in the AIA permits the USPTO to substitute its judgment for Congress' on how or where to draw lines of efficiency as between the PTAB's

mandate to invalidate bad patents and the "burdens" of litigation on district courts. The USPTO has overstepped its statutory authority under the AIA and the APA through its precedential treatment of *Fintiv* (with or without the after-the-fact notice-and-comment rulemaking proposed by the Director), an error that cannot be rectified without this Court's intervention under *Loper Bright Enterprises*.

## CONCLUSION

For the foregoing reasons and the reasons explained in Appellants' briefs, the Court should reverse.

Dated: August 12, 2024

Respectfully Submitted,

*/s/ Mark S. Davies*

Mark S. Davies
Adam Greenfield
WHITE & CASE LLP
701 13th St NW, # 600
Washington, DC 20005
(202) 626-3600

Amanda Woodall
WHITE & CASE LLP
609 Main St, Ste 2900
Houston, TX 77002
(832) 786-6145

Yar Chaikovsky
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Sq, Ste 900.
Palo Alto, CA 94306
(650) 213-0320

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. Cir. R. 29(b) and Fed. Cir. R. 32(b), because this brief contains 2,371 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

*/s/ Mark S. Davies*
Mark S. Davies
WHITE & CASE LLP

*Counsel for Amici Curiae*