No. 2024-1864

# United States Court of Appeals for the Federal Circuit

APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION,
*Plaintiffs-Appellants*

EDWARDS LIFESCIENCES CORPORATION, EDWARDS LIFESCIENCES LLC,
*Plaintiffs*

v.

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,
*Defendant-Appellee*

On Appeal from the United States District Court for the Northern District of California, No. 5:20-cv-06128, Judge Edward J. Davila

## CORRECTED BRIEF *AMICUS CURIAE* OF ASKELADDEN L.L.C. IN SUPPORT OF APPELLANTS AND REVERSAL

CARTER G. PHILLIPS
JOSHUA J. FOUGERE
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Tel.: (202) 736-8000
Fax: (202) 736-8711

*Counsel for Amicus Curiae*

August 12, 2024

## CERTIFICATE OF INTEREST

Counsel for *amicus curiae* Askeladden L.L.C. certifies the following:

1. The full name of every entity represented in this case by me is Askeladden L.L.C.

2. Askeladden L.L.C. is the real party in interest.

3. Askeladden L.L.C.'s parent company is The Clearing House Payments Company L.L.C. No publicly held company owns 10 percent or more of the stock of Askeladden L.L.C.

4. The names of all law firms and the partners or associates that appeared for Askeladden L.L.C. in the trial court or are expected to appear in this Court are Carter G. Phillips and Joshua J. Fougere of Sidley Austin LLP.

5. This Court resolved an earlier appeal from the same civil action in *Apple Inc. v. Vidal*, No. 2022-1249. The Court's opinion was issued March 13, 2023, and is reported at 63 F.4th 1. The panel consisted of Circuit Judges Lourie, Taranto, and Stoll.

6. I am not aware of any case that will directly affect or be directly affected by this Court's decision in the pending case.

/s/ *Carter G. Phillips*
Carter G. Phillips

August 12, 2024

## TABLE OF CONTENTS


CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iii

INTEREST OF *AMICUS CURIAE* ........ 1

ARGUMENT ........ 2

I. Notice-And-Comment Rulemaking Promotes Fairness And Legitimacy. ........ 3

A. Notice and comment promotes fairness. ........ 3

B. Notice and comment promotes legitimacy. ........ 6

II. Notice And Comment Is Especially Important in Patent Law. ........ 8

A. Notice and comment promotes the kind of stable legal rules on which the patent system depends. ........ 9

B. Without notice-and-comment rules regulating the institution of IPR proceedings, those decisions would receive no scrutiny outside the PTO. ........ 12

C. Deeming PTAB opinions precedential is not a substitute for notice and comment. ........ 14

III. The District Court's Decision Risks Freeing Numerous PTO Actions From Notice And Comment. ........ 17

CONCLUSION ........ 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967) .......... 13

*Nat'l Ass'n of Home Health Agencies v. Schweiker*,
690 F.2d 932 (D.C. Cir. 1982) .......... 5

*Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Lab. Rels. Bd.*,
777 F.2d 751 (D.C. Cir. 1985) .......... 12

*Am. Fed'n of Gov't Emps., AFL-CIO v. Block*,
655 F.2d 1153 (D.C. Cir. 1981) .......... 4, 5

*Am. Mining Cong. v. Mine Safety & Health Admin.*,
995 F.2d 1106 (D.C. Cir. 1993) .......... 14

*Apple Inc. v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023) .......... 14

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015) .......... 9

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) .......... 10

*Ass'n for Molecular Pathology v. PTO*,
689 F.3d 1303 (Fed. Cir. 2012) .......... 10

*Azar v. Allina Health Servs.*,
139 S. Ct. 1804 (2019) .......... 3, 12

*Batterton v. Marshall*,
648 F.2d 694 (D.C. Cir. 1980) .......... 7

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) .......... 18

*Bowen v. Mich. Acad. of Fam. Physicians*,
476 U.S. 667 (1986) .......... 13

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
144 S. Ct. 2440 (2024) .......... 15

*Cuozzo Speed Techs. LLC v. Lee*,
579 U.S. 261 (2016) .......... 13

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) .......... 15, 17

*Farrell v. Dep't of Interior*,
314 F.3d 584 (Fed. Cir. 2002) .......... 20

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .......... 6, 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) .......... 10

*Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*,
589 F.2d 658 (D.C. Cir. 1978) .......... 7

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) .......... 12

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) .......... 4

*Mach Mining, LLC v. EEOC*,
575 U.S. 480 (2015) .......... 13, 14

*Masco Corp. v. United States*,
303 F.3d 1316 (Fed. Cir. 2002) .......... 10

*Mid Continent Nail Corp. v. United States*,
846 F.3d 1364 (Fed. Cir. 2017) .......... 4

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995) .......... 18

*Mortg. Invs. Corp. of Ohio v. Gober*,
220 F.3d 1375 (Fed. Cir. 2000) .......... 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) .......... 3, 5

*New Jersey v. HHS*,
670 F.2d 1262 (3d Cir. 1981) .......... 8

*NLRB v. Wyman-Gordon Co.*,
394 U.S. 759 (1969) .......... 4

*In re NTE Conn., LLC*,
26 F.4th 980 (D.C. Cir. 2022) .......... 16

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) .......... 11

*PPL Wallingford Energy LLC v. FERC*,
419 F.3d 1194 (D.C. Cir. 2005) .......... 6

*Royal Brush Mfg., Inc. v. United States*,
75 F.4th 1250 (Fed. Cir. 2023) .......... 5

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018) .......... 3

*Small Refiner Lead Phase-Down Task Force v. EPA*,
705 F.2d 506 (D.C. Cir. 1983) .......... 5

*Smiley v. Citibank (S.D.), N.A.*,
517 U.S. 735 (1996) .......... 11

*Sprint Corp. v. FCC*,
315 F.3d 369 (D.C. Cir. 2003) .......... 4

*Texaco Inc. v. Fed. Power Comm'n*,
412 F.2d 740 (3d Cir. 1969) .......... 5

*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) .......... 20

*Thryv, Inc. v. Click-to-Call Techs., LP*,
590 U.S. 45 (2020) .......... 13

*United States v. Arthrex*,
141 S. Ct. 1970 (2021) .......... 13

*Wages & White Lion Invs., LLC v. FDA*,
90 F.4th 357 (5th Cir. 2024) .......... 6, 8

*Weyerhaeuser Co. v. Costle*,
590 F.2d 1011 (D.C. Cir. 1978) .......... 7

**Statutes and Regulations**

5 U.S.C. § 553(b)(3) .......... 4

5 U.S.C. § 553(d) .......... 4

35 U.S.C. § 2(b)(2) .......... 18

35 U.S.C. § 41(c)(1) .......... 19

35 U.S.C. § 114 .......... 19

35 U.S.C. § 119(b)(2) .......... 19

35 U.S.C. § 120 .......... 19

35 U.S.C. § 121 .......... 19

35 U.S.C. § 135(a)(1) .......... 19

35 U.S.C. § 314(d) .......... 13

35 U.S.C. § 316 .......... 19

35 U.S.C. § 316(a) .......... 18

35 U.S.C. § 326 .......... 19

42 U.S.C. § 1395hh(e)(1)(A) .......... 18

89 Fed. Reg. 23,338 (Apr. 3, 2024) .......... 11

**Administrative Decisions**

*Becton, Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586 (P.T.A.B. Dec. 15, 2017) .......... 20

*Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, IPR2012-00001 (P.T.A.B. Mar. 5, 2013) .......... 20

*Gen. Plastic Indus. Co. v. Canon Kabushiki Kaisha*, IPR2016-01357 (P.T.A.B. Sept. 6, 2017) .......... 20

**Scholarly Authorities**

Michael Asimow, *Nonlegislative Rulemaking and Regulatory Reform*, 1985 Duke L.J. 381 .......... 3

Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245 (2001) .......... 8

Cornelius M. Kerwin & Scott R. Furlong, *Time and Rulemaking: An Empirical Test of Theory*, 2 J. Pub. Admin. Rsch. & Theory 113 (1992) .......... 11

Jonathan S. Masur & Adam K. Mortara, *Patents, Property, and Prospectivity*, 71 Stan. L. Rev. 963 (2019) .......... 9, 10

Nicholas R. Parrillo, *Should the Public Get to Participate before Federal Agencies Issue Guidance? An Empirical Study*, 71 Admin. L. Rev. 57 (2019) .......... 7

**Other Authorities**

Andrei Iancu, *Remarks at the Ceremonial Swearing-In* (Feb. 23, 2018), tinyurl.com/44vtep65 .......... 10

Letter from Askeladden L.L.C. *et al.* to Andrei Iancu, PTO Director (Dec. 2, 2020), tinyurl.com/3ntmrnbv .......... 16

Memorandum from PTO Director to PTAB*, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation* (June 21, 2022), tinyurl.com/znpvbmuf .......... 16

PTAB, *Standard Operating Procedure 2 (Revision 11)* (July 24, 2023), tinyurl.com/ye22tyde ........................................................ 16

PTO, *Patent Trial and Appeal Board Parallel Litigation Study* (June 2022), tinyurl.com/48jr7dhd .......................................... 16

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Askeladden L.L.C. is a wholly owned subsidiary of The Clearing House Payments Company L.L.C. The Clearing House is a banking association and payments company that is owned by the world's largest commercial banks and dates back to 1853. The Clearing House owns and operates core payments system infrastructure in the United States, clearing and settling more than $2 trillion in payments each business day. As the country's oldest banking trade association, The Clearing House also provides informed advocacy and thought leadership on critical payments-related issues.

Independent of the business and activities of The Clearing House, Askeladden founded the Patent Quality Initiative as an education, information, and advocacy effort to improve the understanding, use, and reliability of patents in financial services and elsewhere. Through the Patent Quality Initiative, Askeladden strives to improve the patent system by, among other things, promoting improved patent holder behavior while also supporting effective intellectual property practices and improved innovation rights.

[1] No party's counsel authored this brief in whole or part; no party nor party's counsel contributed money intended to fund preparing or submitting it; and no person—other than *amicus*, its members, or its counsel—contributed money intended to fund preparing or submitting it. All parties have consented to the filing of this brief.

As a frequent participant in the patent system and thought leader on patent issues, Askeladden often looks for meaningful opportunities to provide its views to key decisionmakers on important issues related to patent law.

The district court's decision in this case fundamentally threatens Askeladden's most basic interest: its voice. Left standing, the district court's opinion offers the Patent and Trademark Office a roadmap to avoid the Administrative Procedure Act's notice-and-comment procedures when issuing significant rules on countless topics. If the agency follows that roadmap, moreover, the result would be a less fair, less stable, and less legitimate patent system. To preserve the many well-recognized benefits of notice-and-comment rulemaking and ensure that interested parties, including Askeladden, continue to have a meaningful say in the proper operation of the patent system, this Court should reverse.

## ARGUMENT

This *amicus* brief focuses on three related topics: (1) the historic and ongoing significance of notice-and-comment rulemaking and the values it promotes, (2) the particular importance of notice-and-comment rulemaking for the patent system and the PTO, and (3) the risks to those values that the district court's decision engenders.

## I. Notice-And-Comment Rulemaking Promotes Fairness And Legitimacy.

"The rulemaking procedures of the APA have been widely acclaimed as a brilliant political innovation." Michael Asimow, *Nonlegislative Rulemaking and Regulatory Reform*, 1985 Duke L.J. 381, 402. Among the many values served by notice-and-comment rulemaking, fundamental fairness and institutional legitimacy are paramount.

### A. Notice and comment promotes fairness.

Notice and comment guarantees that administrative agencies afford affected parties the most basic aspects of due process: "fair warning of potential changes in the law and an opportunity to be heard on those changes." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019). The "notice" part of "notice and comment" provides the first of those virtues, and the "comment" part provides the second.

**1.** Fair notice that an individual's legal rights or obligations are subject to change is "[a]n elementary and fundamental requirement of due process," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)—one with roots stretching back to English common law, *Sessions v. Dimaya*, 138 S. Ct. 1204, 1225 (2018) (Gorsuch, J., concurring). Notice ensures that individuals "have an opportunity to know what the law is and to conform their

conduct accordingly," and fosters "creativity in both commercial and artistic endeavors" by "giv[ing] people confidence about the legal consequences of their actions." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265–66 (1994).

Congress designed the rulemaking requirements of the APA "to assure fairness and mature consideration of rules of general application." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) (plurality) (citing legislative history). Regulated entities know what is coming because an agency must state the "terms or substance of the proposed rule" in a public "notice of proposed rulemaking," 5 U.S.C. § 553(b)(3), and the final rule must be a "logical outgrowth" of the proposal, *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1373 (Fed. Cir. 2017). Regulated entities also have "a reasonable time" to conform their conduct to the "new regulation," *Am. Fed'n of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981), because any regulation must be published at least "30 days before its effective date," 5 U.S.C. § 553(d). Far from an "arbitrary hoo[p] through which federal agencies must jump without reason," *Sprint Corp. v. FCC*, 315 F.3d 369, 373 (D.C. Cir. 2003), the APA's notice requirement is "an essential component of fairness to affected parties," *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983).

**2.** In addition to notice, the APA's comment procedure serves a second "elementary" component of due process: an "opportunity" for affected individuals "to present their objections." *Mullane*, 339 U.S. at 314. Basic fairness "requires that" parties have "a chance to present their case … before [the agency] acts." *Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932, 949 (D.C. Cir. 1982); *cf. Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1257–59 (Fed. Cir. 2023) (holding agency violated a "'relatively immutable' principle of due process" by depriving regulated party of "opportunity to show that [the evidence against it] is untrue").

Notice-and-comment rulemaking provides just that—"an opportunity to participate in the rule-making process." *Texaco Inc. v. Fed. Power Comm'n*, 412 F.2d 740, 744 (3d Cir. 1969); *accord Block*, 655 F.2d at 1156 ("Section 553(b) serves … the even more significant purpose of allowing interested parties the opportunity of responding to proposed rules and thus allowing them to participate in the formulation of the rules by which they are to be regulated."). Section 553(c) thus guarantees the public an opportunity to "submi[t]" their "written data, view, or arguments," and to ensure that the process is not a charade, the APA demands that agencies "conside[r]" the "relevant matter presented." *See also PPL Wallingford Energy*

*LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (holding APA requires agencies to meaningfully engage with comments). "In short, through advance notice and comment, every constituency has an opportunity to participate in a meaningful manner in making the laws that will affect it." Asimow, *supra*, at 402.

### B. Notice and comment promotes legitimacy.

Administrative agencies like the PTO are sometimes referred to as "the Fourth Branch of Government." *Wages & White Lion Invs., LLC v. FDA*, 90 F.4th 357, 362 (5th Cir. 2024) (en banc). They occupy a "unique constitutional position" in our system of government. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 536 (2009) (Kennedy, J., concurring in part and in the judgment). Recognizing that unique position, the APA offers a "working compromise, in which broad delegations of discretion [a]re tolerated as long as they [a]re checked by extensive procedural safeguards." *Id.* at 537. Notice-and-comment rulemaking is front and center among those procedural safeguards.

Viewed in that way, notice and comment is essential to the legitimacy of administrative agencies by ensuring that unelected administrators can hear from their constituencies and respond to their concerns. Indeed, "[t]he

legislative history of the APA explicitly states that due to the unrepresentative nature of an administrative agency, 'public participation in the rulemaking process is essential.'" *Batterton v. Marshall*, 648 F.2d 694, 704 n.47 (D.C. Cir. 1980). The "wide-ranging regulatory discretion" granted to agencies is tolerable only when accompanied by a "promulgation process" that provides "public awareness, understanding, and participation." *Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1028 (D.C. Cir. 1978).

Notice-and-comment rulemaking is at the core of that "promulgation process." Giving private citizens a voice in rulemaking "increase[s] the likelihood of administrative responsiveness to the needs and concerns of those affected." *Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*, 589 F.2d 658, 662 (D.C. Cir. 1978); *see also* Nicholas R. Parrillo, *Should the Public Get to Participate before Federal Agencies Issue Guidance? An Empirical Study*, 71 Admin. L. Rev. 57, 71 (2019) (notice and comment gives "stakeholders confidence that the agency understands and is responsive to their concerns"). Even if the agency ultimately disagrees or declines to accept a particular argument or position, "public participation" alone "tends to promote acquiescence in the result." *Guardian*, 589 F.2d at 662. At bottom, "the Administrative *Procedure* Act requires agencies to follow *procedures*, and

those *procedures* are what give agency decisions legitimacy." *Wages*, 90 F.4th at 389.

The flip side is equally powerful. "When [notice-and-comment] procedures are not followed in situations where they are in fact applicable," for example, "a court promotes neither the agency's ultimate mission nor respect for the law by ignoring the agency's indiscretion or condoning the agency's shortcut." *New Jersey v. HHS*, 670 F.2d 1262, 1281 (3d Cir. 1981). The same goes for the Executive Branch in which agencies operate: "[t]ake the President out of the equation"—as agency guidance documents or policy statements do—"and what remains are individuals and entities with a far more tenuous connection to national majoritarian preferences and interests." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2336 (2001).

## II. Notice And Comment Is Especially Important in Patent Law.

Notice-and-comment rulemaking is fundamental to all federal agency decision-making, but it serves unique values in patent law. A robust patent system encourages innovation and spurs economic growth through stable legal rules—the kind much more likely to be generated through the notice-and-comment process. Meanwhile, the APA's "working compromise"

between power and procedure, *Fox*, 556 U.S. at 537, risks being upended if PTO rules receive neither ex ante review from the public (through notice and comment) nor ex post review from the courts (through judicial review). The district court's decision creates precisely that risk.

### A. Notice and comment promotes the kind of stable legal rules on which the patent system depends.

**1.** The patent system is built on a promise of legal stability. The "encouragement of investment-based risk is the fundamental purpose of the patent grant," *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015), which in return provides legal rights that "allow [inventors] to capture significant financial returns by making and selling their inventions," Jonathan S. Masur & Adam K. Mortara, *Patents, Property, and Prospectivity*, 71 Stan. L. Rev. 963, 966 (2019). But if those legal rights "become unreliable or unstable, the purpose and function of the patent system will be undermined." *Id.* at 965–66.

The interest in promoting investment-backed expectations is at its apex in patent law. "The reason is the lag time between R&D investments and patent rewards." *Id.* at 971–72. Businesses pour capital into new technologies and innovations on the understanding that the existing legal regime will, more or less, govern any patent exclusivity rights that those

investments produce. Changes in patent law upset those reliance interests—whether they are "generally helpful or harmful," pro-patent or anti-patent. *Id.* at 974–76. "What matters are the expectations of the private firms that make investment decisions." *Id.* at 974.

The patent system's dependence on stable legal rules is well-established. The PTO itself has recognized that link. *See* Andrei Iancu, *Remarks at the Ceremonial Swearing-In* (Feb. 23, 2018), tinyurl.com/44vtep65 ("[The PTO] must endeavor to provide reliable, predictable, and high-quality [intellectual property] rights that give owners and the public alike confidence in those rights."). So has the Supreme Court, which has long warned courts to "be cautious before adopting changes that disrupt the settled expectations of the inventing community." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 739 (2002). And this Court has reiterated that warning repeatedly. *See Masco Corp. v. United States*, 303 F.3d 1316, 1327 (Fed. Cir. 2002); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1348 (Fed. Cir. 2010) (en banc); *Ass'n for Molecular Pathology v. PTO*, 689 F.3d 1303, 1343 (Fed. Cir. 2012) (Moore, J., concurring in part).

**2.** Notice-and-comment rulemaking encourages legal stability and protects the reliance interests that are so central to patent law. That is one

consequence of the sheer resource commitment that such a rulemaking requires. Even the quickest rulemakings take many months, but, more often, the process lasts for a year or more. *See* Cornelius M. Kerwin & Scott R. Furlong, *Time and Rulemaking: An Empirical Test of Theory*, 2 J. Pub. Admin. Rsch. & Theory 113, 124, 134–37 (1992). Because issuing legislative rules through notice and comment is relatively onerous, *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015), agencies have to think hard before deciding to act at all.

For those agencies that do embark on the notice-and-comment journey, moreover, exposure to public input imposes additional responsibilities. Notice and comment "assure[s] due deliberation." *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 741 (1996). Indeed, with concrete interests at stake and specialized knowledge to offer, interested parties may convince the agency that their proposal is so flawed that it should be scrapped altogether. *See, e.g.*, 89 Fed. Reg. 23,338, 23,379 (Apr. 3, 2024) ("[T]o provide more time to study the issues and concerns raised in comments, these final rules do not [adopt] any other provision of the 2023 proposed rules.").

On the other end of the process, those rules that make it across the finish line are more likely to endure. For one thing, "an agency seeking to

repeal or modify a legislative rule promulgated by means of notice and comment rulemaking is obligated to undertake similar procedures to accomplish such modification or repeal." *Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Lab. Rels. Bd.*, 777 F.2d 751, 759 (D.C. Cir. 1985). For another, because notice and comment "affords the agency a chance to avoid errors and make a more informed decision," *Allina Health*, 139 S. Ct. at 1816, the rules it produces are more likely to be consistent with Congress's purpose in the underlying statute and to serve the public interest. Put simply, "an opportunity for public input" often "produce[s] better" rules. *Kisor*, 139 S. Ct. at 2440 (Gorsuch, J., concurring in the judgment).

On balance, therefore, a patent system dependent on a stable legal structure should prefer notice-and-comment rulemaking to less formal procedures in which the "stroke of a pen" alone can change agency policy. *Id.* at 2443.

### B. Without notice-and-comment rules regulating the institution of IPR proceedings, those decisions would receive no scrutiny outside the PTO.

This case illustrates another unique-to-patent-law danger of sidestepping notice-and-comment procedures. In particular, because PTO rules pertaining to the decision whether to institute an IPR proceeding are exempt

from judicial review, without notice-and-comment rulemaking, no one outside the agency could meaningfully scrutinize the agency's decisions. That unusual result should raise judicial antennae even higher.

**1.** "Judicial review of administrative action is the norm in our legal system." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 495 (2015). That principle traces back to the earliest days of the country and was only "reinforced by the enactment of the Administrative Procedure Act." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967). Courts thus enforce a "strong presumption" in favor of judicial review of agency action. *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986).

In the America Invents Act, however, Congress "committed the decision to institute inter partes review to the [PTO] Director's unreviewable discretion." *United States v. Arthrex*, 141 S. Ct. 1970, 1977 (2021); *see* 35 U.S.C. § 314(d). Accordingly, courts may not review the Director's decision whether to institute review in a particular case, *Cuozzo Speed Techs. LLC v. Lee*, 579 U.S. 261, 275 (2016), even when the decision allegedly exceeded a statutory limit on institution, *see Thryv, Inc. v. Click-to-Call Techs., LP*, 140 S. Ct. 1367, 1370 (2020). Nor may courts review "the Director's instructions to the [Patent Trial and Appeal] Board, as delegatee, regarding how to exercise the

Director's institution discretion." *Apple Inc. v. Vidal*, 63 F.4th 1, 13 (Fed. Cir. 2023). Freed from any judicial scrutiny of its IPR institution decisions, the PTO is already in a "rar[e]" position. *Mach Mining*, 575 U.S. at 486.

**2.** Taking the further step of freeing the agency from public scrutiny during the notice-and-comment process would do serious violence to the APA's careful balance. As the D.C. Circuit has explained, in the normal course, the choice between notice-and-comment rulemaking or searching judicial review means "agency attentiveness to parties' arguments must come sooner or later. 'As in the television commercial in which the automobile repairman intones ominously 'pay me now, or pay me later,' the agency has a choice.'" *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1111 (D.C. Cir. 1993). Because the PTO knows that the AIA saves it from having to "pay later," vigorous enforcement of the APA's procedural requirements is the only means by which courts can ensure that the agency has to "pay now." Otherwise, the PTO gets to "pay never," which serves no legitimate procedural or substantive policy.

### C. Deeming PTAB opinions precedential is not a substitute for notice and comment.

This Court has already recognized that the Director's process of deeming a PTAB opinion precedential is no substitute for the full panoply of APA

procedures. Despite being "highly structured," that process is not as "visible to the public" as notice in the Federal Register, provides "no … opportunity for public comment," and produces decisions subject to judicial review only at the parties' instigation. *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1353 & n.4 (Fed. Cir. 2020); *see also Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2464–66 (2024) (Kavanaugh, J., concurring) (emphasizing the history and importance of unregulated parties being able to obtain judicial review of agency rulemaking).

This case illustrates the point. Had the PTO provided notice and opportunity for comment before designating the *NHK* and *Fintiv* decisions precedential, Askeladden and many other interested parties would have the opportunity to comment and weigh in. Askeladden could have explained, for example, that *Fintiv*:

- is inconsistent with 35 U.S.C. § 315(b) because it effectively shortens the statutory window for seeking IPR institution;
- undermines the AIA's design by reinstating the congressionally rejected rule that parallel district court proceedings should weigh against instituting IPR;
- conflicts with the covered-business-method review statute by transforming a prerequisite for review into a bar to review; and
- contradicts nearly a century of U.S. patent policy by reducing opportunities to challenge low quality patents.

*See* Letter from Askeladden L.L.C. *et al.* to Andrei Iancu, PTO Director (Dec. 2, 2020), tinyurl.com/3ntmrnbv. Before finalizing the rule, the PTO would have had to either accommodate those concerns or provide a reasoned explanation for refusing to do so. *See Mortg. Invs. Corp. of Ohio v. Gober*, 220 F.3d 1375, 1379 (Fed. Cir. 2000); *In re NTE Conn., LLC*, 26 F.4th 980, 989 (D.C. Cir. 2022).

Instead, without any prior notice or public input, the PTO simply "designated" the *Fintiv* decision as precedential, making it "binding" on the PTAB for all future IPR institution decisions. *See* PTAB, *Standard Operating Procedure 2 (Revision 11)* at 5–7 (July 24, 2023), tinyurl.com/ye22tyde (requiring input from only PTAB members before recommending designation to the PTO Director).[2]

---

[2] The PTO's decision to seek public comment on the *Fintiv* rule several months *after* deeming it precedential was too little too late. The rule was already wreaking havoc, with *Fintiv*-based institution denials rising precipitously in the months and years following its designation. *See* PTO, *Patent Trial and Appeal Board Parallel Litigation Study* 11–16 (June 2022), tinyurl.com/48jr7dhd. And the request for comments has so far produced nothing more than a nine-page guidance "memorandum" that largely ignores the "822 comments" received. *See* Memorandum from PTO Director to PTAB*, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation* 2 (June 21, 2022), tinyurl.com/znpvbmuf.

This case offers just one example of forgoing notice-and-comment rulemaking in favor of PTO internal process. The latter, unlike the former, offers no opportunity for public input before the rule takes effect and leaves the agency free to disregard any public commentary it does receive. It is, in short, "not equivalent in form or substance to traditional notice-and-comment rulemaking." *Facebook*, 973 F.3d at 1353.

## III. The District Court's Decision Risks Freeing Numerous PTO Actions From Notice And Comment.

If left standing, the district court's opinion would free countless PTO actions from the requirements of notice-and-comment rulemaking and provide a roadmap for how to do so. The result would be a patent system in which the public's ability to learn and provide input on the governing rules is left to the agency's whims.

**A.** To hold that the *NHK-Fintiv* rule is a policy statement and not subject to notice and comment, the district court's reasoning boils down to just two points: the PTO (1) used a non-exhaustive multifactor test (2) to guide a decisionmakers' discretion.

Ostensibly, the district court identified four attributes of the *NHK-Fintiv* rule that allegedly made it a policy statement: (1) it "require[s] action only of the PTAB" in its exercise of a discretionary function; (2) it applies

prospectively; (3) it uses a non-exclusive multifactor test; and (4) it is not dispositive of the institution decision. *See* Appx17–20. In practice, however, the last three factors reduce just to one.

Start with the second attribute—the district court's observation that the Director's designation of *NHK* and *Fintiv* as precedential "had only a prospective effect." Appx17. That is entirely unremarkable. "A statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The patent statutes, including the AIA, contain no such "express" grant of retroactive rulemaking power. *See* 35 U.S.C. §§ 2(b)(2), 316(a); *cf.* 42 U.S.C. § 1395hh(e)(1)(A) (providing that Medicare regulations "shall not be applied … retroactively …unless" certain findings are made). Given that limited authority and this Court's concomitant refusal to recognize any retroactive effect of PTO rules, *see Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1179 n.8 (Fed. Cir. 1995), very few (if any) PTO actions will have anything other than "a prospective effect."

The third and fourth attributes then collapse into each other. The third attribute is that *NHK-Fintiv* consists of "a set of non-exclusive factors" and

thus leaves room for the Board to "exercise its discretion." Appx19. The fourth is that *NHK-Fintiv* "repeatedly notes that various facts may weight in favor of or against instituting IPR," and therefore is "not outcome-determinative." Appx20–21. But read together, the fourth attribute is simply a restatement of the third: both ask whether decisionmakers may resort to unenumerated circumstances in exercising their discretion. In practice, then, the district court's reasoning exempts from notice and comment any PTO action that (1) uses a non-exhaustive multifactor test (2) to guide agency decisionmakers' discretion.

**B.** Countless PTO actions would satisfy that sweeping rule because both attributes are commonplace in patent law. Taking the two attributes in reverse order, the PTO can issue rules governing its exercise of discretion on dozens of topics: whether to require models or specimens with patent applications, *see* 35 U.S.C. § 114; whether to force applicants to restrict their applications, *id.* § 121; whether to deem late-filed priority claims a waiver, *id.* §§ 119(b)(2), 120, or to accept untimely patent maintenance fees, *id.* § 41(c)(1); whether to institute derivation, IPR, or post-grant review proceedings, *id.* §§ 135(a)(1), 316, 326; and so on. On the district court's reasoning,

every "the Director may" in the patent statutes presents an opportunity to issue binding rules free from public notice and comment.[3]

That broad authority is likewise not meaningfully limited by the requirement that the PTO's rule take the form of a non-exhaustive multifactor test. After all, how the PTO chooses to phrase its rules lies entirely in its own discretion, and the agency uses multifactor tests all the time. The PTAB, for example, uses a non-exhaustive, seven-factor standard in determining whether to deny IPR institution for follow-on petitions. Decision at 9–10, *Gen. Plastic Indus. Co. v. Canon Kabushiki Kaisha*, IPR2016-01357 (P.T.A.B. Sept. 6, 2017) (precedential). It considers six "non-exclusive factors" in deciding whether to deny institution when the petition presents arguments similar to those considered in a prior proceeding before the PTO. Decision at 17–18, *Becton, Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586 (P.T.A.B. Dec. 15, 2017) (precedential). And it weighs five "important" (but not dispositive) factors in determining whether to permit

[3] The district court's attempt to limit *NHK-Fintiv* to the PTAB, rather than the whole PTO, lacks any meaningful basis. *See, e.g.*, *Farrell v. Dep't of Interior*, 314 F.3d 584, 590–91 (Fed. Cir. 2002) (analyzing whether agency's internal discipline manual was "binding on the agency" and thus subject to notice and comment); *Texas v. United States*, 50 F.4th 498, 524 (5th Cir. 2022) (holding agency memorandum restricting exercise of prosecutorial discretion was legislative rule).

additional discovery during an IPR. Decision at 6–7, *Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, IPR2012-00001 (P.T.A.B. Mar. 5, 2013) (precedential). Under the district court's reasoning, if a Director wants to avoid the strictures of notice-and-comment, she now has a formula: locate one of the many statutory grants of agency discretion; add the magic words "non-exclusive" and "multifactor"; and what should have been a "rule" transforms into a "general statement of policy."

**C.** The potential consequences of the district court's rule are significant. By design, notice-and-comment rulemaking is a cumbersome process—one that a resource-constrained and time-limited agency will surely want to avoid if it can. Unless this Court rigorously enforces the PTO's obligation to follow that cumbersome process, there is a real risk that more and more significant PTO rules will be issued without prior notice and without opportunity for comment. The patent system would suffer as a result.

## CONCLUSION

This Court should reverse the district court's order granting summary judgment to defendant.

August 12, 2024

Respectfully submitted,

/s/ *Carter G. Phillips*
CARTER G. PHILLIPS
JOSHUA J. FOUGERE
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Tel.: (202) 736-8000
Fax: (202) 736-8711

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

Under Federal Rule of Appellate Procedure 32(g) and Federal Circuit Rule 32(b), I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure Rule 29(a)(5) and Federal Circuit Rule 29(b) because it 4,355 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

/s/ *Carter G. Phillips*
Carter G. Phillips

August 12, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2024, I caused the foregoing brief to be served on all registered counsel through the Court's CM/ECF system.

/s/ *Carter G. Phillips*
Carter G. Phillips

August 12, 2024