No. 2024-1864

# United States Court of Appeals for the Federal Circuit

APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION,
*Plaintiffs-Appellants*,

EDWARDS LIFESCIENCES CORPORATION, EDWARDS LIFESCIENCES LLC,
*Plaintiffs*

*v.*

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,
*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern District of California, No. 5:20-cv-06128, Judge Edward J. Davila

## Brief of *Amicus Curiae* PTAAARMIGAN in Support of Appellee and Supporting Affirmance

October 22, 2024

DAVID E. BOUNDY

POTOMAC LAW GROUP PLLC
P.O. BOX 590638
NEWTON, MA 02459
(646) 472 9737
DavidBoundyEsq@gmail.com

*Amicus Curiae*

## CERTIFICATE OF INTEREST

Counsel for *amicus curiae* certifies the following:

1. The full name of every party or *amicus* represented by me is PTAAARMIGAN LLC.
2. The names of the real parties in interest represented by me as *amici* are as named in 1.
3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici* represented by me are: None
4. The names of all law firms, partners, and associates that have appeared for the party or *amici* now represented by me in the trial court or agency or are expected to appear in this court are: David E. Boundy, Potomac Law Group PLLC.
5. Related Cases, Fed. Cir. R. 47.4(a)(5) and 47.5(b): None.
6. This is neither a criminal case with organizational victims, nor a bankruptcy.

Date: October 22, 2024

/s/ David E. Boundy
David E. Boundy
*Amicus Curiae*

# TABLE OF CONTENTS

***Page***

CERTIFICATE OF INTEREST .......... i

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iv

IDENTITY AND INTEREST OF AMICUS CURIAE .......... x

STATEMENT UNDER FRAP 29(a)(4)(E) .......... xii

INTRODUCTION and SUMMARY OF ARGUMENT .......... 1

BACKGROUND .......... 6

**A.** Taxonomy of administrative rules: adjudication vs. rulemaking, legislative vs. interpretative vs. general statements of policy .......... 6

**B.** Background timeline: SOP2, *NHK*/*Fintiv*, and this Court's rulings on rulemaking by "precedential opinion" .......... 10

ARGUMENT .......... 14

I. PTAP/POP precedential decisions are issued outside any rulemaking authority, and without rulemaking procedure—that doesn't make them invalid, but limits their binding authority .......... 14

**A.** In 2020, this Court cataloged many of the laws violated when POP precedential opinions are treated as "binding" .......... 15

**B.** The PTAB/POP violates other laws in attaching "binding" weight to subregulatory guidance .......... 16

**C.** *Wyman-Gordon*: an appropriate scolding .......... 18

II. Like *Wyman-Gordon*, application of the *NHK*/*Fintiv* rule is within the PTAB's *adjudicatory* authority—subject to the obligation to explain .......... 20

III. *NHK/Fintiv* fits within the PTAB/POP's authority to issue "general statements of policy" ........ 22

**A.** The PTAB/POP's specific small islands of rulemaking authority ........ 22

**B.** Appellants' complaint of panel misapplication of *NHK/Fintiv* goes to "as applied" challenges, not this facial challenge ........ 24

**C.** Many of appellants' and appellee's arguments are irrelevant, reflecting a misunderstanding of the taxonomy ..... 27

IV. SOP2 is part of an ongoing pattern of PTO misuse of subregulatory guidance ........ 30

V. Conclusion ........ 36

CERTIFICATE OF COMPLIANCE ........ 1

## TABLE OF AUTHORITIES

***Page(s)***

**Cases**

*Accardi v. Shaughnessy*, 347 U.S. 260 (1954) .......................................... 23

*Alabama Power Co. v. F.E.R.C.*, 160 F.3d 7 (D.C. Cir. 1998) .................... 6

*Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) .............................................................................................. 13

*Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) ........... passim

*Batterton v. Marshall*, 648 F.2d 694 (D.C. Cir. 1980) ............................ 28

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204 (1988) .................. 6

*Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979) ................................ 26

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ............ 2

*Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261 (2016) ................ 21

*Dept. of Labor v. Greenwich Collieries*, 512 U.S. 267 (1994) .................... 9

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) .................. 21

*Facebook v. Windy City Innovations, LLC*, 953 F.3d 1313 (Fed. Cir. Mar. 18, 2020) ...................................... passim

*Facebook v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed. Cir. Sep. 4, 2020) ......................................... passim

*Farrell v. Dep't of Interior*, 314 F.3d 584 (Fed. Cir. 2002) ....................... 26

*Fullerton v. Fahrenkopf*, 1999 WL 412601 (Fed. Cir. 1999) (unpublished) .............................................................................. 27

*Hoctor v. Dep't of Agriculture*, 82 F.3d 165 (7th Cir. 1996) .................... 29

*Jefferson v. Reno*, 123 F.Supp.2d 1 (D.D.C. 2000) .................................27

*Motor Veh. Mfrs. Ass'n v. State Farm Ins.,* 463 U.S. 29 (1983) .............21

*National Mining Ass'n v. McCarthy*, 758 F.3d 243 (D.C. Cir. 2014)........9

*NHK Spring Co. v. Intri-Plex Technologies, Inc.*,
IPR2018-00752, Paper 9 (PTAB Sept. 12, 2018) .................................11

*NLRB Union v. FLRA*, 834 F.2d 191 (D.C. Cir. 1987).............................9

*NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969).......................1, 19, 20

*Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015).................25, 28, 29

*Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.*,
896 F.3d 1322 (Fed. Cir. 2018) .............................................11, 20, 21

*Service v. Dulles*, 354 U.S. 363, 386−88 (1957) ...............................23, 26

*Tafas v. Doll*, 559 F.3d 1345 (Fed. Cir. 2009)..........................................9

*United States v. Picciotto*, 875 F.2d 345 (D.C. Cir. 1989) .......................26

*Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71 (2d Cir. 2006) ...............28

**Statutes**

35 U.S.C. § 3 ....................................................................................25, 34

35 U.S.C. § 316.............................................................................20, 21, 27

35 U.S.C. § 326...............................................................................................27

35 U.S.C. § 42 ...............................................................................................33

44 U.S.C. § 3501 *et seq.* (Paperwork Reduction Act)....................... passim

44 U.S.C. § 3507.......................................................................................31, 32

5 U.S.C. § 301 (the "Housekeeping Act") .................................... 22, 25, 30

5 U.S.C. § 4505a ..................................................................................... 34

5 U.S.C. § 552 ........................................................................... 4, 14, 16, 30

5 U.S.C. § 553 ............................................................................... passim

5 U.S.C. § 554 ............................................................................................ 6

5 U.S.C. § 601 *et seq*. (Regulatory Flexibility Act) .......................... passim

5 U.S.C. § 604 .......................................................................................... 17

5 U.S.C. § 701 ............................................................................................ 2

5 U.S.C. § 706 ...................................................................................... 5, 21

**Regulations**

15 C.F.R. § 29.2 ............................................................................ 14, 18, 28

5 C.F.R. Part 1320 (implementing regulations for the Paperwork Reduction Act) ......................................................................................... 17

**Other Authorities**

Administrative Conference of the United States, Recommendation 2017-5, Agency Guidance Through Policy Statements, https://www.acus.gov/recommendation/agency-guidance-through-policy-statements , reprinted at 82 Fed. Reg. 61734 (Dec. 29, 2017) .. 4

Administrative Conference of the United States, Recommendation 2019-1, Agency Guidance Through Interpretive Rules, https://www.acus.gov/recommendation/agency-guidance-through-

interpretive-rules, *reprinted at* 84 Fed. Reg. 38,927 (Aug. 8, 2019) .. 18, 28

AIPLA, letter to William Covey, Director of Office of Enrollement and Discipline, re rule requiring continuing legal education (Jan. 7, 2021), *available at* https://www.uspto.gov/sites/default/files/documents/AIPLA_Letter_to_USPTO_on_CLE_Guidance_010721_FINAL.pdf .. 33

Brief of *Amicus* David Boundy, *Proppant Express Investments LLC v. Oren Technologies, LLC*, IPR2018-00914 paper 30 (Dec. 26, 2018) ... 12

David Boundy, *Agency Bad Guidance Practices at the Patent and Trademark Office: a Billion Dollar Problem*, 2018 PATENTLY-O L.J. 20 (2018), available at https://ssrn.com/abstract=3258040 ............ xi, 1, 33

David Boundy, *An Administrative Law View of the PTAB's "Ordinary Meaning" Rule*, 25 WESTLAW J. INTELLECTUAL PROPERTY 13-16 (Jan. 30, 2019), available at https://ssrn.com/abstract=3326827 ................. 32

David Boundy, *The PTAB is Not an Article III Court, Part 3: Precedential and Informative Opinions*, 47 AIPLA Q. J. 1 (Jun. 2019). A "director's cut" with subsequent updates at http://ssrn.com/abstract=3258694 ............................................. 7, 22, 26

Drew Hirshfeld, Decision on Petition, 10/446,572 at 7-8 (Feb. 27, 2012) ........................................................................................................ 36

EXECUTIVE OFFICE OF THE PRESIDENT, FINAL BULLETIN FOR AGENCY GOOD GUIDANCE PRACTICES, OMB BULLETIN 07-02 (Jan. 18, 2007), *available at* https://www.whitehouse.gov/wp-content/uploads/legacy_drupal_files/omb/memoranda/2007/m07-07.pdf, *reprinted in* 72 Fed. Reg. 3432-40 (Jan. 25, 2007) .. 4, 18, 28, 36

Katherine Vidal, *Interim Procedure For Discretionary Denials in AIA Postgrant Proceedings With Parallel District Court Litigation*, (Jun. 21, 2022), available at https://www.uspto.gov/sites/default/files/documents/interim_proc_discretionary_denials_aia_parallel_district_court_litigation_memo_20220621_.pdf ................................................ 14

Patent and Trademark Office, FOIA production F-19-00277, available at https://usinventor.org/wp-content/uploads/PAP-and-PD-for-various-PTO-Executives.pdf ........................................................................ 34

Patent Trial and Appeal Board, *Precedential and Informative Decisions*, https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/precedential-informative-decisions................................. 30

Patent Trial and Appeal Board, *Standard Operating Procedure 2, Revision 10, Precedential Opinion Panel to Decide Issues of Exceptional Importance Involving Policy or Procedure,* https://www.uspto.gov/sites/default/files/documents/SOP2 R10 FINAL.pdf (Sep. 20, 2018) ...................................................................... 12

Patent Trial and Appeal Board, *Standard Operating Procedure 2, Revision 11, Designation or De-Designation of Decisions as Precedential or Informative* (Jul. 24, 2023), available at https://www.uspto.gov/sites/default/files/documents/20230724_ptab_sop2_rev11_.pdf ........................................................................ 5, 14, 20, 25

President Bill Clinton, Executive Order 12866 (Sep. 30, 1993), *reprinted at* 58 Fed. Reg. 51735.................................................................. passim

PTAAARMIGAN and others, letter to Patent and Trademark Office re rulemaking shortcutting in Terminal Disclaimer Rule (July 9, 2024), available at https://downloads.regulations.gov/PTO-P-2024-0003-0259/attachment_1.pdf or https://ssrn.com/abstract=4889906......xi, 32

PTAAARMIGAN and others, letter to Patent Public Advisory Committee re rulemaking shortcutting in Fee-Setting Proposed Rule (May 25, 2023), available at https://downloads.regulations.gov/PTO-P-2022-0033-0033/attachment_1.pdf or https://ssrn.com/abstract=4460340 ....................................................xii

PTAAARMIGAN, letter to Inspector General for the Department of Commerce, re waste, fraud, abuse, and procedural shortcutting in patent software (Oct. 16, 2023), available at https://ssrn.com/abstract=4604104 ....................................................xii

PTAAARMIGAN, letter to Office of Information and Regulatory Affairs re rulemaking shortcutting in DOCX rule (June 3, 2024), available at https://ssrn.com/abstract=4889902 ...................................................... xi

## IDENTITY AND INTEREST OF AMICUS CURIAE

PTAAARMIGAN (Patent and Trademark Attorneys, Agents, and Applicants for Restoration and Maintenance of Integrity in Government) advocates on behalf of intellectual property attorneys, agents and owners, and on behalf of IP-owning clients. PTAAARMIGAN focuses on issues where the substantive or procedural law provides protections against agency overreach, and a federal agency acts in contravention of that law.

This case addresses an issue of great importance to *amicus*, whose members are harmed when the Patent Office promulgates regulations without the procedures required by statute. Both the organization and its members have observed that the Patent Trial and Appeal Board ("PTAB") has not lived up to its promise (and Congressional purpose) of being an unbiased and less costly alternative to federal court validity litigation. The organization and its members believe that one reason for the PTAB's pattern of harm to small entities is that the PTAB's rulemaking-by-adjudication bypasses the procedures that require agencies to considers the public interest. The PTAB's rulemaking-by-precedential-opinion bypasses the public comment, information gathering, deliberation, and cost-benefit analysis required by the Administrative Procedure Act, Paperwork Reduction Act (44 U.S.C.

§ 3501 *et seq.*), and Executive Order 12866, and consideration of economic impact on small entities required by the Regulatory Flexibility Act (5 U.S.C. § 601 *et seq.*). The PTO's neglect of rulemaking procedure leads to regulatory costs on the public in excess of $ 1 billion per year.[1]

PTAAARMIGAN has commented on Patent Office rulemaking, particularly on the costs that the Patent Office imposes on the public when the Office engages in procedural shortcutting, as follows:

- Letter of PTAAARMIGAN and others to Patent and Trademark Office re rulemaking shortcutting in Terminal Disclaimer Rule (July 9, 2024), available at https://downloads.regulations.gov/PTO-P-2024-0003-0259/attachment_1.pdf or https://ssrn.com/abstract=4889906
- Letter of PTAAARMIGAN to Office of Information and Regulatory Affairs re rulemaking shortcutting in DOCX rule (June 3, 2024), available at https://ssrn.com/abstract=4889902
- Letter of PTAAARMIGAN to Inspector General for the Department of Commerce, re waste, fraud, abuse, and procedural

[1] See David Boundy, *Agency Bad Guidance Practices at the Patent and Trademark Office: a Billion Dollar Problem*, 2018 PATENTLY-O L.J. 20 (2018), available at https://ssrn.com/abstract=3258040

shortcutting in PTO's patent software (Oct. 16, 2023), available at https://ssrn.com/abstract=4604104

- Letter of PTAAARMIGAN and others to Patent Public Advisory Committee re rulemaking shortcutting in Fee-Setting Proposed Rule (May 25, 2023), available at https://downloads.regulations.gov/PTO-P-2022-0033-0033/attachment_1.pdf or https://ssrn.com/abstract=4460340

This brief brings a view of administrative law that may be helpful to the Court.

**STATEMENT UNDER FRAP 29(a)(4)(E)**

No party or party's counsel authored this brief in whole or in part.

No party or party's counsel contributed money that was intended to fund preparing or submitting this brief.

No person, other than *amici*, their members, and counsel, contributed money intended to fund preparing or submitting this brief.

Consent was requested of all parties by email on August 28, 2024. All parties noted non-objection.

## INTRODUCTION and SUMMARY OF ARGUMENT

This case presents a striking example of an agency that refuses to follow the law. Three times, this Court has warned the PTAB that it may not bypass the rulemaking requirements of the Administrative Procedure Act (APA) via "precedential" decision. Nonetheless, the PTO now forces the same issue up to this Court for a fourth time.

Rulemaking procedure matters: the APA, Paperwork Reduction Act, Regulatory Flexibility Act, and several executive orders require public comment periods and cost-benefit analysis in order to prevent costly mistakes and agency overreach. The PTO's pattern of evading rulemaking procedure (through extrastatutory precedential decisions and the subterfuges listed in § IV of this brief) has real consequences, estimated at ***over $1 billion per year***.[2]

Nonetheless, in the narrow circumstances of this case, the district court should be affirmed. This case is on all fours with *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 764-65, 768-69 (1969). In *Wyman-Gordon*, the NLRB had promulgated a rule via "precedential" decision, bypassing procedures required by the APA. The Supreme Court condemned the NLRB's end run around statutorily-required *rulemaking*

---

[2] See footnote 1, *supra*.

procedure. The Court nonetheless affirmed the agency, because the agency had authority to reach the same result via the agency's authority to *adjudicate* individual cases. This Court should follow *Wyman-Gordon*: scold the PTO for its evasion of statutory rulemaking procedure, but affirm the district court and the *NHK/Fintiv* rule as a proper exercise of adjudicatory authority.

Denial of institution is a specific and narrow issue "committed to agency discretion" because there is "no law to apply," 5 U.S.C. § 701(a)(2); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971). Statutory silence leaves the Director (and her delegee the PTAB) essentially unbounded discretion to deny institution under the power to *adjudicate*. *NHK/Fintiv* neither increases nor decreases that power—setting it aside would have essentially no effect.

Second, the district court correctly evaluated *NHK/Fintiv* and found a proper exercise of the PTAB's authority to issue "general statements of policy." On the other hand, Appellants argue, correctly, that when panels treat *NHK/Fintiv* as "binding" those panels act unlawfully—but that goes to "arbitrary and capricious" challenges to individual adjudications "as applied," not facial invalidity of *NHK/Fintiv* as a "general statement of policy."

On the other hand, the Director overstates the proper role of *NHK/Fintiv*, claiming that *NHK/Fintiv* are "general statements of policy" but that *NHK/Fintiv* "requires" certain actions of Board panels or has "intra-agency binding" effect (ECF 49 at 1, 15, 33 n. 3). The Director's positions are mutually inconsistent. *NHK/Fintiv* cannot be both a "general statement of policy" and "require" some action or analytical process in an adjudication between opposing parties. A "policy statement" cannot constrain discretion—indeed, a panel *abuses* its discretion if it relies on *NHK/Fintiv* as a hard-edged constraint on discretion.

To be sure, just as any other adjudication requires sufficient explanation to avoid being arbitrary and capricious, the PTAB must explain its decisions to deny institution. Because "precedential opinions" are an extrastatutory frolic, they do not substitute for that explanation. The PTAB must give full and fair response to all arguments that a party may raise, and cannot rely on *NHK/Fintiv* to foreclose alternatives.

Third, the Court should ***not*** invalidate the *NHK/Fintiv* rule. When an agency has adjudicatory discretion and issues are not amenable to bright-line rulemaking, administrative law urges agencies to issue nonbinding "general statements of policy" to give advance

insight into agency thinking and to channel the discretion of agency employees. 5 U.S.C. §§ 553(b)(A), 552(a)(1). In 2007, the Executive Office of the President explained the "critical" and "enormous value" of "general statements of policy":

> OMB recognized the enormous value of agency guidance documents in general. Well-designed guidance documents serve many important or even critical functions in regulatory programs. Agencies may provide helpful guidance … to clarify how they tentatively will treat or enforce a governing legal norm through a policy statement. Guidance documents, used properly, can channel the discretion of agency employees, increase efficiency, and enhance fairness by providing the public clear notice of the line between permissible and impermissible conduct while ensuring equal treatment of similarly situated parties.[3]

The Administrative Conference of the United States (ACUS) has issued several recommendations[4] to the same effect, noting the benefits and importance of advance guidance and transparent disclosure of an agency's tentative thinking. (Both the President's GOOD GUIDANCE BULLETIN and ACUS remind agencies of long-standing case law, that

---

[3] FINAL BULLETIN FOR AGENCY GOOD GUIDANCE PRACTICES, OMB BULLETIN 07-02 (Jan. 18, 2007), *reprinted in* 72 Fed. Reg. 3432-40 (Jan. 25, 2007)3

[4] ACUS Recommendation 2017-5, Agency Guidance Through Policy Statements, https://www.acus.gov/recommendation/agency-guidance-through-policy-statements, 82 Fed. Reg. 61734 (Dec. 29, 2017)3.

guidance issued without statutory rulemaking procedure does not have force of law, and then offer implementation recommendations that inevitably flow from the law.) *As written* (but not necessarily *as applied*) the *NHK* and *Fintiv* decisions are exactly the kind of non-binding advisory guidance that should be *encouraged*.

Appellants' brief raises a legitimate gripe: individual PTAB panels have misread and misapplied *NHK/Fintiv*, giving it more authoritative weight than it deserves. "Policy statements" may not be treated as binding, and may not be relied on to foreclose alternatives. Panel decisions that rely on *NHK/Fintiv* to refuse to consider alternatives are arbitrary and capricious. But those violations should be remedied via "as applied" challenges, not a baby-with-the-bathwater facial invalidation.

The agency action that should be set aside as "not in accordance with law," "in excess of statutory jurisdiction," and "without observance of procedure," 5 U.S.C. § 706(2), is the PTAB's *Standard Operating Procedure 2, Designation or De-Designation of Decisions as Precedential or Informative* (Jul. 24, 2023) (SOP2). SOP2 claims "A precedential decision is binding Board authority in subsequent matters involving similar facts or issues" (Appx1748). That's nonsense. First, the PTAB/POP only has authority to adjudicate, not to issue rules that bind

against the public. *Facebook v. Windy City Innovations, LLC* (*Windy City II*), 973 F.3d 1321, 1351 (Fed. Cir. 2020) (unanimous additional views). Second, precedential decisions observe none of the statutorily-required procedural formalities required for "binding authority." The root cause of Appellants' gripe, of the Director's inconsistent positions, and the PTAB's unlawful decisionmaking, is SOP2. SOP2's claim that PTAB/POP decisions are "binding" is facially unlawful—*that's* the rule that should be set aside.

## BACKGROUND

### A. Taxonomy of administrative rules: adjudication vs. rulemaking, legislative vs. interpretative vs. general statements of policy

The APA governs executive branch adjudication under 5 U.S.C. § 554, and rulemaking under § 553. The two are separated by a "dichotomy." *Alabama Power Co. v. F.E.R.C.*, 160 F.3d 7, 11 n.5 (D.C. Cir. 1998) ("The APA does not contemplate the use of adjudication to develop rules."); *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 218 (1988) (Scalia, J., concurring) ("the entire Act is based upon a dichotomy between rule making and adjudication."). An agency may promulgate rules by adjudication (in the manner of an Article III court) only where a statute grants that authority explicitly, or where the

agency's adjudicatory procedures coincide with the APA's rulemaking procedure (an *extreme* rarity). This Court has noted the PTO's bifurcated authority: rulemaking authority lies with the Director, and the PTAB only has adjudicatory authority. *Windy City II*, 973 F.3d at 1351. Where "precedential" effect is the norm for decisions by Article III courts, it is an *extreme* rarity for decisions by Article I agencies.

5 U.S.C. § 553 partitions all rules into taxonomic pigeonholes. Those pigeonholes determine the agency's authority to promulgate a rule, the minimum procedures the agency must use in promulgating a rule, and the degree of force of law that the agency may attach to the rule. To simplify to the issues in this case, the pigeonholes lie on two axes:[5]

[5] A more complete taxonomy of rules (including the "other factors" only indirectly implicated in this case) appears in David Boundy, *The PTAB is Not an Article III Court, Part 3: Precedential and Informative Opinions*, 47 AIPLA Q. J. 1 (Jun. 2019). A more-complete version of this table appears in a "director's cut" updated to reflect subsequent cases, at http://ssrn.com/abstract=3258694,

| | ← greater procedure, greater binding effect | | less procedure, less binding effect → |
|---|---|---|---|
| | legislative rules | interpretative rules | general statements of policy |
| substantive | substantive legislative rules | substantive interpretative | substantive policy statement |
| substantive | 37 C.F.R. § 42.100 that specifies "broadest reasonable interpretation" (2012-18) to "ordinary meaning," (after 2018) or any allocation of the burden of proof | The elaboration of the CREATE Act in MPEP § 706.02(I). | 37 C.F.R. § 1.75(e), stating that patent claims "should" be in *Jepson* format that eases examination (with no enforcement or penalty). |
| procedural | procedural legislative rules | procedural interpretative | procedural policy statement |
| procedural | Most of the familiar regulations by that specify procedures in 37 C.F.R. Part 1 | Elaboration of agency procedural statutes and regulations in guidance that interpret genuine ambiguity. E.g., MPEP § 607.02 interpreting refund provisions of 35 U.S.C. § 42. | MPEP § 503 explaining a sufficient condition for showing "lost in the mail" and asking the Patent Office to accept a substitute, but not implying that these are necessary conditions. |

To somewhat oversimplify, the "substantive" vs. "procedural" axis tracks whether the intended regulatory effect governs conduct outside the agency or scope of the agency's jurisdiction (substantive) vs. governing only intra-agency conduct for benefit of agency efficiency (procedural). The horizontal axis reflects the APA's division of rules "into three boxes: legislative rules, interpretive rules, and general statements of policy." *National Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014).[6] This second axis reflects whether the rule uses

---

[6] Decisions of this court have confused the "substantive" vs. "procedural" axis with the "legislative" vs. "interpretative" vs. "policy statement" axis. *E.g.*, *Tafas v. Doll*, 559 F.3d 1345, 1355 (Fed. Cir. 2009) (a jumbled mish-mash of cites to "procedural vs. substantive" cases and "legislative vs. interpretative" cases).

"must" language vs. hortatory "should" language, whether some preexisting underlying statute or regulation exists that has force of law but has some ambiguity that must be interpreted, and other factors.

The *NHK*/*Fintiv* rule is in the right column, likely the upper right pigeonhole—(a) it is likely "substantive"[7] (as opposed to procedural), and therefore falls in the upper row, and (b) because *NHK*/*Fintiv* is framed in aspirational or hortatory language like "should" or "factor balancing" that gives general insight into the agency's discretion, but sets no outcome-determinative standard, it is a "general statement of policy." Policy statements fall into the third, yellow column.

---

Over the last fifteen years or so, most decisions of the D.C. Circuit have adopted a cleaner nomenclature, in which "substantive" is only used to contrast to "procedural," and "legislative" is used to contrast to "interpretative" and "policy statement." *E.g.*, *National Mining Ass'n*, 758 F.3d 243, 251-52; *see also* KRISTIN HICKMAN & RICHARD PIERCE, ADMINISTRATIVE LAW TREATISE (7th ed. 2023) (section headings in Chapter 4 use the taxonomy and nomenclature suggested here). *Amicus* urges this Court to clear up a source of substantial confusion by adopting this nomenclature.

[7] "Substantive" rules include scope of agency authority or jurisdiction, statute of limitations, burdens of proof, and similar issues that go to initial access to a tribunal. *Dept. of Labor v. Greenwich Collieries*, 512 U.S. 267, 271 (1994) ("assignment of the burden of proof is a rule of substantive law"); *NLRB Union v. FLRA*, 834 F.2d 191, 195-96 (D.C. Cir. 1987) (challenge to agency authority is "substantive"). Very likely, a rule governing institution is "substantive" rather than "procedural."

Agencies use "general statements of policy" for new or uncommon issues, issues not amenable to bright-line rules, or where facts are likely to be complex, so that definitive rulemaking would be difficult or premature. *National Min.*, 758 F.3d at 251-52. ACUS offers recommendations that inevitably follow from governing law, for implementation of "general statements of policy":[8]

> 2. An agency should afford members of the public a fair opportunity to argue for lawful approaches other than those put forward by a policy statement or for modification or rescission of the policy statement.
>
> 3. Although a policy statement should not bind an agency as a whole, it is sometimes appropriate for an agency, as an internal agency management matter … to direct some of its employees to act in conformity with a policy statement. But the agency should ensure that this does not interfere with the fair opportunity called for in Recommendation 2. …

### B. Background timeline: SOP2, *NHK/Fintiv*, and this Court's rulings on rulemaking by "precedential opinion"

The AIA gave the Director "complete discretion to decide not to institute review." *Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018). No statute or regulation purports to limit the Director's discretion to *deny* institution on any ground, so long

[8] ACUS Recommendation 2017-5, note 4 *supra*, 82 Fed. Reg. at 61734.

as the Director provides a non-arbitrary, non-capricious explanation consistent with the APA.

In October 2017, in *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) this Court struck down a rule that the PTAB had attempted to promulgate by precedential opinion. Seven judges of this Court noted that PTAB precedential opinions do not follow statutory requirements for rulemaking. 872 F.3d at 1327 (five-judge plurality), 1339 ("The Patent Office cannot effect an end-run around [the APA] by conducting rulemaking through adjudication …") (Reyna and Dyk, J., concurring).

*NHK Spring Co. v. Intri-Plex Technologies, Inc.*, IPR2018-00752, Paper 9 at 11-20 (PTAB Sept. 12, 2018) collected factors that would be used to guide the Director's discretion to *not* institute. *NHK* characterizes them as factors to be "balanced," to guide "discretion." Nowhere does the *NHK* panel imply that any factor, singly or in combination, mandates one outcome or the other. *NHK* is clear that while *NHK* channels that discretion, the outcome is nonetheless discretionary.

The PTO created the POP Precedential Opinion Panel in September 2018. PTAB, *Standard Operating Procedure 2, Revision 10, Precedential Opinion Panel to Decide Issues of Exceptional Importance*

*Involving Policy or Procedure,* https://www.uspto.gov/sites/default/files/documents/SOP2 R10 FINAL.pdf (Sep. 20, 2018). SOP2 includes a problematic sentence, "A precedential decision is binding Board authority in subsequent matters involving similar facts or issues." SOP2 Rev. 10, § II(D) at 11. This brief, at §§ I and IV, will show that this sentence is incorrect, and is the source of the agency missteps that bring the parties to this case.

In the maiden voyage for the POP, one of the *amicus* briefs reminded the POP of *Aqua Products*' admonition that the PTAB/POP lacks rulemaking authority, and that the PTAB/POP was building a house of cards on a foundation of sand. Brief of *Amicus* David Boundy, *Proppant Express Investments LLC v. Oren Technologies, LLC*, IPR2018-00914 paper 30 (Dec. 26, 2018). This brief alerted the PTAB/POP to procedural obligations for agency rulemaking and SOP2's departures from those obligations.

In March and September 2020, this Court invalidated the rule adopted in *Proppant*. *Facebook, Inc. v. Windy City Innovations, LLC*, 953 F.3d 1313 (Fed. Cir. Mar. 18, 2020) (*Windy City I*), *reaffirmed on rehearing Windy City II*, 973 F.3d 1321. A unanimous "additional views" concurrence emphasized two fundamental principles: (a) the PTAB/POP has no relevant rulemaking authority, and (b) precedential

decisions do not meet the procedural formalities required by the statutes that govern rulemaking. 953 F.3d at 1340-44; 973 F.3d at 1349-53.

The PTAB/POP issued *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020), which specifies only "non-dispositive" factors to be weighed in exercising discretion, and that an existing trial date only makes institution "less likely," and does not create an outright bar. The *Fintiv* panel assures that "in evaluating the factors, the Board takes a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review." *Fintiv* reassures that "[o]ther facts and circumstances may also impact the Board's discretion to deny institution." *Fintiv* was designated "precedential" on May 5, 2020, six weeks after *Windy City I* had warned of the limits of "precedential" decisions. 953 F.3d at 1340-44.

In September 2020, the Department of Commerce adopted 15 C.F.R. Part 29 to govern agencies' use of subregulatory guidance. 15 C.F.R. § 29.2(a) instructs that all Commerce component agencies "will indicate prominently that each guidance document does not bind the public, except as authorized by law." In four years, the PTAB has taken no publicly-visible action to implement § 29.2.

In June 2022, Director Vidal issued her Interim Guidance, which adds additional factors (*Sotera* stipulations, median delays, compelling merits, etc.) but reinforces that *NHK/Fintiv* is only "factor weighing" in exercise of discretion.

In July 2023, the PTO updated SOP2 (Appx1742-49). Despite *Aqua Products* and the two *Windy City* decisions, the 2023 update repeats the problematic assertion of "binding authority" (Appx1748).

Notably, none of the PTO's documents was published in the Federal Register, *contra* 5 U.S.C. § 552(a)(1).

## ARGUMENT

### I. PTAP/POP precedential decisions are issued outside any rulemaking authority, and without rulemaking procedure—that doesn't make them invalid, but limits their binding authority

It appears that Appellants and the Director are in agreement that *NHK/Fintiv* rule *as written* is a valid "general statement of policy." Appellants argue, and the Director does not materially dispute, that individual PTAB panels have over-relied in *NHK/Fintiv*, and treated it as binding. So the question is not taxonomic pigeonholing or validity; the question is the PTAB/POP's lack of authority to stand on precedential decisions as "binding." The PTAB/POP (even when the

Director is a member of the panel) lacks authority to issue binding rules. *Windy City II*, 973 F.3d at 1349-53; *Windy City I*, 953 F.3d at 1340-44; *Aqua Products*, 872 F.3d at 1327, 1339. Nonetheless, here we are ***again*** with the same central issue: unlawfulness of the PTAB's treating mere guidance as "binding," when the law says that precedential opinions are at best hortatory guidance.

### A. In 2020, this Court cataloged many of the laws violated when POP precedential opinions are treated as "binding"

For PTAB/POP decisions, "precedential" does not imply binding effect against any party other than agency employees. In *Windy City*, 973 F.3d at 1347-54, a rule-by-precedential-opinion had been issued after the PTAB/POP issued a public call for *amicus* briefing, attempting something analogous to § 553 notice-and-comment. Nonetheless, a unanimous "additional views" concurrence noted important statutory formalities that had not been observed by the POP Precedential Opinion Panel:

- Rulemaking authority lies with the Director, not the PTAB, 973 F.3d at 1350. "[A]djudication may not operate as an appropriate mechanism for the exercise of rulemaking." 973 F.3d at 1352.
- The POP Precedential Opinion Panel is not grounded in statute, let alone vested with rulemaking authority. 973 F.3d at 1350-51.

- A POP Opinion process does not meet the statutorily-required procedures of the APA. 973 F.3d at 1351.
- The PTAB/POP does not give notice that issues are under review for designation as "precedential," let alone request comment. 973 F.3d at 1353.
- The PTAB/POP has never published *Fintiv* (or ***any*** of its precedential decisions) in the Federal Register. *Id.* The PTAB/POP's evasion of 5 U.S.C. § 552(a)(1)(C) and (D) complicates the public's task of knowing where to look to determine what the law is.

**B. The PTAB/POP violates other laws in attaching "binding" weight to subregulatory guidance**

- Many of the PTAB/POP's precedential decisions impose substantial economic impact on small entities. The PTAB/POP's evasion of the cost-benefit analysis and procedures of the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.* leaves the PTO uninformed of those impacts, and leaves the PTO in violation of its obligation to "minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes." § 604(a)(6).
- Many of the PTAB/POP's precedential decisions alter the paperwork the public will file in the future, and therefore fall

within the coverage of the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq*. The PTAB/POP's evasion of cost-benefit analysis and the procedures required by 5 C.F.R. Part 1320 (the implementing regulations for the Paperwork Reduction Act) almost certainly leads to higher paperwork burdens than necessary.

- Many of the PTAB/POP's precedential decisions have economic effect of $200 million/yr. or more, and therefore require the cost-benefit analysis of Executive Order 12866. Because the POP evades rulemaking procedure, PTAB/POP fails to inform itself of economic effect of its precedential decisions. Because of the PTAB/POP's failure to gather economic information or consider consequences, almost certainly some of PTAB/POP's policy rulings end up harming American competitiveness and the public interest.
- The Department of Commerce requires its component agencies to prominently indicate the each subregulatory guidance document "does not bind the public." 15 C.F.R. § 29.2(a). None of the PTAB/POP's precedential decisions carry the required disclaimer.

- In 2007, the Executive Office of the President issued the BULLETIN FOR AGENCY GOOD GUIDANCE PRACTICES[9] which includes a substantial compendium of binding precedent governing agency use of subregulatory guidance, and adds a few recommendations for internal policing and public notice. No part of the PTO—and particularly not the PTAB—has ever implemented even the required provisions, let alone the recommendations.

- ACUS issued two recommendations,[10] one for interpretive rules, one for general statements of policy. Both Recommendations include substantial consolidations or restatements of existing law; the PTO doesn't follow them. Both recommendations recommend "minimum measures to avoid binding the public," none of which the PTO has observed.

### C. *Wyman-Gordon*: an appropriate scolding

In *Wyman-Gordon*, the NLRB had promulgated a rule via "precedential" decision, bypassing the procedures required by the APA. 394 U.S. at 763. Six Justices invalidated the NLRB's rule, and

---

[9] See note **Error! Bookmark not defined.**, *supra*.

[10] ACUS Recommendation 2017-5 on Policy Statements, note 4, *supra*; ACUS Recommendation 2019-1, Agency Guidance Through Interpretive Rules, https://www.acus.gov/recommendation/agency-guidance-through-interpretive-rules, 84 Fed. Reg. 38,927 (Aug. 8, 2019).

reminded the NLRB of the rulemaking requirements of the APA, 394 U.S. at 764-66 (four Justice plurality), 766, 780 (Justices Douglas and Harlan concurring-in-part):

> The Board asks us to hold that it has discretion to promulgate new rules in adjudicatory proceedings, without complying with the requirements of the Administrative Procedure Act.
>
> The rule-making provisions of [the APA], which the Board would avoid, were designed to assure fairness and mature consideration of rules of general application. They may not be avoided by the process of making rules in the course of adjudicatory proceedings. There is no warrant in law for the Board to replace the statutory scheme with a rule-making procedure of its own invention ...
>
> [T]he Board purported to make a rule: *i.e.*, to exercise its quasi-legislative power ... Adjudicated cases may and do, of course, serve as vehicles for the formulation of agency policies, which are applied and announced therein ... They generally provide a guide to action that the agency may be expected to take in future cases. Subject to the qualified role of *stare decisis* in the administrative process, they may serve as precedents. But this is far from saying, as the Solicitor General suggests, that commands, decisions, or policies announced in adjudication are "rules" in the sense that they must, without more, be obeyed by the affected public.

A similar scolding would be appropriate here.

Nonetheless, *Wyman-Gordon* affirms the agency, for reasons discussed next.

## II. Like *Wyman-Gordon*, application of the *NHK/Fintiv* rule is within the PTAB's *adjudicatory* authority—subject to the obligation to explain

The district court should be affirmed because a *sui generis* statute gives the PTAB the authority to issue substantially the same decisions under the Director's adjudicatory authority.

Silence in § 316(a)(2) leaves "[t]he Director [with] complete discretion to decide not to institute review." *Mohawk Tribe*, 896 F.3d at 1327. Entirely independent of *NHK/Fintiv*, the Director (and her delegee the PTAB) are free to deny institution on any rational basis. In *Wyman-Gordon*, seven Justices agreed that a similar *sui generis* statute gave the NLRB authority to act by adjudicatory order in individual cases, even though the NLRB's rule-by-adjudication was invalid as a rule. 394 U.S. at 766 (four-justice plurality opinion), 770 (three-justice concurrence). Just like *Wyman-Gordon*, the PTAB/POP lacks general authority to engage in rulemaking as claimed in SOP2, but a specific statute (§ 316(a)(2)) gives *sui generis* authority to *adjudicate* individual cases. *Mohawk Tribe*, 896 F.3d at 1327.

To be sure, a panel's exercise of adjudicatory authority requires a non-arbitrary, non-capricious explanation for any departure from *NHK/Fintiv*. 5 U.S.C. § 706(2)(A); *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 537 (2009); *Motor Veh. Mfrs. Ass'n v. State Farm*

*Ins.,* 463 U.S. 29, 48 (1983). Appellants' brief notes a number of cases in which the PTAB expressed "constraint" under some imagined "binding" effect of *NHK/Fintiv* (ECF 16 at 26-28, 42-47, discussed at §§ III.C and III.B, *infra*). Attributing binding effect to a PTAB/POP precedential opinion is an evasion of an obligation to explain, and a "factor[ ] which Congress has not intended it to consider" and therefore "arbitrary and capricious." *State Farm*, 463 U.S. at 43. But Appellants' remedy is an "as applied" challenge to those individual adjudications, *Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261, 275 (2016) ("arbitrary and capricious" is one class of "shenanigans" on which an institution decision may be challenged), not a facial set-aside of *NHK/Fintiv*.

Conversely, if a party raises a well-founded basis to depart from *NHK/Fintiv*, the PTAB must give a non-arbitrary, non-capricious reason to stick with it. One of the key benefits to an agency of full rulemaking procedure is that it gives the agency the right to explain itself once and be done. The word "precedential" and an errant misstatement in SOP2 do not relieve any panel of its obligation to seriously entertain counterarguments and give full explanations.

## III. *NHK/Fintiv* fits within the PTAB/POP's authority to issue "general statements of policy"

### A. The PTAB/POP's specific small islands of rulemaking authority

The PTAB/POP operates under the same defaults of Title 5 as all other intra-agency tribunals—like all other agencies, the PTAB/POP may issue *non-binding* rules against the public, and rules that bind only *against agency employees* with no adverse effect on any member of the public:[11]

- Jurisdiction to determine its own jurisdiction
- To bind agency employees in *ex parte* procedural matters not adverse to any member of the public, as a "housekeeping rule." 5 U.S.C. § 301 (commonly known as the "Housekeeping Act") and 35 U.S.C. § 3(a)(2)(A) ("Director shall be responsible for providing policy direction and management supervision *for the Office*"); *Service v. Dulles*, 354 U.S. 363, 386−88 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

---

[11] A more-fulsome explanation of the PTAB/POP's rulemaking authority is set forth in Boundy, *Part 3*, note 5 *supra*, at *26 to *37 and *44 to *45.

- To interpret genuine ambiguity as an "interpretative rule" under 5 U.S.C. §§ 553(b)(A), 553(d)(2), binding only against agency employees, not against the public.
- To issue "general statements of policy," also under 5 U.S.C. §§ 553(b)(A), 553(d)(2), that bind no one.

*NHK*, *Fintiv*, and the "Trial Date" section of the Director's 2022 "interim guidance" all use soft-edged advisory terminology, the classic characteristic of "general statements of policy:"

- the *Fintiv* factors are "non-dispositive," *Fintiv*, slip op. at 5
- "the Board's decisions … balance[ ] the following factors," *id.*
- "the Board takes a holistic view," *id.* at 6
- "this fact has sometimes weighed in favor," *id.* at 8
- "generally has weighed this fact in favor," *id.* at 9
- "balanced assessment of all the relevant circumstances in the case, including the merits," *id.* at 14
- other unrelated "factors … that bear on discretion to deny institution," *id.* at 16
- "the proximity to trial should not alone outweigh all of those other factors," 2022 Guidance at 8.

Except for statements in the Director's 2022 "interim guidance" directed to issues not relevant to this case, no language in any of the three purports to go beyond factors to be weighed in exercising discretion. Nowhere do any of *NHK*, *Finiv*, or the Director's 2022 "interim guidance" purport to set an outright bar to institution. Because all three are written as non-binding "general statements of policy," that is how they should be classified for evaluating whether notice-and-comment was required. Under that standard, *NHK/Fintiv* is valid.

Valid but ***non-binding***. That's where the PTAB has gone wrong.

### B. Appellants' complaint of panel misapplication of *NHK/Fintiv* goes to "as applied" challenges, not this facial challenge

Appellants raise a legitimate gripe (ECF 16 at 14-15, 26-28, 42-47) by noting instances where the PTAB explained that an argument was "not within [the PTAB's] purview to consider, in light of binding precedent" or that the PTAB thought that its discretion was "constrained" by *NHK/Fintiv* or that *NHK/Fintiv* had some "binding" or "precedential" weight.

Appellants' gripe is legitimate but mistargeted. Appellants' arguments support "as applied" challenges to specific *adjudications*. *Cuozzo*, 579 U.S. at 275 ("arbitrary and capricious" shenanigans

support challenge to institution). But Appellants' arguments are irrelevant to the facial challenge to the *rule* as raised in this case.

The rule that *is* unquestionably faulty, the root of all evils enumerated in Appellants' brief, is SOP2. SOP2 exceeds agency authority when it states that "[a] precedential decision is binding Board authority in subsequent matters involving similar facts or issues" (Appx1748). The PTAB has no relevant rulemaking authority. Precedential decisions do not observe the procedural prerequisites of the APA, the Regulatory Flexibility Act, the Paperwork Reduction Act, or any of the other laws that govern rulemaking. *Windy City II*, 973 F.3d at 1349-53 When an agency opts out of rulemaking procedure, it pays a "price:" the resultant rule does not bind against the public with force of law. *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015).

SOP2 claims to find supporting authority at 35 U.S.C. § 3(a)(2)(A) (Appx1743). But all that 35 U.S.C. § 3(a)(2)(A) says is "[t]he Director shall be responsible for providing policy direction and management supervision *for the Office*." At best, § 3(a)(2)(A) is coextensive with the Housekeeping Act, 5 U.S.C. § 301, which gives agency heads power to issue guidance describing obligations *of agency employees* vis-à-vis the agency and the public, *Service*, 354 U.S. at 386-88, but not rules that choose winners and losers, or that adversely affect any member of the

public. *Farrell v. Dep't of Interior*, 314 F.3d 584, 590-91 (Fed. Cir. 2002) (contrasting asymmetric procedural requirements for public-facing vs. agency-facing rules).[12] And § 3 has no suggestion of any waiver of the procedural requirements of the APA and other rulemaking statutes for any rule that does adversely affect any member of the public.

Agency rulemaking authority exists only where delegated by Congress. *Chrysler Corp. v. Brown*, 441 U.S. 281, 301, 303 (1979). An agency cannot create binding rulemaking authority by self-help, nor "grant itself a valid exemption to the APA for all future regulations" by simply issuing a guidance document. *United States v. Picciotto*, 875 F.2d 345, 346 (D.C. Cir. 1989). The PTAB's claim that SOP2 grants authority to issue "binding" rules has been rejected by this Court at least three times. *Windy City II*, 973 F.3d at 1350-54; *Windy City I*, 953 F.3d at 1340-44; *Aqua Products,* 872 F.3d at 1327, 1339. SOP2's continued claim to "binding" authority for subregulatory guidance documents is difficult to reconcile as good faith exercise of authority or

[12] The Director's brief (ECF 49 at 15, 35) confuses an agency's power to promulgate rules that bind *only against agency personnel* and whose only adverse effect is on the agency itself vs. rules that apply against the public. A full explanation of housekeeping rules and the *Accardi* principle is set forth in Boundy, *Part 3*, note 5 *supra*, in the SSRN "director's cut" version, at *10 and *30-*34.

as zealous representation. The PTAB's departure from law will not end until this Court instructs the PTAB to abide by its obligation to reflect "competent legal knowledge," 35 U.S.C. § 6; *Fullerton v. Fahrenkopf*, 1999 WL 412601 at *1 (Fed. Cir. 1999) (unpublished) (when a case arises out of misfeasance of former counsel, a court may urge current counsel to refer past counsel to bar authorities); *Jefferson v. Reno*, 123 F.Supp.2d 1, 6 (D.D.C. 2000).

### C. Many of appellants' and appellee's arguments are irrelevant, reflecting a misunderstanding of the taxonomy

Both the district court and Appellants' brief cite cases distinguishing between "interpretative rules" vs. "legislative rules," that is, the difference between column 1 (the blue column) and column 2 (the green column) of the table at page 8. "Interpretative rules" are not relevant in this case: *NHK/Fintiv* does not purport to interpret an ambiguity in any underlying law; it purports to fill a silence left by §§ 316(a)(2) and 326(a)(2).

"Interpretative rules" (issued without notice-and-comment procedure under the § 553(b)(A) opt-out) and "general statements of policy" are similar in one respect: an agency may not enforce either

category against the public[13] as the last word on the subject.[14] For either column of the taxonomy table, the agency should "afford members of the public a fair opportunity to argue for lawful approaches other than those put forward" by the agency.[15]

They differ in that an interpretative rule has some underlying rule (a statute or a regulation) that *itself* has force of law, and that has *some* enforceable meaning, and all the interpretative rule does is

---

[13] Importantly, an agency's interpretative rules asymmetrically bind *against the agency's employees* but not against the public (for example when a member of the public appears *ex parte*), even though the agency as a whole can change its mind. *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 60 (2d Cir. 2006) ("[A]n interpretative rule binds an agency's employees, including its ALJs…").

[14] 15 C.F.R. § 29.2(a); *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 97 (2015) ("[Interpretative] rules do not have the force and effect of law"); *Batterton v. Marshall*, 648 F.2d 694, 702-03 (D.C. Cir. 1980) (an agency may not rely on an interpretative rule to foreclose consideration of positions advanced by parties); ACUS Recommendation 2017-5 on Policy Statements, note 4, *supra* 82 Fed. Reg. at 61734; GOOD GUIDANCE BULLETIN, note **Error! Bookmark not defined.** *supra* § II(h), 72 Fed. Reg. at 3440.

[15] ACUS Recommendation 2019-1 on Interpretive Rules, note 10 *supra*, Rec. 2 ("accord [any member of the public affected by the rule] a fair opportunity to seek modification, rescission, or waiver of the rule"); ACUS Recommendation 2017-5 on Policy Statements, note 4 *supra*, 82 Fed. Reg. 61736 ("An agency should afford … fair opportunity to argue for lawful approaches other than those put forward by a policy statement").

interpret that ambiguity. *Perez*, 575 U.S. at 97 ("the critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers," cleaned up); *Hoctor v. Dep't of Agriculture*, 82 F.3d 165, 168-71 (7th Cir. 1996) (Posner, J.) (key qualifier for an "interpretative rule" is that the agency's interpretation of the ambiguity "can be derived from the [underlying text] by a process reasonably described as interpretation."). No such underlying rule exists here. In contrast, a policy statement gives guidance where the agency has otherwise-unbounded discretion, to give the public some advance indication of the agency's thinking, but does not itself state a binding norm. Interpretative rules interpret extant-but-ambiguous language; policy statements often fill silences. *NHK*/*Fintiv* validly does the latter. The problem is not the *NHK*/*Fintiv rule*. It is the PTAB's *implementation*.

The Director's rebuttal argument (ECF 49 at 26-35) is confused, and tries to avoid the bitter it must take with the sweet. It reverses cause-and-effect, confuses the "substantive" vs. "procedural" axis with the "legislative" vs. "interpretative" vs. "policy statement" axis, and confuses rules that bind *only against agency employees* with no adverse effect against any member of the public ("housekeeping rules" under 5 U.S.C. § 301—almost by definition confined to *ex parte* matters) with

rules that affect rights between a winner and a loser. The Director's general point is correct—*NHK*/*Fintiv* is a routine "general statement of policy"—but much of the analysis at these pages is unhelpful.[16]

## IV. SOP2 is part of an ongoing pattern of PTO misuse of subregulatory guidance

A jarring aspect of this case is the PTO's repetition of a violation of administrative law that this Court has ruled against several times. After *Aqua Products* and two decisions in *Windy City*, why does the PTO force the issue of precedential opinions for a ***fourth*** time?

After *Windy City I* reminded the PTAB/POP of its lack of rulemaking authority, ***six days*** later the PTAB/POP designated two more precedential decisions.[17] Barely a month later, the PTAB/POP designated *Fintiv* as "precedential." Since *Aqua* in October 2017, the PTAB/POP has designated at least 38 decisions as "precedential." None were published in the Federal Register, as required by 5 U.S.C. § 552(a). None went through the procedures required by the APA, 5 U.S.C. § 553, the Paperwork Reduction Act, 44 U.S.C. § 3507, the

---

[16] For helpful explanation, see footnote 12.

[17] *Precedential and Informative Decisions*, https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/precedential-informative-decisions.

Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.*, and several executive orders that require agencies to conduct cost-benefit balancing and similar impact analyses of their rules.

And yet, despite this Court's holding—on multiple grounds—that PTAB/POP precedential decisions have no force of law, and complete absence of the procedural formalities required for binding rulemaking, the PTAB continues to treat its own precedential decisions as "binding." The article noted in footnote 5 gives a detailed analysis of when the PTAB may and may not rely on "precedential" opinion and examples of harm to the patent system because of the PTAB's extensive misuse.

But it's not just the PTAB—every part of the PTO treats the laws that govern agency procedure and rulemaking as bureaucratic sport to be evaded:

- In *Terminal Disclaimer Practice to Obviate Nonstatutory Double Patenting*, 89 Fed. Reg. 40439 (May 10, 2024), the PTO claimed that a rule is procedural or interpretative. 89 Fed. Reg. at 40445. Nonsense. The *entire purpose* of this rule is to change substantive enforceability, and there is no underlying statute to "interpret." The only visible basis for the PTO's claim of exemption from notice-and-comment is desire to evade the APA, Regulatory Flexibility Act, Paperwork Reduction Act, and cost-benefit

executive orders. PTAAARMIGAN's comment letter[18] catalogs 25 pages of errors, omissions, and falsifications to evade rulemaking procedure and oversight.

- Similarly, in *Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board*, 83 Fed. Reg. 51340, 51357 (Oct. 11, 2018) the PTO claimed that the rule was procedural or interpretative, when *the whole point* of the rule was to change substantive criteria for patentability, and to fill a statutory silence. Again, the only apparent basis for the PTO's claim was evasion of statutory requirements for procedure, public vetting, cost-benefit balancing, etc. The PTO's evasion-by-falsification is elaborated in an article.[19]

- Most procedural rules require notice-and-comment under the Paperwork Reduction Act. 44 U.S.C. § 3507. In recent rulemaking notices, the PTO regularly opts out of this requirement by claiming to already have "reviewed and approved" clearances. PTAAARMIGAN's letters (pages vii-viii *supra*) note

---

[18] https://downloads.regulations.gov/PTO-P-2024-0003-0259/attachment_1.pdf

[19] David Boundy, *An Administrative Law View of the PTAB's "Ordinary Meaning" Rule*, 25 WESTLAW J. INTELLECTUAL PROPERTY 13-16 (Jan. 30, 2019)

that the PTO had never sought the relevant clearances, let alone obtained them. The PTO's claims are hard to explain as anything other than intentional falsehoods to an *ex parte* tribunal to evade oversight.

- In another recent rulemaking, AIPLA commented on a half-dozen errors, omissions, falsehoods, and evasions in a rule issued by the PTO's chief ethics officer.[20]
- An article estimates that the PTO's evasion of rulemaking procedure and misuse of guidance imposes costs on the public of over ***$1 billion per year***.[21]

Why is the PTO an outlier? Several possible reasons come to mind:

- The PTO has a combination of three factors that is apparently unique in the Federal Government: the PTO has a segregated account for agency revenues and expenditures, 35 U.S.C. § 42(b), a waiver from anti-corruption salary caps of Title 5 (contrast 35 U.S.C. § 3(b)(2)(B) (50% bonuses for PTO senior career staff) to 5

[20] AIPLA letter re CLE rule, https://www.uspto.gov/sites/default/files/documents/AIPLA_Letter_to_USPTO_on_CLE_Guidance_010721_FINAL.pdf at 7-11

[21] See footnote 1, *supra*.

U.S.C. § 4505a(a)(2) (capping most bonuses at 10%, with "exceptional" cases at 20%)), and, for at least some executives with supposedly-neutral rulemaking, adjudicatory, and policy-making functions, compensation plans that calibrate pay to the agency's financial performance.[22]

> Performance Requirement 2: **Patent Legal Administration, Examination Guidance and Rulemakings [Weight 35%]**
>
> Develop an effective and efficient planning strategy and performance measurement system for the Office of Patent Legal Administration to contribute to the achievement of goals, objectives and targets based on requirements in the President's Budget and *USPTO 2018-2022 Strategic Plan*.
>
> As a fee-funded agency, the USPTO relies on user fee collections to fund operations. The USPTO considers a number of economic factors and relevant indicators when forecasting its workloads. While many of these defining indicators point toward renewed economic expansion, considerable uncertainty still remains regarding the current and near future prospects for growth. This uncertainty could affect anticipated USPTO workloads and fee collections which in turn could significantly impact the USPTO's long-term goals, objectives and targets, and therefore simultaneously affect any interim results.

---

[22] PTO production re FOIA request F-19-00277. The Deputy Commissioner's 2020 performance agreement is at https://usinventor.org/wp-content/uploads/PAP-and-PD-for-various-PTO-Executives.pdf pages 811-824.

Performance Requirement 3: **Office of Petitions and Petitions Processing [Weight 30%]**

Develop an effective and efficient business planning strategy and performance measurement system for the Office of Petitions to contribute to the achievement of goals, objectives and targets based on requirements in the President's Budget and *USPTO 2018-2022 Strategic Plan*.

As a fee-funded agency, the USPTO relies on user fee collections to fund operations. The USPTO considers a number of economic factors and relevant indicators when forecasting its workloads. While many of these defining indicators point toward renewed economic expansion, considerable uncertainty still remains regarding the current and near future prospects for growth. This uncertainty could affect anticipated USPTO workloads and fee collections which in turn could significantly impact the USPTO's long-term goals, objectives and targets, and therefore simultaneously affect any interim results.

No other agency has that combination.

- Evasion of Federal Register publication avoids adverse public comment that might inform the PTO of adverse consequences and costs that might force reconsideration or redirection.

- Publication of a Federal Register notice would put the rule on the radar of the Office of Information and Regulatory Affairs and Small Business Administration, for review under the Paperwork Reduction Act, the Regulatory Flexibility Act, and various good-government executive orders. Stealth rulemaking evades these oversight agencies, and avoids the self-introspection within the PTO to ensure that a rule is wise.

This Court has told the PTO three times already that it may not use "precedential decisions" to evade statutory rulemaking. Here we are a fourth time. The Court may infer a deliberate choice of the PTO's senior-most career officials to *not* implement inconvenient laws,[23] in favor of the dubious goals listed above.

## V. Conclusion

The district court should be affirmed, but the Court should warn the PTO (a fourth time) that PTAB/POP decisions are just guidance. Like any other guidance, they never "bind" against any party other than the PTO itself. This Court should remind the PTO of its obligations under law, and the costs and uncertainty that the PTO forces onto the public through procedural shortcutting.

---

[23] Drew Hirshfeld, Decision on Petition, 10/446,572 at 7-8 (Feb. 27, 2012) (refusing to implement the President's GOOD GUIDANCE BULLETIN and refusing to correct an agency overreach by invalidly-enforced guidance).

Date: October 22, 2024

By: /s/ David E. Boundy

DAVID E. BOUNDY
POTOMAC LAW GROUP PLLC
P.O. BOX 590638
NEWTON, MA 02459
(646) 472 9737
DBoundy@PotomacLaw.com
*Amicus Curiae*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limit of Federal Circuit Rule 29(b) because it contains 6961 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), less than the 7000 words authorized.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared using Microsoft Word 2003, in Century Schoolbook 14 pt, a proportionally spaced typeface.

Date: October 22, 2024 By: /s/ David E. Boundy
DAVID E. BOUNDY