**No. 2024-1864**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION,
*Plaintiffs-Appellants*,
EDWARDS LIFESCIENCES CORPORATION, EDWARDS LIFESCIENCES LLC,
*Plaintiffs*,

*v.*

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,
*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern District of California in Case No. 5:20-cv-06128-EJD, Judge Edward J. Davila

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
(202) 654-3343

ANDREW T. DUFRESNE
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7492

*Attorneys for Plaintiff-Appellant Google LLC*

MARK D. SELWYN
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

MARK C. FLEMING
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

November 22, 2024

*ADDITIONAL COUNSEL LISTED ON INSIDE COVER*

ALYSON M. ZUREICK
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

GARY M. FOX
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc., Cisco Systems, Inc., and Intel Corporation.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

WILMER CUTLER PICKERING HALE AND DORR LLP: Jane E. Kessner, Rebecca M. Lee (former), David M. Lehn (former)

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

[X] Yes (file separate notice; see below) [ ] No [ ] N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

Already filed.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: November 22, 2024

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Google LLC certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Google LLC

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

XXVI Holdings Inc.; Alphabet Inc.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

PERKINS COIE LLP: Daniel T. Shvodian, Theresa Nguyen

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

[X] Yes (file separate notice; see below) [ ] No [ ] N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

Already filed.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: November 22, 2024

/s/ Nathan K. Kelley
NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
(202) 654-3343

# TABLE OF CONTENTS

Page

CERTIFICATES OF INTEREST ....... i

TABLE OF AUTHORITIES ....... vi

INTRODUCTION ....... 1

ARGUMENT ....... 2

I. *NHK-FINTIV* IS A SUBSTANTIVE RULE, NOT A GENERAL STATEMENT OF POLICY ....... 2

A. The *NHK-Fintiv* Rule Affects Private Interests ....... 2

B. The *NHK-Fintiv* Rule Binds The Board ....... 15

II. THE DIRECTOR HAS NOT ESTABLISHED COMPLIANCE WITH THE AIA ....... 26

III. THE DIRECTOR'S RESPONSE ONLY CONFIRMS THAT THE *NHK-FINTIV* RULE WOULD HAVE BENEFITTED FROM NOTICE AND COMMENT ....... 28

CONCLUSION ....... 31

STATEMENT OF CONSENT

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*AFL-CIO v. National Labor Relations Board*,
57 F.4th 1023 (D.C. Cir. 2023)....................................................................13

*American Hospital Association v. Bowen*,
834 F.2d 1037 (D.C. Cir. 1987)....................................................................21

*Animal Legal Defense Fund v. Quigg*,
932 F.2d 920 (Fed. Cir. 1991) .......................................................................8

*Apple Inc. v. Fintiv, Inc.*,
IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020).........................22

*Apple Inc. v. Maxell, Ltd.*,
IPR2020-00203, 2020 WL 3662522 (P.T.A.B. July 6, 2020)......................10, 20

*Apple Inc. v. Sonrai Memory Ltd.*,
IPR2023-00819, 2023 WL 8099286 (P.T.A.B. Nov. 21, 2023).........................24

*Apple Inc. v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023) .......................................................................*passim*

*Aqua Products, Inc. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017) (en banc) ..................................................11, 12

*Batterton v. Marshall*,
648 F.2d 694 (D.C. Cir. 1980).....................................................................2, 8

*Brock v. Cathedral Bluffs Shale Oil Co.*,
796 F.2d 533 (D.C. Cir. 1986)...................................................................21, 22

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971)....................................................................................6, 29

*Coalition for Common Sense in Government Procurement v. Secretary of Veterans Affairs*,
464 F.3d 1306 (Fed. Cir. 2006) ......................................................................17

*CommScope Technologies LLC v. Dali Wireless, Inc.*,
IPR2022-01242, 2023 WL 2301719 (P.T.A.B. Feb. 27, 2023) ....................16, 22

*Disabled American Veterans v. Secretary of Veterans Affairs*,
859 F.3d 1072 (Fed. Cir. 2017) ....................18

*Erringer v. Thompson*,
371 F.3d 625 (9th Cir. 2004) ....................18, 19, 21

*General Electric Co. v. Environmental Protection Agency*,
290 F.3d 377 (D.C. Cir. 2002)....................9, 10

*In re Chestek PLLC*,
92 F.4th 1105 (Fed. Cir. 2024) ....................2, 5, 8

*Intel Corp. v. VLSI Technology LLC*,
IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020) ....................9

*International Business Machines Corp. v. Digital Doors, Inc.*,
IPR2023-00973, 2024 WL 209905 (P.T.A.B. Jan. 19, 2024) ....................23

*Lincoln v. Vigil*,
508 U.S. 182 (1993)....................5, 6

*Love v. McDonough*,
106 F.4th 1361 (Fed. Cir. 2024) ....................27

*Mada-Luna v. Fitzpatrick*,
813 F.2d 1006 (9th Cir. 1987) ....................2, 7, 15, 25

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)....................27

*Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*,
989 F.3d 1375 (Fed. Cir. 2021) ....................19, 20

*National Mining Association v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014)....................7, 8

*Pacific Gas & Electric Co. v. Federal Power Commission*,
506 F.2d 33 (D.C. Cir. 1974)....................5

*Paralyzed Veterans of America v. West*,
138 F.3d 1434 (Fed. Cir. 1998) ....................................................................8

*Pickus v. United States Board of Parole*,
507 F.2d 1107 (D.C. Cir. 1974)......................................................4, 13, 17, 23

*Pitsker v. Office of Personnel Management*,
234 F.3d 1378 (Fed. Cir. 2000) ..................................................................27

*Reeder v. Federal Communications Commission*,
865 F.2d 1298 (D.C. Cir. 1989)...................................................................13

*Small Refiner Lead Phase-Down Task Force v. United States Environmental Protection Agency*,
705 F.2d 506 (D.C. Cir. 1983).....................................................................29

*Sotera Wireless, Inc. v. Masimo Corp.*,
IPR2020-01015, 2020 WL 7049372 (P.T.A.B. Dec. 1, 2020)..........................24

*Splane v. West*,
216 F.3d 1058 (Fed. Cir. 2000) ..........................................................17, 18

*Stupp Corp. v. United States*,
5 F.4th 1341 (Fed. Cir. 2021) .......................................................................8

*Supercell Oy v. GREE, Inc.*,
IPR2020-00513, 2020 WL 3455515 (P.T.A.B. June 24, 2020)..................10, 20

*Veterans Justice Group, LLC v. Secretary of Veterans Affairs*,
818 F.3d 1336 (Fed. Cir. 2016) ..................................................................29

*W.C. v. Bowen*,
807 F.2d 1502 (9th Cir. 1987) ................................................................. 5-6

*Warder v. Shalala*,
149 F.3d 73 (1st Cir. 1998)..........................................................................21

*Xi'an Metals & Minerals Import & Export Co. v. United States*,
50 F.4th 98 (Fed. Cir. 2022) ....................................................................7, 8

## STATUTES AND REGULATIONS

5 U.S.C.
§ 552(a)(2) .......... 13
§ 553 .......... 27, 29

35 U.S.C.
§ 2(b)(2) .......... 27
§ 3(a)(2) .......... 27
§ 314(a) .......... 9, 12, 16
§ 315(b) .......... 28
§ 316(a) .......... 26

37 C.F.R. § 42.75 .......... 20

77 Fed. Reg. 48,680 (Aug. 14, 2012) .......... 26

## OTHER AUTHORITIES

PTO, *Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation* (June 21, 2022) .......... 16, 24

1947 Attorney General's Manual on the Administrative Procedure Act .......... 5

United States Department of Justice, *Justice Manual*:
§ 9-2.031 (Jan. 2020) .......... 14, 15
§ 9-27.240 (June 2023) .......... 15

## INTRODUCTION

The Director's response brief demands the freedom to announce policies like the *NHK-Fintiv* Rule ("*NHK-Fintiv*" or "the Rule") without the burden of notice-and-comment procedures, so that the agency can act nimbly to supposedly bolster the U.S. patent system. But that desire for flexibility, however well-intentioned, does not excuse the obligation to follow Administrative Procedure Act ("APA") requirements. Appellants' position is not that the Director must follow notice-and-comment procedures in all (or even most) actions. Rather, the Director must follow those procedures before taking actions that bind the agency in ways that affect parties' legally protected interests. Moreover, the Director must respect Congress's directive that policies regarding both the standard for institution of inter partes review ("IPR") and how IPRs interact with other legal proceedings be promulgated via the regulatory provisions of the America Invents Act ("AIA").

*NHK-Fintiv* is deeply flawed. Stakeholder feedback could have dramatically improved the Rule, which is one of the main purposes of notice and comment. The *NHK-Fintiv* Rule should be set aside because the Director failed to follow the procedures required under the APA and the AIA.

# ARGUMENT

## I. *NHK-FINTIV* IS A SUBSTANTIVE RULE, NOT A GENERAL STATEMENT OF POLICY

The *NHK-Fintiv* Rule has the two hallmarks of substantive rules that require notice-and-comment rulemaking. First, *NHK-Fintiv* "effects a change in existing law or policy which affects individual rights and obligations." *In re Chestek PLLC*, 92 F.4th 1105, 1109 (Fed. Cir. 2024) (quotation marks omitted). The Rule "grant[s] rights, impose[s] obligations, or produce[s] other significant effects on private interests," *Batterton v. Marshall*, 648 F.2d 694, 701-702 (D.C. Cir. 1980), by reducing the likelihood of IPR institution when there is parallel litigation. Second, *NHK-Fintiv* is binding on the Board, leaving it with no "discretion to follow, or not to follow" the Rule in deciding whether to institute IPR alongside parallel infringement litigation. *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987). The Director's contention that *NHK-Fintiv* is a general statement of policy exempt from notice-and-comment requirements is incorrect.

### A. The *NHK-Fintiv* Rule Affects Private Interests

The Director does not dispute that the *NHK-Fintiv* Rule has decreased the likelihood of IPR institution alongside co-pending litigation. This diminished access deprives infringement defendants of IPR's benefits and thus "produce[s] … significant effects on private interests," *Batterton*, 648 F.2d at 702—interests this Court has deemed "legally protected," *Apple Inc. v. Vidal*, 63 F.4th 1, 16 (Fed. Cir.

2023). Rules altering the standards an agency applies in evaluating applications for relief are substantive rules subject to notice and comment, even if the relief sought is discretionary. Appellants' Br. 36-41; *see infra* pp. 4-5, 11-13.

1. The Director takes issue (at 29-31) with applying this Court's prior holding in the context of Article III standing that *NHK-Fintiv* "threaten[s] … harm" to infringement defendants' "legally protected interest" by predictably "caus[ing] more denials of institution than might otherwise occur," and thus "causing harm in the form of denial of the benefits of IPRs linked to the concrete interest possessed by an infringement defendant." *Apple*, 63 F.4th at 16-17. Contrary to the Director's suggestion (at 30), Appellants' point is not that the standing question is *identical* to deciding whether a rule is substantive, but that those issues substantially *overlap* here. As Appellants explained (at 36), this Court held in confirming Appellants' standing that reducing the likelihood of institution deprives infringement defendants of IPR's benefits and thus qualifies as a harm to a legally protected interest. *Apple*, 63 F.4th at 16. But Appellants still had to (and did) show at summary judgment that the *NHK-Fintiv* Rule has the requisite "effect on rights, obligations, or interests" under the APA by showing that the Rule would, in fact, reduce the likelihood that IPR would be instituted. Appx1589-1591; Appx1639-1642.

The Director tries to distinguish this Court's prior ruling because it rested "on Apple's liability for infringement, emphasizing that Apple's 'injury is concrete and legally protected, because of the infringement suit.'" Director's Br. 30-31 (quoting *Apple*, 63 F.4th at 17). But the same is still true, and as the Court recognized, a rule that causes "more denials of institution than might otherwise occur" exposes petitioners (like Appellants) to greater risk of infringement liability in parallel litigation. *Apple*, 63 F.4th at 17. As the Director admits, the Court determined that this sort of injury is "legally protected." Director's Br. 31 (quoting *Apple*, 63 F.4th at 17). Thus, this Court's prior analysis demonstrates that *NHK-Fintiv* "affects private rights and interests"—including legal interests—similarly to how it causes a concrete injury to a legally protected interest for standing purposes.

2. The Director cannot distinguish Appellants' cases holding that rules altering the standards agencies use to assess applications for relief are substantive, even if the relief sought is discretionary. First, as Appellants explained (at 37-38), *Pickus v. United States Board of Parole*, 507 F.2d 1107, 1108, 1113-1114 (D.C. Cir. 1974), held that guidelines establishing "factors" for the parole board to consider when exercising "its discretion to parole eligible federal prisoners" had "great[] impact on an inmate's chances for parole" and were therefore subject to notice-and-comment requirements. The Director suggests (at 28) that *Pickus* is no longer good law because it "predates the Supreme Court's description of policy

statements" in *Lincoln v. Vigil*, 508 U.S. 182 (1993), as "announcing a manner of exercising a discretionary power." But the "description of policy statements" quoted in *Lincoln* long predated *Pickus*—it originated from the 1947 Attorney General's Manual on the Administrative Procedure Act, published decades before *Pickus* was decided in 1974. *See Lincoln*, 508 U.S. at 197. The D.C. Circuit cited that same description before *Lincoln* or *Pickus*. *See Pacific Gas & Elec. Co. v. Federal Power Comm'n*, 506 F.2d 33, 38 n.17 (D.C. Cir. 1974). The Director also argues (at 28-29) that institution decisions "involve[] no ultimate determination as to private parties' rights," as there is no "right" to IPR. But there is no right to parole either, so by the Director's logic, parole decisions could not involve any "determination as to private parties' rights," and *Pickus* would have come out the other way. The Director's attempt to distinguish *Pickus* fails.

The Director's efforts to distinguish Appellants' other cases fare no better. Contrary to the Director's suggestion (at 26-27), *Chestek* held that a rule requiring domicile addresses in trademark applications was *procedural* because it "alter[ed]" how applicants "present themselves ... to the agency," but did not alter the *substantive* standards for evaluating trademark applications. 92 F.4th at 1109-1110. *NHK-Fintiv* does not simply impose a procedural requirement for instituting IPR; it alters the substantive standard for evaluating petitions in a way that affects petitioners' rights and interests. Similarly, nothing in *W.C. v. Bowen*, 807 F.2d

1502 (9th Cir. 1987), turned on whether the benefits at issue were discretionary or a matter of right; the rule there was substantive because it altered the agency's decisions, causing the agency "to deny benefits in close cases where benefits might previously have been granted," and thus was a substantive rule. 807 F.2d at 1505. The same is true here.

The cases the Director invokes (at 23-24) are inapposite. *Lincoln* held only that an agency's announcement to "discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation" was a general statement of policy. 508 U.S. at 197. That narrow holding tracked *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), which held that "decisions to expend otherwise unrestricted funds are not, without more, subject to [] notice-and-comment requirements." *Lincoln*, 508 U.S. at 198. *Lincoln* did not hold that rules altering standards governing discretionary agency decisions can never be substantive; indeed, *Lincoln* hinged on the fact that the agency's decision "did not alter the [agency's] criteria for providing [healthcare] assistance." *Id.* *NHK-Fintiv*, by contrast, plainly alters the Board's criteria for IPR institution by precluding institution of IPRs that previously would have been instituted. *See* Appellants' Br. 48-49 (explaining how *NHK-Fintiv* has been outcome-determinative).

*Mada-Luna* is also distinguishable because, as Appellants explained (at 41) and the Director does not address, that case involved a rule not binding within the agency. 813 F.2d at 1016-1017. But *NHK-Fintiv is* binding within the agency, and it alters the standards for institution in a way that diminishes a party's chances of obtaining relief. Notice-and-comment rulemaking was required here, and *Mada-Luna* nowhere suggests otherwise. *See id.*

*National Mining Association v. McCarthy*, 758 F.3d 243 (D.C. Cir. 2014), is also easily distinguished. There, the D.C. Circuit held that the challenged EPA guidance had no "legal impact" whatsoever: "as a legal matter, the Final Guidance [was] meaningless." *Id.* at 252. Thus, permit applicants could "ignore EPA's Final Guidance without facing any legal consequences." *Id.* In contrast, *NHK-Fintiv* has numerous legal consequences. It imposes "requirements in order to obtain" IPR when related infringement litigation is pending, and it tells "regulated parties" (*i.e.*, prospective petitioners) "what they must do"—such as file early or make a *Sotera* stipulation—to increase their chances of overcoming disputed patent claims through IPR. 758 F.3d at 252.

The Director cannot distinguish cases describing substantive rules as "alter[ing] the landscape of individual rights and obligations" merely by arguing that no party has a "right" to IPR. Director's Br. 20 (quoting *Xi'an Metals & Minerals Import & Export Co. v. United States*, 50 F.4th 98, 106 (Fed. Cir. 2022)).

The fact that the benefits at issue are discretionary does not mean that institution decisions cannot "affect[] individual rights and obligations." *Chestek*, 92 F.4th at 1109 (quotation marks omitted). A substantive rule may "grant rights, impose obligations, *or produce other significant effects on private interests*." *Batterton*, 648 F.2d at 701-702 (emphasis added); *see also Chestek*, 92 F.4th at 1109 (notice-and-comment rulemaking was not required because challenged rule did not "substantively alter[] the rights *or interests* of applicants" (emphasis added)). The Director cites no case (at 20-21) that deemed an agency action non-substantive because it "only" produced significant effects on private interests; rather, the concerned actions qualified as *interpretive* because they merely clarified existing regulations (which the Director does not argue here regarding *NHK-Fintiv*). *See Xi'an*, 50 F.4th at 106; *Paralyzed Veterans of America v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998); *Animal Legal Defense Fund v. Quigg*, 932 F.2d 920, 927 (Fed. Cir. 1991). Those cases are therefore inapposite.

3. Contrary to the Director's argument (at 21), *NHK-Fintiv* does have "actual legal effect," *National Mining*, 758 F.3d at 252, and "alter[s] the landscape of individual rights and obligations," *Stupp Corp. v. United States*, 5 F.4th 1341, 1352 (Fed. Cir. 2021). The Board has repeatedly applied *NHK-Fintiv* to deny substantively meritorious IPR petitions. *See* Appellants' Br. 12-13; Appx1140-1143 (collecting cases). Indeed, the *NHK-Fintiv* Rule *only* affects cases with

meritorious challenges because the Director can grant petitions only when there is a "reasonable likelihood" that the petition will prevail with respect to at least one challenged claim. 28 U.S.C. § 314(a). *NHK-Fintiv* has even resulted in irrational denials, for instance, where denial turned on a trial date that was certain to be delayed, *see, e.g.*, *Intel Corp. v. VLSI Tech. LLC*, IPR2020-00106, 2020 WL 2201828, at *3 (P.T.A.B. May 5, 2020). *NHK-Fintiv* thus restricts the freedom to practice certain technologies by depriving infringement defendants of opportunities to challenge asserted patent claims through the efficient and specialized alternative to litigation that Congress created. Indeed, the purpose of IPR was to protect the rights of parties opposing questionable patents by making it easier and faster to vindicate those rights. *See* Appellants' Br. 4-5.

*NHK-Fintiv* also imposes obligations on private parties. As Appellants explained (at 41), IPR petitioners seeking to avoid denial must rush filing their IPR petitions or stipulate that they will not pursue overlapping invalidity arguments in both the district court and the IPR (even though Congress permitted such overlap in the AIA). The fact that petitioners have the "option" to file later without a *Sotera* stipulation—a recipe for denial—does not erase the practical realities that IPR petitioners face if they wish to avoid denial under *NHK-Fintiv*.

*General Electric Co. v. EPA*, 290 F.3d 377 (D.C. Cir. 2002), is instructive. There, the D.C. Circuit required notice-and-comment procedures for an EPA

guidance document governing applications for non-standard waste disposal methods because, even though the guidance "g[ave] applicants the option of calculating risk in either of two ways," it "still require[d] them to conform to one or the other, that is, not to submit an application based upon a third way." *Id.* at 384. Thus, "the message [was] clear: in reviewing applications the Agency [would] not be open to considering approaches other than those prescribed in the Document." *Id.*

The same is true here. Infringement defendants must either take action to reduce the likelihood of an *NHK-Fintiv* denial—sacrificing their statutory rights to petition for IPR up to one year after being served with an infringement complaint or giving up defenses in infringement litigation—or face a serious risk of such a denial. *NHK-Fintiv* does not permit other approaches, like arguing that the Rule's factors are inapt for a particular case or should not be given the weight the Rule assigns. *See, e.g.*, *Apple Inc. v. Maxell, Ltd.*, IPR2020-00203, 2020 WL 3662522, at *7 (P.T.A.B. July 6, 2020) (declining to address policy arguments against application of *NHK-Fintiv* because they are "precedential decisions" binding the Board); *Supercell Oy v. GREE, Inc.*, IPR2020-00513, 2020 WL 3455515, at *7 (P.T.A.B. June 24, 2020) (the Board was "constrained to follow" *NHK-Fintiv* and thus could not "accord dispositive weight" to petitioner's arguments regarding challenges of infringement litigation in "fast-moving jurisdictions").

The Director's assertion (at 22) that the *NHK-Fintiv* Rule nevertheless does not affect rights or obligations because "the Director remains free to change any institution decision" is wrong. The ability to override an *NHK-Fintiv* denial, which the Director has rarely done, does not change the fact that *NHK-Fintiv* is binding on the Board and thus determinative of the legal rights and interests of many IPR petitioners. Furthermore, the Director's speculation that the *NHK-Fintiv* factors might be "change[d] or revoke[d]" in the future (*id.*) is irrelevant to whether the Director should have followed notice-and-comment procedures in adopting *NHK-Fintiv* in the first place.

The Director is also incorrect that the "'actual legal effect' comes not from institution, but rather from a final written decision by the Board" and that the "substantive standards by which private rights and obligations will ultimately be determined" are only "the standards for patentability." Director's Br. 21-22. Denial of institution plainly has an actual legal effect: There will be no final written decision and thus no possibility of establishing unpatentability through IPR. This Court recognized as much in holding that *NHK-Fintiv* "threaten[s] … harm" to "*legally protected* interest[s]" by reducing the likelihood of institution. *Apple*, 63 F.4th at 16 (emphasis added).

This Court also rejected the Director's position in *Aqua Products, Inc. v. Matal*, 872 F.3d 1290, 1320 (Fed. Cir. 2017) (en banc), where (as here) the

Director argued that "nothing [the PTO] was doing in its rules was substantive and nothing in its rules would impact final decisions on patentability." A plurality of the Court emphasized that "[t]he PTO cannot say that its rules do not relate to issues of patentability and then later apply those very rules to impose substantive burdens of persuasion with respect to patentability." *Id.* That is what the Director has done here: *NHK-Fintiv* requires petitioners to make a heightened showing of patentability—far more than the "reasonable likelihood" required for institution, 35 U.S.C. § 314(a)—to have any hope of institution when the first five *NHK-Fintiv* factors favor denial. Appellants' Br. 17 (explaining that *NHK-Fintiv* now effectively requires petitioners to present "compelling evidence" that "would plainly lead to a conclusion" of unpatentability).

The Director's assertion (at 21-22) that *NHK-Fintiv* provides only "factors to be considered" and leaves the Board free to determine "how the factors should be balanced" is not only legally flawed, but also factually wrong. The Board must consider the Rule's factors, and it must weigh the factors as dictated by the Rule and deny institution when the factors point against it—regardless of any other pertinent considerations. Appellants' Br. 14-15, 26. As Appellants explained (at 36-38), binding rules that alter the substantive standards used to evaluate an application for a benefit are subject to notice and comment, even if the rules set out a multi-factor analysis. Notice-and-comment requirements thus apply to rules

establishing "factors" for parole decisions, *Pickus*, 507 F.2d 1107, 1108; rules changing the "substantive criteria" used to allot radio stations, *Reeder v. FCC*, 865 F.2d 1298, 1305 (D.C. Cir. 1989); and rules establishing "substantive criteria" for selecting union election observers, *AFL-CIO v. NLRB*, 57 F.4th 1023, 1041 (D.C. Cir. 2023). Although Appellants raised these cases (at 37), the Director has no response.

4. The Director offers some other reasons why *NHK-Fintiv* does not "bind the public." Director's Br. 22. The Director's meaning is unclear, but it does not change the fact that *NHK-Fintiv* has the requisite effects on petitioners' legally protected interests (and rights and obligations).

First, the Director rejects the notion (at 23) "that a policy statement cannot have an impact on the public." That was never Appellants' argument. Rather, the point is that *NHK-Fintiv* both (1) significantly affects legally protected interests of IPR petitioners, and thus does not have just *any* "impact on the public," *supra* pp. 2-4, 8-11; and (2) binds the Board, *infra* pp. 15-26. Thus, the fact that a "statement of policy" may "affect[] a member of the public," *see* Director's Br. 23 (quoting 5 U.S.C. § 552(a)(2)), is immaterial. Similarly, requiring notice and comment here would not "effectively eliminat[e] the exception to the notice-and-comment requirement for general statements of policy," *id.* at 25, since a substantive rule must both have the requisite impact on protected interests *and* bind the applicable

decisionmaker. Many agency actions will not meet both criteria, although *NHK-Fintiv* does.

Second, Appellants' position does not conflict with "longstanding administrative practice" allowing the Attorney General to issue certain criminal prosecution guidelines without notice and comment. Director's Br. 25-26. Contrary to the Director's statement (at 25), "guidelines instructing Department of Justice officials to prioritize prosecution of violent crimes" would not be "invalid" on Appellants' view, because such guidelines would not *bind* Justice Department officials to strictly apply a set of factors without deviation or require prosecution if those factors pointed a certain way. Nor would such guidelines prohibit initiation of prosecution of *non-violent* crimes based on prescribed factors when the balance of the factors weighs a certain way. By contrast, that is precisely how *NHK-Fintiv* operates: It does not merely instruct the Board to prioritize institution in certain cases (*e.g.*, where no parallel infringement litigation is pending), but forbids institution when the factors point a certain way. *NHK-Fintiv* is thus a binding norm that also affects individuals' legally protected interests. That is the essence of a substantive rule.[1]

[1] The Director suggests (at 26) that a holding that *NHK-Fintiv* is subject to notice-and-comment requirements would invalidate at least two existing Justice Department guidelines. But neither example has both hallmarks of a substantive rule. Section 9-2.031 does not threaten any rights; rather, it "protect[s] persons

### B. The *NHK-Fintiv* Rule Binds The Board

As Appellants explained (at 42-53), beyond affecting private rights and interests, *NHK-Fintiv* also bears the "critical" hallmark of a substantive rule: the Board is never "free to exercise discretion to follow, or not to follow" it. *Mada-Luna*, 813 F.2d at 1013. By designating *NHK* and *Fintiv* as precedential, the Director bound the Board not only to apply the *NHK-Fintiv* factors to all IPR petitions with parallel infringement litigation, but also to weigh those factors in the prescribed fashion and to deny institution when the factors indicate that IPR would be "inefficient." Appellants' Br. 43. Consequently, the Director cannot deny that *NHK-Fintiv* has been outcome-determinative in many cases. *Id.* at 48-49. Indeed, the Director does not identify a single case in which the Board determined that the *NHK-Fintiv* factors weighed against institution yet still instituted review. As this Court recognized, *NHK-Fintiv* seeks to ensure that institution determinations "will overwhelmingly be made in accordance with the policy choices about institution [the Director] would follow if she were making the determinations herself." *Apple*, 63 F.4th at 13. The only way that *NHK-Fintiv* can accomplish that purpose is by

---

charged with criminal conduct from the burdens associated with multiple prosecutions and punishments for substantially the same act(s) or transaction(s)." U.S. Dep't of Justice, *Justice Manual*, § 9-2.031 (Jan. 2020). And Section 9-27.240 is plainly not binding. It simply instructs prosecutors to "weigh all relevant considerations," including three enumerated ones, and does not require any particular decision based on how those considerations point. *Id.* § 9-27.240 (June 2023).

binding the Board and constraining the Board's discretion over institution decisions.

The Director reinforced the binding nature of *NHK-Fintiv* in June 2022 when the Director instructed the Board to continue applying the Rule to deny institution unless the petition passes a heightened institution threshold—presenting "compelling evidence" that "would plainly lead to a conclusion" of unpatentability, June 2022 Guidance 3-5.[2] That new, heightened institution standard effectively raised the AIA's "reasonable likelihood" standard, 35 U.S.C. § 314(a), which is substantive. The Director has not contended otherwise. And when the Board instituted IPR without first analyzing the first five *NHK-Fintiv* factors because it concluded that the petition presented "compelling evidence" of unpatentability, the Director vacated the Board's decision and instructed it to "assess" those factors before reaching the "compelling merits" inquiry. *CommScope Techs. LLC v. Dali Wireless, Inc.*, IPR2022-01242, 2023 WL 2301719, at *3 (P.T.A.B. Feb. 27, 2023). *CommScope* makes clear that the Board may not deviate from the Rule, even where other considerations strongly favor institution.

The Director's contrary arguments are unavailing. The Director first contends (at 32-33) that an agency rule is substantive only if it binds tribunals

[2] Memorandum from PTO Director to PTAB, *Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation* (June 21, 2022); *see also* Appellants' Br. 16-17.

*outside* the agency—an assertion the district court rightly rejected. Appx20. If a rule is binding on outside tribunals, that indicates that it is a substantive rule, but that is not the *only* indicator of substantiveness. Many substantive rules governing internal adjudicatory processes are not relevant to extra-agency matters but are no less substantive. *See, e.g.*, *Pickus*, 507 F.2d at 1113 (factors for parole determinations were a substantive rule even though they were "self imposed controls over the manner and circumstances in which the agency [would] exercise its plenary power").

Neither *Coalition for Common Sense in Government Procurement v. Secretary of Veterans Affairs*, 464 F.3d 1306 (Fed. Cir. 2006), nor *Splane v. West*, 216 F.3d 1058 (Fed. Cir. 2000), held that "a rule that binds only the agency may never be a substantive rule." Appx20. Those cases simply recognized that substantive rules are binding if and when other tribunals have occasion to apply them, not that they are substantive only if outside tribunals must apply them. Moreover, both cases considered whether challenged rules were "substantive" or "interpretive," not whether they were mere "general statement[s] of policy," as the Director contends here. *Coalition for Common Sense*, 464 F.3d at 1317-1318; *Splane*, 216 F.3d at 1063. Both substantive and interpretive rules are binding within the agency, so in *Coalition for Common Sense* and *Splane*, this Court was not focused on the binding nature of the respective rules within the agency. More

specifically, an interpretive rule "represents the agency's reading of statutes and rules" and does not "attempt to make new law or modify existing law" (such that it need not be promulgated through notice and comment), whereas a substantive rule does "effect a change in existing law or policy" (and so must undergo notice and comment). *Splane*, 216 F.3d at 1063. *NHK-Fintiv* "make[s] new law or modif[ies] existing law" (and thus is substantive) by requiring the Board to deny institution in circumstances not contemplated in the AIA; whether other agencies apply the Rule is irrelevant.[3]

*Erringer v. Thompson*, 371 F.3d 625 (9th Cir. 2004), is not to the contrary. *See* Director's Br. 33-34. *Erringer* also concerns the distinction between interpretive and substantive rules and states that whether "a rule has a binding effect on tribunals outside the agency" is merely "*a factor* in determining whether that rule has the force and effect of law" characteristic of substantive rules. 371 F.3d at 631 (emphasis added). In *Erringer*, the challenged policy manual governed the internal standards by which Medicare contractors were to "apply the 'reasonable and necessary' limitation of the Medicare statute in determining

[3] *Disabled American Veterans v. Secretary of Veterans Affairs*, 859 F.3d 1072 (Fed. Cir. 2017), is likewise inapposite. *See* Director's Br. 33 n.3. That case, like *Splane* and *Coalition for Common Sense*, concerned the distinction between interpretive and substantive rules. 859 F.3d at 1077. Moreover, this Court held that the agency's manual did not even bind the agency and thus "lack[ed] the legal effect to constitute substantive rulemaking." *Id.*

whether to pay a claim and at what amount." *Id.* at 628. The critical question in *Erringer* was whether the policy manual simply interpreted the Medicare statute or "create[d] new rights and impose[d] new obligations." *Id.* at 630. The Ninth Circuit held the former, as "the Medicare statute does contain a standard for approval of claims," which the policy manual interpreted. *Id.* at 630-631. While the court acknowledged that the manual's guidance was "binding" on Medicare contractors, who were required to apply its payment standards, those standards were not binding in appeals of claims determinations and ultimately did not alter the legal standard for finally adjudicating private rights. *Id.* at 631 & n.10. In contrast, *NHK-Fintiv* does not interpret an existing statutory institution standard; it creates a new standard under which the Board must deny IPR when the Rule's factors indicate that IPR would be inefficient. And unlike the claims determinations in *Erringer*, the Board's institution decisions are generally not judicially reviewable, making them determinative of IPR petitioners' rights. *See Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1378 (Fed. Cir. 2021).

The Director's broad policy argument (at 34)—that requiring notice and comment would incentivize agency heads to forgo announcing policy guidance publicly—lacks merit. Appellants do not argue that the Director must promulgate *all* agency guidance through notice-and-comment rulemaking. Rather, the Director

must do so for rules that bind the Board *and* affect private rights and interests, such as by confining IPR to specified, limited circumstances, as *NHK-Fintiv* does. The Director's related argument (at 34-35) that notice and comment poses an ill-defined Appointments Clause problem is also unsupported. Notice-and-comment requirements do not alter the Director's leadership of the PTO or accountability to the President.

Nor does it matter that the Director "can and does exercise her own discretion 'in individual cases' … for example, rehearing institution decisions through Director Review." Director's Br. 35. Regardless of any such discretion, the Rule binds the Board, as the Board itself has repeatedly recognized when asked to deviate from the Rule based on considerations in particular cases. *E.g.*, *Maxell*, 2020 WL 3662522, at *7; *Supercell*, 2020 WL 3455515, at *7. The possibility of Director review does not change the calculus, as individual petitioners have no right to such review when the Board denies institution under *NHK-Fintiv*. *See* 37 C.F.R. § 42.75 (2024). And there is no right to appeal a non-institution decision to this Court. *Mylan Labs.*, 989 F.3d at 1378. Consequently, in the vast majority of cases, the petitioner's only hope for institution lies with the Board, which is bound to apply *NHK-Fintiv* exactly as the Rule dictates. Similarly, the fact that the Director could hypothetically alter the Rule or de-designate the *NHK* and *Fintiv* decisions does not change that *NHK-Fintiv* is binding on the Board now, the Board

cannot (and does not) deviate from it, and the Rule continues to be outcome-determinative in many cases.

The Director's cases do not support her argument (at 36) that "retained discretion by the head of the agency undermines any assertion that a policy binds the agency in a manner that makes it a legislative rule." The language in *Erringer* that the Director cites is dicta: The Ninth Circuit noted that certain *unchallenged* guidelines were "only binding in the initial adjudication" of Medicare reimbursement claims, but they did "not bind ALJs or the federal courts." 371 F.3d at 631 n.10. The court had no occasion to decide whether those guidelines were substantive or interpretive.

*Warder v. Shalala*, 149 F.3d 73, 82 (1st Cir. 1998), did not address any "retained discretion" by an agency head; it simply confirmed that, because both substantive and interpretive rules may bind the agency, courts must assess whether the rule "effect[s] a substantive change" in law to determine whether notice and comment is required. *Id.* at 80. The Director does not contend that *NHK-Fintiv* is an interpretive rule, and in any event, it does "effect a substantive change" in law, as shown above.

Finally, the Director's reference (at 36-37) to *American Hospital Association v. Bowen*, 834 F.2d 1037 (D.C. Cir. 1987), refers to that case's discussion of *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986), which is

inapposite here. In *Brock*, the D.C. Circuit held that certain enforcement guidelines issued by the Secretary of Labor were not a binding substantive rule in part because the guidelines characterized themselves "as merely a 'general policy' to 'be used by inspectors *as guidance* in making individual enforcement decisions.'" 796 F.2d at 538 (emphasis added). Moreover, the guidelines warned the regulated party that nothing in them "should be regarded as altering [parties'] basic compliance responsibilities." *Id.* The guidance in *Brock* is entirely different from *NHK-Fintiv*, which the Director has repeatedly said the Board must apply without deviation, and which has diminished the opportunity for petitioners to obtain IPR institution.

The Director next contends (at 37) that the Board is "not required … to grant or deny institution in any particular circumstance," but instead that the Board must "consider a list of non-exclusive factors." *NHK-Fintiv* does in fact instruct the Board to deny institution in a particular circumstance: when the balance of the factors indicates that the "efficiency and integrity of the [patent] system are best served by denying" IPR. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, 2020 WL 2126495, at *3 (P.T.A.B. Mar. 20, 2020). Where the Board has instituted IPR for other reasons (*e.g.*, compelling merits considerations) without considering the *NHK-Fintiv* factors, the Director has vacated its decision. *CommScope*, 2023 WL 2301719, at *3.

Moreover, an instruction to consider a list of enumerated factors can itself be a binding norm subject to notice and comment. For instance, in *Pickus*, the court concluded that standards requiring the parole board to consider "nine general categories of factors" in making its decision were substantive rules, even though they "provide[d] no formula for parole determination," because they "narrow[ed]" the board's "field of vision" to encourage "decisive reliance" on the factors and "define[d] a fairly tight framework to circumscribe the [parole board]'s statutorily broad power." 507 F.2d at 1113. So too here.

The Director cites (at 37-38) the district court's statement that "[n]othing in *Fintiv* would prevent a Board from considering all of the enumerated factors and any others the Board deemed appropriate, finding that the factors related to a parallel proceeding all weighed in favor of denial, but that the merits of the petition were so strong that institution was the preferred disposition." Appx21. The district court was incorrect. The only cases the Director cites (at 40) in which the Board concluded that the merits of the petition outweighed the other *Fintiv* factors are cases in which the Board found "compelling evidence" of unpatentability—a heightened standard well above the statutory requirement of "reasonable likelihood."[4] And in that situation, the Director still bound the Board—just bound

[4] *International Bus. Machines Corp. v. Digital Doors, Inc.*, IPR2023-00973, 2024 WL 209905, at *11 (P.T.A.B. Jan. 19, 2024) ("Pursuant to the [Director's]

it *not* to deny institution. June 2022 Guidance 3-5. As Appellants explained (at 48), even when the petitioner has met the statutory "reasonable likelihood" standard, the Board must deny institution if the *NHK-Fintiv* factors weigh against institution, which has resulted in the Board denying IPR petitions even where the petitions presented meritorious challenges to patentability. The Director cites no cases to the contrary.

Finally, the Director contends that the Board has "considered a novel circumstance" (with respect to factor four) and has "taken into account considerations besides the merits" (with respect to factor six). The fact that *NHK-Fintiv* did not anticipate every factual scenario that might arise in future cases does not change the fact that the Board *must* apply the Rule and deny IPR when the balance of the factors so dictates. The Director's reliance on *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01015, 2020 WL 7049372, at *7 (P.T.A.B. Dec. 1, 2020), is particularly unconvincing because, in that case, the petitioner succeeded in persuading the Board that *NHK-Fintiv*'s fourth factor did not weigh against institution only by surrendering its right to pursue the same invalidity defenses in the litigation as in the IPR. *Sotera* is not a case where the petitioner convinced the

---

Guidance Memo, our compelling merits determination overrides the other *Fintiv* factors."); *Apple Inc. v. Sonrai Memory Ltd.*, IPR2023-00819, 2023 WL 8099286, at *5 (P.T.A.B. Nov. 21, 2023) (granting institution because, under the Director's June 2022 Guidance, "compelling, meritorious challenges will be allowed to proceed at the PTAB even where district court litigation is proceeding").

Board that *NHK-Fintiv* was inapplicable or should be disregarded due to other considerations. The Director's small handful of cases regarding the Board's consideration of issues other than the merits under *NHK-Fintiv*'s sixth factor (at 41-42) fall flat for the same reason—in no case did the Board presume to grant institution despite the Rule favoring denial. That said, if the Court accepts the Director's representations about the Rule's operation (though it should not, as they are contradicted by actual practice), then the Court should make clear that future Board panels are free to institute IPR for any reason under the sixth factor, even when the other five factors all favor denial of institution. *E.g.*, Director's Br. 39 ("[E]ven if the five factors relating to parallel litigation point toward denial of institution, the Board can still decide to institute based on other circumstances.").

In sum, the Director fails to show that the Board has "discretion to follow, or not to follow" *NHK-Fintiv* "in an individual case." *See Mada-Luna*, 813 F.2d at 1013. The record establishes the opposite. The Director intended to, and did, bind the Board when *NHK* and *Fintiv* were designated precedential, precisely for the purpose of ensuring that institution decisions "will overwhelmingly be made in accordance with" her policy choices. *Apple*, 63 F.4th at 13. In doing so, *NHK-Fintiv* makes it less likely that IPR will be instituted alongside parallel litigation, and the Rule harms the legally protected interests of infringement defendants. *Supra* Section I.A. *NHK-Fintiv* bears both hallmarks of a substantive rule, and the

Director was required to follow the APA's notice-and-comment procedures in promulgating it.

## II. THE DIRECTOR HAS NOT ESTABLISHED COMPLIANCE WITH THE AIA

The AIA instructs the Director to "prescribe regulations" governing (1) "standards for the showing of sufficient grounds" for instituting IPR and (2) "the relationship" between IPR and "other proceedings." 35 U.S.C. § 316(a). *NHK-Fintiv* fits neatly into both categories. The Rule concerns the "standards for the showing of sufficient grounds to institute" IPR because it requires the Board to deny institution when the factors indicate that IPR would be inefficient. Appellants' Br. 54. Further, the Rule governs the "relationship" between IPR and "other proceedings" because it dictates when IPR may proceed if there is co-pending litigation involving the same patent. *Id.* at 55; *see also Apple*, 63 F.4th at 8 n.3. The district court erred by failing to address these arguments.

The Director argues (at 44) that the term "regulations" "does not always mean legislative rules enacted through notice-and-comment rulemaking." But shortly after the AIA's enactment, the PTO followed notice-and-comment procedures to promulgate regulations on various topics listed in Section 316(a), *see* 77 Fed. Reg. 48,680 (Aug. 14, 2012), indicating that the Director understood that, in the context of *this* provision, "regulations" means rules that require notice and comment.

The Director's reliance (at 45-46) on 35 U.S.C. § 2(b)(2) and § 3(a)(2) is similarly misplaced. Section 2(b)(2)—which permits the PTO to establish regulations on various issues—cross-references 5 U.S.C. § 553, which applies anyway and sets notice and comment as the default procedure to be followed (with exceptions not applicable here). Moreover, accepting the Director's understanding of the relationship between Section 2(b)(2) and Section 316 would allow a more general statutory provision to swallow a more specific provision of the AIA, which anticipated that rules regarding enumerated issues (including IPR institution) would be adopted through notice and comment. *See Love v. McDonough*, 106 F.4th 1361, 1368 (Fed. Cir. 2024) ("It is a basic tenet of statutory construction that a specific statute takes precedence over a more general one." (quotation marks omitted)); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (similar). Accepting the suggestion (Director's Br. 46) that Section 3(a)(2)'s instruction to the Director to "provid[e] policy direction and management supervision for the Office" overrides the duty to undertake notice and comment under Section 316 would lead to perverse consequences by allowing the Director to ignore Congress's other procedural requirements. *See Pitsker v. OPM*, 234 F.3d 1378, 1383 (Fed. Cir. 2000) ("[A]n interpretation that causes absurd results is to be avoided if at all possible."). And it would permit future changes implemented by subsequent Directors that transform institution standards without any public notice

or input, which could affect the analysis of petitions that relied on an earlier Director's standards. Access to proceedings Congress created to improve the patent system would be at future Directors' whims without even the APA's modest notice-and-comment guardrails.

The AIA reinforces the Director's obligation to adopt *NHK-Fintiv*, if at all, through notice-and-comment rulemaking. The Director's contrary interpretation should be rejected.

## III. THE DIRECTOR'S RESPONSE ONLY CONFIRMS THAT THE *NHK-FINTIV* RULE WOULD HAVE BENEFITTED FROM NOTICE AND COMMENT

As Appellants explained (at 56-59), notice-and-comment rulemaking could have improved the *NHK-Fintiv* Rule in multiple ways. Had Appellants been able to comment on the Rule before its adoption, they would have pointed out that the Rule conflicts with provisions of the AIA that contemplate IPRs proceeding in parallel with district court litigation. Two of the AIA's original co-sponsors have taken the remarkable step of publicly lamenting that *NHK-Fintiv* subverts their intent in establishing a one-year window in 35 U.S.C. § 315(b) for the filing of an IPR petition after service of an infringement complaint. *See* Appx1750-1752. Appellants would also have pointed out that *NHK-Fintiv* is irrational and leads to arbitrary outcomes, particularly given that actual times to trial are difficult to estimate, even when trial dates have been tentatively scheduled. June 2022 Guidance 8 ("Stakeholders correctly noted that scheduled trial dates are unreliable

and often change" and are "not … a good indicator of [when] the district court trial will occur[.]"). The Director would have been required to consider such comments and either modify *NHK-Fintiv* or explain why such modification was not required—all before the Rule would have gone into effect. 5 U.S.C. § 553(c); *Overton Park*, 401 U.S. at 416.

The Director does not meaningfully address Appellants' concerns, instead falling back (at 42) on a suggested need to "maximize" Directorial "flexibility to allocate IPR resources in a manner that best serves the patent system and promotes efficiency." Yet Congress did not grant the Director flexibility at all costs. As the APA and the AIA both envision, the patent system is best served when the agency listens to directly affected stakeholders, and the Director cannot avoid stakeholder input for the sake of remaining nimble. *See Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983) ("notice and the opportunity to be heard are an essential component of 'fairness to affected parties'"); *see also Veterans Justice Grp., LLC v. Secretary of Veterans Affairs*, 818 F.3d 1336, 1344 (Fed. Cir. 2016) ("notice and comment rests on the expectation that the final rules will be … improved" by public input). Moreover, *NHK-Fintiv* undermines the patent system's fundamental purpose by preventing reviews of dubious patents that impede innovation. The Director emphasizes (at 43) that she publishes her policies so that the public knows about them. But public *knowledge* about issued rules is

no substitute for public *input* in shaping their substance, which is what the statutory requirement of notice and comment provides.

Despite the Director's protestations (at 34), requiring notice and comment would not force agency heads "to either forgo" instructions like *NHK-Fintiv* "or refuse to publicly disclose them." Instead, the Director could and should do what the APA requires: For binding actions designed to alter who may retain patent rights, like *NHK-Fintiv*, the Director must follow notice-and-comment procedures. That requirement does not alter the ability to release interpretations of existing law or announce policy priorities without first soliciting public feedback, consistent with the APA and the AIA.

Now that this Court has held that Appellants' contrary-to-law and arbitrary-and-capricious claims are judicially unreviewable, *see Apple*, 63 F.4th at 11-14, notice and comment offers the last check on the Director's rulemaking regarding institution of IPRs. Allowing the Director to proceed unchecked would allow the PTO to set policy that binds the Board and substantively affects IPR petitioners' rights without soliciting and considering stakeholders' feedback, leaving affected parties with no recourse in the courts, even when that action surprises petitioners who may have already relied on past institution standards under previous Directors when preparing petitions. This Court should preserve its role, and the public's role, in reviewing agency rulemaking in this important area.

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

/s/ Nathan K. Kelley
NATHAN K. KELLEY
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
(202) 654-3343

ANDREW T. DUFRESNE
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7492

*Attorneys for Plaintiff-Appellant Google LLC*

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

MARK C. FLEMING
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

ALYSON M. ZUREICK
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

GARY M. FOX
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

*Attorneys for Plaintiffs-Appellants Apple Inc., Cisco Systems, Inc., and Intel Corporation*

November 22, 2024

## STATEMENT OF CONSENT

Pursuant to Federal Circuit Rule 32(g)(3)(B), the undersigned represents that counsel for Google LLC has consented to his signature on this brief.

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

November 22, 2024

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally spaced typeface and includes 6,985 words.

2. The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

November 22, 2024