WILMERHALE

**Mark C. Fleming**

+1 617 526 6909 (t)
+1 617 526 5000 (f)
mark.fleming@wilmerhale.com

December 29, 2025

**VIA CM/ECF**
Hon. Jarrett B. Perlow
Circuit Executive and Clerk of Court
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC  20439

    Re:  *Apple Inc. v. Squires*, No. 2024-1864 (oral argument set for January 5, 2026)
          Letter Pursuant to Fed. R. App. P. 28(j)

Dear Mr. Perlow:

    In advance of the upcoming oral argument, Appellants notify the Court of two actions taken by the agency.  The Director has not argued that those actions affect this matter.  In fact, they do not cure the agency's notice-and-comment violation and reinforce that reversal is appropriate.

    ***First***, on October 17, 2025, the Director announced that he would make all IPR institution decisions himself.  Ex. A.  That announcement does not moot this appeal.  Institution decisions remain delegated to the Board, 37 C.F.R. § 42.4(a), and the *NHK-Fintiv* Rule remains binding for any future institution decisions by the Board under that delegation.  At most, the Director's action voluntarily ceases the challenged activity, which "ordinarily will not moot a controversy." *Kimmel v. Secretary of Veterans Affairs*, 2022 WL 14319044, at *1 (Fed. Cir. Oct. 25, 2022).  And the Director has not attempted to show that "the practice cannot reasonably be expected to recur," *FBI v. Fikre*, 601 U.S. 234, 241 (2024)—a "formidable" burden, *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).  Indeed, the Director's memorandum envisions that, "where the Director determines detailed treatment of issues raised in a petition is appropriate (e.g., complex claim construction issues, priority analysis, or real party in interest determination), the Director may refer the decision on institution to one or more members of the PTAB."  Ex. A at 2.

    ***Second***, the USPTO published a notice of proposed rulemaking (NPRM) that seeks to limit access to IPR even beyond *NHK-Fintiv*.  90 Fed. Reg. 48,335, 48,341 (Oct. 17, 2025) (Ex. B).  The NPRM does not moot this appeal either.  The NPRM asserts that limiting IPR institution improves "the ability of inventors to attract capital investment and further develop their innovation" and counter the "weakening of patent rights."  *Id.* at 48,336.  That assertion, whether or not correct, demonstrates that rules limiting IPR access—like *NHK-Fintiv*—significantly

December 29, 2025
Page 2

WILMERHALE

affect individual rights and obligations and are thus substantive rules under the APA. Appellants' Br. 31-41; Appellants' Reply Br. 2-14.

Respectfully submitted,

*/s/ Mark C. Fleming*
Mark C. Fleming,
*Counsel for Appellants Apple, Cisco, and Intel*

*/s/ Nathan Kelley*
Nathan Kelley,
*Counsel for Appellant Google*

Attachments

cc:    Counsel of Record (via ECF)

## STATEMENT OF CONSENT

Pursuant to Federal Circuit Rule 32(g)(3)(B), the undersigned represents that counsel for Google LLC has consented to his signature on this letter.

                                                  */s/ Mark C. Fleming*
                                                  Mark C. Fleming
                                                  WILMER CUTLER PICKERING
                                                      HALE AND DORR LLP
                                                  60 State Street
                                                  Boston, MA  02109
                                                  (617) 526-6000

December 29, 2025

# EXHIBIT A

MEMORANDUM

To: All PTAB Judges

From: John A. Squires
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

Subject: Director Institution of AIA Trial Proceedings

Date: October 17, 2025

To improve efficiency, consistency, and adherence to the statutory requirements for institution of trial, effective October 20, 2025, the Director will determine whether to institute trial for *inter partes* review ("IPR") and post-grant review ("PGR") proceedings.[1] This process will maintain PTAB's capacity to conduct IPR and PGR trials and promote consistent application of considerations for institution of trial proceedings before the PTAB. This approach to institution flows from the processes outlined in the March 26, 2025 memorandum entitled "Interim Processes for PTAB Workload Management" ("Interim Processes"),[2] under which the Director determines whether or not to deny a petition based on discretionary considerations.

Similar to the discretionary considerations process, the Director, in consultation with at least three PTAB judges, will determine whether to institute trials in all IPR and PGR proceedings. Upon review of discretionary considerations, the merits, and non-discretionary

---

[1] Congress provided that the Director determines whether to institute trials under the America Invents Act. *See* 35 U.S.C. § 314(a) ("The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."); *id.* § 314(b) ("The Director shall determine whether to institute an inter partes review under this chapter pursuant to a petition . . . ."); *id.* § 314(c) ("The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as is practicable."); *see also id.* § 324(a), (c), (d) (similar).

[2] Available at https://www.uspto.gov/sites/default/files/documents/InterimProcesses-PTABWorkloadMgmt-20250326.pdf.

considerations, if the Director determines that institution is appropriate on at least one ground for one challenged claim, the Director will issue a summary notice to the parties granting institution. *See* 35 U.S.C. §§ 314(c), 324(d). Similarly, if the Director determines that institution is not appropriate, whether based on discretionary considerations, the merits, or other non-discretionary considerations, the Director will issue a summary notice denying institution. In proceedings involving novel or important factual or legal issues, the Director may issue a decision on institution addressing those issues. Additionally, where the Director determines detailed treatment of issues raised in a petition is appropriate (e.g., complex claim construction issues, priority analysis, or real party in interest determination), the Director may refer the decision on institution to one or more members of the PTAB. The Office has issued more than 580 decisions under the Interim Processes, providing substantial guidance on how the Director will handle discretionary considerations. Any instituted IPR or PGR proceeding will be referred to a three-member panel of the PTAB to conduct the trial and that panel will be assigned according to PTAB Standard Operating Procedure (SOP) 1 (Rev. 16).[3]

This Memorandum supersedes the Interim Processes to the extent that (1) routine decisions on institution will be limited to summary notices, and (2) merit-based decisions on whether to institute petitions will not be referred to a three-member panel of the PTAB. The process for briefing discretionary considerations, as outlined in the Interim Processes and the Discretionary Decisions webpage,[4] and the process for briefing the merits and non-statutory considerations will remain the same. Further, all petitions referred to the PTAB for consideration of the merits and non-discretionary considerations under the Interim Processes prior to October 20, 2025 will remain with a three-member panel.

---

[3] Available at https://www.uspto.gov/sites/default/files/documents/sop1_r16_final.pdf.
[4] Available at https://www.uspto.gov/patents/ptab/interim-director-discretionary-process.

# EXHIBIT B

# Proposed Rules

Federal Register

Vol. 90, No. 199

Friday, October 17, 2025

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

---

## DEPARTMENT OF COMMERCE

### Patent and Trademark Office

### 37 CFR Part 42

[Docket No. PTO–P–2025–0025]

RIN 0651–AD89

### Revision to Rules of Practice Before the Patent Trial and Appeal Board

**AGENCY:** United States Patent and Trademark Office, Department of Commerce.

**ACTION:** Notice of proposed rulemaking.

**SUMMARY:** The United States Patent and Trademark Office (USPTO or Office) proposes modifications to the rules of practice for inter partes review (IPR) before the Patent Trial and Appeal Board (PTAB or Board) that the Under Secretary of Commerce for Intellectual Property and Director of USPTO and, by delegation, the PTAB will use in instituting IPR.

**DATES:** Comments must be received by November 17, 2025 to ensure consideration. The Office does not anticipate granting an extension to the comment period, absent extraordinary circumstances.

**ADDRESSES:** For reasons of Government efficiency, comments must be submitted through the Federal eRulemaking Portal at: *https://www.regulations.gov.* To submit comments via the portal, one should enter docket number PTO–P–2025–0025 on the homepage and select the ''Search'' button. The site will provide search results listing all documents associated with this docket. Commenters can find a reference to this notice and select the ''Comment'' button, complete the required fields, and enter or attach their comments. Attachments to electronic comments will be accepted in Adobe® portable document format (PDF) or Microsoft Word® format. Because comments will be made available for public inspection, information that the submitter does not desire to make public, such as an address or phone number, should not be included in the comments.

Visit the Federal eRulemaking Portal for additional instructions on providing comments via the portal. If electronic submission of, or access to, comments is not feasible due to a lack of access to a computer and/or the internet, please contact the USPTO using the contact information below for special instructions.

**FOR FURTHER INFORMATION CONTACT:** Sharon Israel, Vice Chief Administrative Patent Judge, PTAB at 571–272–9797.

**SUPPLEMENTARY INFORMATION:**

### Introduction

The Office is proposing new rules of practice before the PTAB to focus *inter partes* review proceedings on patent claims that have not previously been challenged in litigation or where prior litigation was resolved at an early stage. This proposed rule is intended to promote fairness, efficiency, and predictability in patent disputes.

### Background

The USPTO is charged with promoting innovation through the issuance of patents for new and useful inventions. U.S. Const., art. I, section 8. Invention and the issuance of a patent represent just the beginning of the economic cycle of innovation. After an invention is conceived and patented, substantial investment is necessary to bring a product or service to market. Without this additional investment, the invention may remain in the laboratory, never reaching the public as a commercial product or service. Reliable patent rights encourage the inventor or others to invest in the patented technology by giving them confidence that they, not competitors, will reap the benefits of their efforts. However, every party accused of infringing a patent receives a full opportunity to challenge the validity of the patent in district court. If investors lack confidence that a patent will be found valid when it is enforced, the patent will not give them the assurances they need to invest.

District court litigation is not the only forum for challenging patent validity. In 2011, Congress passed the America Invents Act (AIA) to ''provid[e] a quick and cost-effective alternative[ ]'' to district court patent litigation, most notably through *inter partes* review (IPR) proceedings. H.R. Rep. No. 112–98, at 48 (2011). IPR proceedings have many advantages, but are not appropriate in every circumstance. When IPR proceedings cover the same ground as district court litigation, they cease to be an ''alternative'' and can substantially increase litigation costs. That is the opposite of what Congress intended. Serial or parallel IPR proceedings can also be wasteful, because they consume Office and party resources re-litigating issues that the Office is considering, has already considered, or that are being litigated elsewhere, such as in district court or at the U.S. International Trade Commission (ITC). Finally, multiple challenges to the same patent through IPRs jeopardize the reliability of patent rights and incentives to invest in new technologies. This proposed rule is intended to focus IPR proceedings on the most appropriate disputes.

*Even extremely strong patents become unreliable when subject to serial or parallel validity challenges.*

Determining whether a patent claim meets the statutory requirements of patentability is frequently a matter of judgment about which reasonable minds may disagree. For example, new technologies are often complex. Both the prior art and claim language may be open to multiple interpretations. The possibility of hindsight bias is also an ever-present difficulty. Because reasonable minds may, and frequently do, disagree about whether a particular patent claim meets the statutory requirements, patents cannot serve their economic function if they are perpetually subject to *de novo* review. Consider a hypothetical patent claim where 70% of experienced patent practitioners would conclude that the claim was properly granted, and 30% would oppose that conclusion. Such a patent claim seems reliable, because a substantial majority of practitioners believe it is patentable and was properly issued. However, if the patent is subjected to repeated *de novo* patentability review each time it is enforced, it will no longer be reliable. For example, a patent with a 70% chance of surviving one *de novo* patentability review has less than a 50% chance of withstanding two or more *de novo* patentability challenges. Thus, even extremely strong patents depend on a presumption of validity for their survival.

*Congress gave the Director broad discretion to identify the circumstances when IPR proceedings would or would not benefit the patent system.*

IPRs are a powerful tool for reassessing patent validity because they subject the patent to essentially *de novo* review. In an IPR proceeding, the petitioner needs to prove unpatentability by only a preponderance of the evidence, which is the same standard the Office used to grant the patent. 35 U.S.C. 316(e). However, when it passed the AIA, Congress ''recognize[d] the importance of quiet title to patent owners to ensure continued investment resources'' and did not want ''repeated litigation and administrative attacks on the validity of a patent.'' H.R. Rep. No. 112–98, at 48 (2011). The AIA House Committee report found that such repeated challenges ''would frustrate the purpose of the'' AIA and could destabilize the patent system. *Id.* In the Senate committee report, Senator Kyl, one of the bill's sponsors, and others agreed. ''Whatever post grant system is ultimately devised, at some point the patent should be final and the inventor should enjoy the benefit of their invention without a cloud of uncertainty lingering over it during the full life of the patent.'' S. Rep. No. 110–259 at 71. ''This uncertainty over the patent'' created by unlimited challenges ''would limit the ability of inventors to attract capital investment and further develop their innovation and bring it to the marketplace.'' *Id.* at 72. Senator Kyl also emphasized that IPRs ''should generally serve as a complete substitute for at least some phase of the litigation.'' *Id.*

To protect quiet title to patent rights necessary to drive investment, Congress left in place the presumption of patent validity in litigation in district court or at the ITC, and provided the Director with broad discretion to determine when the strong medicine of IPR proceedings would be appropriate. H.R. Rep. No. 112–98, at 48; *see* 35 U.S.C. 315(d), 316(b).

*Serial and parallel validity challenges remain a significant problem for the patent system.*

Approximately 54% of all IPR petitions filed since the passage of the AIA are one of multiple petitions against the same patent. To address the risks from serial and parallel challenges, and from challenges using substantially the same prior art and/or arguments previously presented to the Office, the Office has designated a number of PTAB decisions as precedential. *See, e.g., Gen. Plastic Indus. Co., Ltd.* v. *Canon Kabushiki Kaisha,* IPR2016–01357, Paper 19 (PTAB Sept. 6, 2017) (precedential as to section II.B.4.i) (serial petitions); *Valve Corp.* v. *Elec. Scripting Prods., Inc.,* IPR2019–00062, Paper 11 (PTAB Apr. 2, 2019) (precedential) (serial petitions); *Comcast Cable Commc'ns, LLC* v. *Rovi Guides, Inc.,* IPR2019–00224, Paper 10 (PTAB Apr. 3, 2019) (parallel petitions); *Apple* v. *Fintiv,* IPR2020–00019, Paper 11 (PTAB Mar. 20, 2020) (precedential) (co-pending district court litigation); *Advanced Bionics, LLC* v. *MED–EL Elektromedizinische Geräte GmbH,* IPR2019–01469, Paper 6 (PTAB Feb. 13, 2020) (precedential) (prior art considered during examination). Despite the Office's efforts, serial and parallel patent challenges, including challenges raising the same or substantially similar prior art and/or arguments, remain a significant problem. For example, since 2019, the percentage of petitions that are one of multiple challenges to the same patent has declined, yet remains above 45%.

Additionally, more than 80% of IPRs have co-pending district court litigation where the petitioner is also challenging patent validity. Saurabh Vishnubhakat, Arti K. Rai & Jay P. Kesan, *Strategic Decision Making in Dual PTAB and District Court Proceedings,* 31 Berkeley Tech. L.J. 45 (2016) (available at: *https://ssrn.com/abstract=2731002*). Therefore, even when a patent is challenged by only one IPR petition, it will usually be challenged twice—once in the IPR and once in district court or at the ITC. PTAB precedent stipulations not to pursue invalidity challenges in district court or at the ITC based on an invalidity ground that a petitioner raised or could have raised in an IPR petition, and the AIA IPR estoppel provisions mitigate these problems, but petitioners still frequently bring ''repetitive challenges based on slightly rebranded evidence.'' *Contour IP Holding LLC* v. *GoPro Inc.,* No. 17–cv–04738, 2025 WL 1218748, at *13 (N.D. Cal. Mar. 24, 2025); *see, e.g., Motorola Sols. Inc.* v. *Stellar LLC,* IPR2024–01205, Paper 19 (PTAB Mar. 28, 2025) (Stewart, Acting Director). For example, the district court's opinion in *Contour* catalogs a significant number of cases in which petitioners brought patent challenges in district court based on physical devices that are ''materially identical'' to patents and printed publications. *Contour IP Holding LLC,* 2025 WL 1218748, at *13.

The Office has also recently published additional information on multiple petitions filed at the PTAB at *https://www.uspto.gov/patents/ptab/statistics.*

Moreover, district courts may stay litigation pending the outcome of IPR proceedings. When the PTAB ultimately cancels all the claims being litigated, this can improve litigation efficiency and provide a quicker resolution, but when the patent owner prevails in the IPR, the effect is the opposite, even if only some claims survive. Resolution of the dispute is delayed by at least 18 months during the IPR proceedings, and potentially longer if the stay remains in place pending any appeal or remand.

Furthermore, the simplification of the district court case is often limited because the petitioner rarely reduces the number of invalidity theories it advances in district court. Most often, the petitioner substitutes a new invalidity theory in district court for the ones it may be estopped from raising in district court. For example, patent challengers typically do not receive less summary judgment briefing or trial time to address validity when there is a parallel IPR, and the IPR is not likely to simplify expert discovery. Thus, an IPR proceeding does not often materially reduce the resources necessary to resolve the district court dispute. Additionally, 35 U.S.C. 315(e) provides for estoppel following IPR only after the issuance of a final written decision. Therefore, if the district court case is not stayed, the defendant may raise any invalidity argument in district court while the IPR is pending. In these circumstances, IPRs can add significant expense and delay compared with standalone district court litigation.

These serial and parallel patentability challenges have undermined the reliability of patent rights and deterred investment in new technologies. *See, e.g.,* Adam Mossoff, *Uncertain Patent Rights and a Weakening U.S. Innovation Economy,* 11 LANDSLIDE 40 (Sept./Oct. 2018); Kevin Madigan, *An Ever-Weakening Patent System Is Threatening the Future of American Innovation,* Ctr. for Protection Intell. Prop. (Apr. 28, 2017); les Nouvelles Menno Treffers et al. *Creating SEPs—A Risky Business For SMEs* (Sept. 2017). The weakening of patent rights caused by these repeated patentability challenges presents a threat to America's continued technological leadership. *See* Gupta et al., *Protecting Intellectual Property for National Security,* Center for Strategic and International Studies (Mar. 25, 2025). Finally, there is a bipartisan consensus that small and medium-sized businesses are especially harmed by weakened patent rights because they are more likely to rely on superior technology protected by patent rights to challenge market incumbents. *See* National Economic Council, *The Economics of Investing in America* (2023) at 12 (''The

evidence is clear that new small and medium-sized businesses are drivers of innovation. Yet when a few firms (or one single firm) dominate a market, they can stifle and stymie disruptive startups and other new businesses.''); Kolev *et al., Of Academics and Creative Distruction: Starup Advantage in the Process of Innovation,* National Bureau of Economic Research at 5 (2022) (''We find strong evidence for startup advantage in both average forward citations and the rate of outlier patents (in the top 5% of the citation distribution), supporting our first hypothesis. We also find that startup patents score higher in terms of originality and generality relative to patents from established firms.'').

By far, the most frequent users of IPR proceedings are large technology companies. When a large company is free to copy a patented invention because it believes it can invalidate the patent through multiple validity challenges, the large company's other advantages, such as superior brand recognition and manufacturing scale, will often give it an edge over smaller competitors. Thus, weakened patent rights can contribute to market concentration in innovative industries. *See* Jonathan Barnett, *Why Big Tech Likes Weak IP, Regulation* (Spring 2021).

*The proposed rule is intended to enhance fairness, efficiency, and predictability in patent disputes.*

Congress provided that the Director ''may not authorize an inter partes review'' unless a petition meets a minimum ''[t]hreshold'' for institution. 35 U.S.C. 314(a). Yet the same provisions provide the Director broad discretion to decide *not* to proceed with institution, even if a petition satisfies the minimum statutory threshold for instituting an IPR. The AIA allocated expansive authority to the USPTO to prescribe regulations governing AIA proceedings, including IPRs. 35 U.S.C. 316(a). Among other things, Congress instructed the Director to provide regulations ''governing . . . the relationship of [inter partes] review to other proceedings under this title.'' 35 U.S.C. 316(a)(4). Title 35 encompasses other challenges before the Office (*e.g.,* under Title 35 Chapters 30 (ex parte reexamination) 31 (*inter partes* review), and 32 (post-grant review)), as well as parallel district court infringement actions (*i.e.,* under Title 35 Chapter 29). *See, e.g.,* 35 U.S.C. 281 (''A patentee shall have remedy by civil action for infringement of his patent.''). In establishing these regulations, the Director ''shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.'' 35 U.S.C. 316(d). Separately, § 315(d) provides that the Director may determine the manner in which an IPR or other USPTO proceeding may proceed during the pendency of an IPR involving the same patent, including ''providing for stay, transfer, consolidations, or termination of any such matter or proceeding.''

In addition to taking the steps discussed above to address inappropriate uses of IPR proceedings, the Office has requested comments on a wide variety of proposals to promote fairness and efficiency in IPR proceedings. *See, e.g., Request for Comments on Discretion To Institute Trials Before the Patent Trial and Appeal Board,* 85 FR 66502 (Oct. 20, 2020); *Changes Under Consideration to Discretionary Institution Practices, Petition Word-Count Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board,* 88 FR 24503 (Apr. 20, 2023); *Patent Trial and Appeal Board Rules of Practice for Briefing Discretionary Denial Issues, and Rules for 325(d) Considerations, Instituting Parallel and Serial Petitions, and Termination Due to Settlement Agreement,* 88 FR 28693 (Apr. 19, 2024). This proposed rule has both similarities and differences with prior proposals and past practices. Accordingly, the Office requests comments on this distinct proposed rule.

The Office believes that this proposed rule will enhance fairness and efficiency in patent disputes by focusing IPR proceedings on cases where the patent has not previously been challenged in litigation or where prior litigation was resolved via settlement at an early stage.

The Office expects that this proposed rule will have a positive impact on the economy. First, as discussed above, the rule will increase the reliability of patent rights and the predictability of patent disputes. This will further innovation and economic growth. The rule will also decrease overall expenditures of patent litigation and transaction costs for patent licensing. As previously discussed, most IPRs have been one of multiple of petitions against the same patent and a large majority of patents challenged in IPRs are also being challenged in district court or at the ITC. This proposed rule will reduce litigation costs by foreclosing most IPR challenges where patent validity has already been tested during examination at the USPTO and at least once in another proceeding (*e.g.,* at the USPTO, in district court, or at the ITC). Similarly, the proposed rule will also reduce costs by requiring a stipulation by the petitioner regarding litigation issue overlap. Patent owners often spend substantial funds defending their rights against multiple or duplicative challenges, which would be avoided under the proposed rule. Patent challengers also expend significant resources raising such challenges, which would also be avoided. Patent challengers find that this expenditure serves their private interests, because the possibility of patent invalidation reduces the risk that the challenger will be compelled to compensate a patent owner for infringement and may reduce amounts patent owners accept in license fees. The risk-adjusted amounts a petitioner may avoid in licensing fees or litigation judgments may exceed the costs a petitioner expends when filing an IPR, thus making the IPR economically rational from the perspective of the petitioner.

However, the licensing fees or judgments that a patent challenger may avoid paying are reduced compensation for innovators whose patent claims have already been adequately tested. This reduced compensation for patent owners harms the broader public interest in incentivizing innovation and investment in the commercialization of new technologies. Additionally, allowing multiple, often duplicative, patentability challenges against the same patent can reduce competition in the economy by allowing market incumbents to copy the innovations of smaller rivals and maintain their dominant market positions. Michel & Dowd, *Patent Protection: A crucial Antitrust Tool for Increasing Innovation,* Competition Policy International, TechREG Chronicle (Sept. 2024) (''[E]ven after the innovation is created and disclosed in a patent, IP rights enable SMEs to grow into larger, more integrated companies with commercialization and/or manufacturing capabilities. . . . [L]arger firms tend to have lower-cost access to non-patent mechanisms for extracting returns from innovations. . . . [They] can rely on their market dominance and vertically integrated structures to ensure reasonable financial returns on their R&D efforts. . . . Reliable patent protection can allow startups to enter markets and disrupt entrenched firms.''). It is well-established that increased market concentration and reduced competition stifle economic growth.

The Office also believes that the proposed rule will promote consistency across IPR proceedings, which is vital to the ''integrity of the patent system.'' 35 U.S.C. 316(b). The proposed rule draws clearer lines around the circumstances when IPRs should or should not be instituted, thus enabling PTAB panels to render more consistent decisions. By limiting the circumstances in which a district court and the PTAB will consider the same or closely related issues, the proposed rule also reduces the risk of the Office and a district court rendering inconsistent decisions.

Clearer lines will also help parties determine before filing an IPR petition whether the petition is likely to be granted, thus enabling them to focus their briefing on the patentability of the challenged claims, rather than the Director's discretion to institute. This will also improve the reliability of patents by focusing the Office's efforts on the technical merits of disputes.

Finally, in addition to IPR proceedings, the PTAB also handles ex parte appeals from examination and post-grant reviews. The time administrative patent judges (APJs) spend dealing with IPRs reduces an APJ's ability and time to address ex parte appeals and vice versa. The Office must balance the potential benefits of IPR proceedings to the patent system with the costs of taking resources from ex parte appeals. For example, delayed resolution of ex parte appeals can prevent or delay business formation or capital raising which, in turn, delays releasing or launching patented technologies to market. Reducing the time APJs have to consider ex parte appeals increases the risk that the Office will allow unpatentable claims or reject patentable ones. For several years, ex parte appeal pendency has been well-above the Office's pendency goals. The Office believes it is appropriate to focus APJ time on ex parte appeals, because that is the sole forum for reviewing whether patent application claims should issue, or whether patent claims should be confirmed in ex parte reexamination proceedings. Applicants appealing an examiner decision *must* have their case heard by the PTAB in order to either receive their patent or seek judicial review of the Office's rejection. 35 U.S.C. 134(a), 141(a). By contrast, IPRs are not the only mechanism for challenging the validity of an issued patent. In most instances, IPR petitioners are already challenging patent validity in district court litigation. If they are not already in the process of litigating, they could initiate district court litigation challenging patent validity without any action by the Office. 28 U.S.C. 2201. Patent challengers also have the ability to raise a patentability challenge by filing an ex parte reexamination request, which patent examiners handle in the first instance. By focusing IPRs on patents that have not already been tested in litigation or other Office proceedings, the proposed rule will help ensure that sufficient APJs are available for its essential ex parte appeal mission.

The Office invites comments from the public on whether this proposed rule strikes the appropriate balance between efficiency, fairness, and stability in the patent system.

**Discussion of Proposed Changes**

In this section, the Office describes the proposed changes to specific sections in 37 CFR part 42. Each subsection describes a related group of regulatory changes. The Office solicits comments supporting, opposing, or suggesting modifications on each specific proposed change.

*§ 42.108   Institution of Inter Partes Review*

Section 42.108(d): *Required stipulation for efficiency.* Under the proposed revisions, this section would provide that the Office will not institute an IPR when a petitioner intends to pursue invalidity challenges under §§ 102 or 103 in other venues, such as district court or the U.S. International Trade Commission. This proposed section would further require the Petitioner to file the stipulation in any other venue where it is litigating with the patent owner. The Office's view is that this requirement would promote fairness and efficiency by channeling similar patent challenges to a single forum and ensure that IPRs ''should generally serve as a complete substitute for at least some phase of the litigation.'' S. Rep. No. 110–259 at 72.

Section 42.108(e): *Claims found valid in prior proceedings.* This proposed section addresses circumstances in which institution of an IPR proceeding may be unwarranted, because the claim (or an independent claim from which it depends) has already been adequately reviewed through both examination at the USPTO and in another proceeding before a district court, the USPTO, or the U.S. International Trade Commission. The rule would extend to dependent claims where the independent claim on which each depends has already received scrutiny, because if an independent claim satisfies §§ 102 and 103, each dependent claim necessarily does as well. Proposed subparagraphs (1) and (2) provide circumstances in which an IPR may not be instituted because the claims were previously found not invalid by a district court. Proposed subparagraph (3) provides circumstances in which an IPR may not be instituted because the claims were previously found not invalid by the U.S. International Trade Commission. Proposed subparagraphs (4) and (5) provide circumstances in which an IPR may not be instituted because the claims were previously found patentable or not unpatentable by the USPTO in an IPR, post-grant review, or reexamination proceeding. Proposed subparagraph (6) provides the circumstances in which an IPR may not be instituted because the Federal Circuit reversed a decision finding the claims invalid or unpatentable. In the circumstances described in this paragraph, the USPTO believes that the claims at issue have received adequate scrutiny in a prior proceeding and it is not in the interests of the patent system or the economy for the USPTO to conduct another review of the claims. Any parties accused of infringing the claims would have a full opportunity to challenge validity again in district court.

Section 42.108(f): *Parallel Litigation.* This proposed section addresses circumstances in which a parallel proceeding is likely to reach a decision regarding the validity of the patent under §§ 102 or 103 before the final written decision.

Section 42.108(g): *Institution in extraordinary circumstances.* This proposed section would allow institution, notwithstanding paragraphs (d), (e), or (f), based on extraordinary circumstances. To ensure the predictability of institution decisions, this proposed section identifies specific examples of potential extraordinary circumstances and examples of circumstances that are not extraordinary.

**Rulemaking Considerations**

*A. Administrative Procedure Act:* The changes proposed by this rulemaking involve rules of agency practice and procedure, and/or interpretive rules, and do not require notice-and-comment rulemaking. *See Perez* v. *Mortg. Bankers Ass'n,* 575 U.S. 92, 97, 101 (2015) (explaining that interpretive rules ''advise the public of the agency's construction of the statutes and rules which it administers'' and do not require notice and comment when issued or amended); *Cooper Techs. Co.* v. *Dudas,* 536 F.3d 1330, 1336–37 (Fed. Cir. 2008) (stating that 5 U.S.C. 553, and thus 35 U.S.C. 2(b)(2)(B), do not require notice-and-comment rulemaking for ''interpretative rules, general statements of policy, or rules of agency

organization, procedure, or practice''); *In re Chestek PLLC,* 92 F.4th 1105, 1110 (Fed. Cir. 2024) (noting that rule changes that ''do[ ] not alter the substantive standards by which the USPTO evaluates trademark applications'' are procedural in nature and, thus, ''exempted from notice-and-comment rulemaking''); and *JEM Broadcasting Co.* v. *F.C.C.,* 22 F.3d 320, 328 (D.C. Cir. 1994) (''[T]he 'critical feature' of the procedural exception [in 5 U.S.C. 553(b)(A)] 'is that it covers agency actions that do not themselves alter the rights or interests of parties, although [they] may alter the manner in which the parties present themselves or their viewpoints to the agency.' '' (quoting *Batterton* v. *Marshall,* 648 F.2d 694, 707 (D.C. Cir. 1980))).

*B. Regulatory Flexibility Act:* As prior notice and an opportunity for public comment are not required pursuant to 5 U.S.C. 553 or any other law, neither a Regulatory Flexibility Act analysis nor a certification under the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*) is required. *See* 5 U.S.C. 603. Nonetheless, for the reasons set forth below, the Senior Counsel for Regulatory and Legislative Affairs, Office of General Law, USPTO, has certified to the Chief Counsel for Advocacy of the Small Business Administration that changes set forth in this notice of proposed rulemaking (''proposed rule'') would not have a significant economic impact on a substantial number of small entities. The changes in this proposed rule would modify the rules of practice before the Patent Trial and Appeal Board (Board) to focus *inter partes* review (IPR) proceedings on patent claims that have not previously been challenged in litigation or where prior litigation was resolved at an early stage. The USPTO does not collect or maintain statistics on the size status of IPR petitioners or patent owners whose patents are being challenged in an IPR proceeding, which would be required to determine the number of small entities that will be affected by the rule. However, in a study on patent litigation and USPTO trials, the USPTO found that roughly 30% of the patents challenged in an IPR proceeding were granted to owners who were small entities.[1] The study did not specifically address the percentage of petitioners to an IPR proceeding that were small entities. But, using the average overall percentage of patent applicants that file as a small (or micro) entity, which is approximately 25%, the USPTO estimates that the percentage of small entities filing petitions is lower than the percentage of small entities whose patents are currently subject to challenge in an IPR. Accordingly, this proposed rule would likely benefit a greater percentage of small entities in the IPR framework. The changes made by this rulemaking are largely procedural as they address the circumstances when the Board will institute an IPR proceeding, and the only new requirement being imposed on impacted entities is the submission of a stipulation by IPR petitioners, which results in only minimal additional cost burden. The USPTO estimates that the overall impact to all impacted small entities would be a net reduction in their overall litigation costs as a result of limiting the avenues for serial and parallel patentability challenges. For the foregoing reasons, the changes in this proposed rule will not have a significant economic impact on a substantial number of small entities.

*C. Executive Order 12866 (Regulatory Planning and Review):* This rulemaking been determined to be not significant under Executive Order 12866 (Sept. 30, 1993).

*D. Executive Order 13563 (Improving Regulation and Regulatory Review):* The Office has complied with Executive Order 13563 (Jan. 18, 2011). Specifically, and as discussed above, the Office has, to the extent feasible and applicable: (1) made a reasoned determination that the benefits justify the costs of the rule; (2) tailored the rule to impose the least burden on society consistent with obtaining the regulatory objectives; (3) selected a regulatory approach that maximizes net benefits; (4) specified performance objectives; (5) identified and assessed available alternatives; (6) involved the public in an open exchange of information and perspectives among experts in relevant disciplines, affected stakeholders in the private sector, and the public as a whole, and provided online access to the rulemaking docket; (7) attempted to promote coordination, simplification, and harmonization across Government agencies and identified goals designed to promote innovation; (8) considered approaches that reduce burdens and maintain flexibility and freedom of choice for the public; and (9) ensured the objectivity of scientific and technological information and processes.

*E. Executive Order 14192 (Deregulation):* This regulation is not an Executive Order 14192 regulatory action because it has been determined to be not significant under Executive Order 12866.

*E. Executive Order 13132 (Federalism):* This rulemaking pertains strictly to federal agency procedures and does not contain policies with federalism implications sufficient to warrant preparation of a Federalism Assessment under Executive Order 13132 (Aug. 4, 1999).

*F. Executive Order 13175 (Tribal Consultation):* This rulemaking will not: (1) have substantial direct effects on one or more Indian tribes, (2) impose substantial direct compliance costs on Indian tribal governments, or (3) preempt tribal law. Therefore, a tribal summary impact statement is not required under Executive Order 13175 (Nov. 6, 2000).

*G. Executive Order 13211 (Energy Effects):* This rulemaking is not a significant energy action under Executive Order 13211 because this rulemaking is not likely to have a significant adverse effect on the supply, distribution, or use of energy. Therefore, a Statement of Energy Effects is not required under Executive Order 13211 (May 18, 2001).

*H. Executive Order 12988 (Civil Justice Reform):* This rulemaking meets applicable standards to minimize litigation, eliminate ambiguity, and reduce burden as set forth in sections 3(a) and 3(b)(2) of Executive Order 12988 (Feb. 5, 1996).

*I. Executive Order 13045 (Protection of Children):* This rulemaking does not concern an environmental risk to health or safety that may disproportionately affect children under Executive Order 13045 (Apr. 21, 1997).

*J. Executive Order 12630 (Taking of Private Property):* This rulemaking will not affect a taking of private property or otherwise have taking implications under Executive Order 12630 (Mar. 15, 1988).

*K. Congressional Review Act:* Under the Congressional Review Act provisions of the Small Business Regulatory Enforcement Fairness Act of 1996 (5 U.S.C. 801 *et seq.*), prior to issuing any final rule, the USPTO will submit a report containing the final rule and other required information to the United States Senate, the United States House of Representatives, and the Comptroller General of the Government Accountability Office. The changes in this NPRM are not expected to result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or the ability of United States-based enterprises to compete with foreign-based enterprises in domestic and export markets. Therefore, this

---

[1] U.S. Pat. and Trademark Off., Patent Litigation and USPTO Trials: Implications for Patent Examination and Quality 36 (January 2015).

**48340** Federal Register / Vol. 90, No. 199 / Friday, October 17, 2025 / Proposed Rules

rulemaking is not a ''major rule'' as defined in 5 U.S.C. 804(2).

*L. Unfunded Mandates Reform Act of 1995:* The changes set forth in this NPRM do not involve a Federal intergovernmental mandate that will result in the expenditure by State, local, and tribal governments, in the aggregate, of $100 million (as adjusted) or more in any one year, or a Federal private sector mandate that will result in the expenditure by the private sector of $100 million (as adjusted) or more in any one year, and will not significantly or uniquely affect small governments. Therefore, no actions are necessary under the provisions of the Unfunded Mandates Reform Act of 1995. *See* 2 U.S.C. 1501 *et seq.*

*M. National Environmental Policy Act of 1969:* This rulemaking will not have any effect on the quality of the environment and is thus categorically excluded from review under the National Environmental Policy Act of 1969. *See* 42 U.S.C. 4321 *et seq.*

*N. National Technology Transfer and Advancement Act of 1995:* The requirements of section 12(d) of the National Technology Transfer and Advancement Act of 1995 (15 U.S.C. 272 note) are not applicable because this rulemaking does not contain provisions that involve the use of technical standards.

*O. Paperwork Reduction Act of 1995:* The Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*) (PRA) requires that the USPTO consider the impact of paperwork and other information collection burdens imposed on the public. This rulemaking proposes changes to the PTAB rules of practice for *Inter Partes* Review (IPR) which would result in new information collection requirements that are subject to review and approval by OMB. The provisions pertaining to IPRs have been reviewed and previously approved by OMB under control number 0651–0069 (Patent Review and Derivation Proceedings). This proposed rule modifies the rule of practice for IPR to provide that an *inter partes* review would not be instituted or maintained unless each petitioner files a stipulation with the Board stating that if a trial is instituted, the petitioner and any real party in interest or privy of the petitioner will not raise grounds of invalidity or unpatentability with respect to the challenged patent under 35 U.S.C. 102 or 103 in any other proceeding.

This proposed rule would impact the burden estimates provided in the information collection for the item ''Petitions for *Inter Partes* Review.'' The USPTO currently estimates that 1,300 petitions are submitted annually and 120 hours are needed to file each petition. The USPTO is proposing to add one hour to the estimated time to file to account for the preparation and submission of the stipulation proposed in this rule, thus increasing the time estimate for this petition to 121 hours. Therefore, the USPTO calculates that this information collection's estimated annual burden will increase by 1,300 hours and $581,100 in hourly cost. This rulemaking does not change any fees associated with filing an IPR, and therefore there is no change to the estimated annual non-hourly cost burden in this information collection. A summary of the proposed revisions to the information collection follows.

As required by the PRA, the USPTO has submitted this proposed revision to the information collection to OMB for its review.

**Burden Data for the Petition for Inter Partes Review**

Provided below is a summary of the current estimates and proposed revisions to the burden data for Petition for *Inter Partes* Review.

*Current Estimates*

*Estimated Number of Annual Responses:* 1,300.
*Estimated Time for Response:* 120 hours.
*Estimated Annual Respondent Burden Hours:* 156,000.
*Estimated Hourly Cost Burden Rate:*[2] $447.
*Estimated Annual Respondent Hourly Cost Burden:* $69,732,000.

*Proposed Revisions*

*Estimated Number of Annual Responses:* 1,300.
*Estimated Time for Response:* 121 hours.
*Estimated Annual Respondent Burden Hours:* 157,300.
*Estimated Hourly Cost Burden Rate:*[3] $447.
*Estimated Annual Respondent Hourly Cost Burden:* $70,313,100.

As a result of this proposed rule, the annual respondent burden hours for the Petition for *Inter Partes* Review will increase by 1,300 hours from 156,000 hours to 157,300 hours. Likewise, the non-hourly cost burden will also increase by $581,100 from $69,732,000 to $70,313,100.

**Proposed Total Burden Data for the Information Collection**

*OMB Control Number:* 0651–0069.
*Title of Collection:* Patent Review and Derivation Proceedings.
*Type of Review:* Revision of a currently approved information collection.
*Summary:* This collection covers information submitted by the public to petition the Board to initiate an *inter partes* review, post-grant review, derivation proceeding, and the transitional program for covered business method patents, as well as any responses to such petitions, and the filing of any motions, replies, oppositions, and other actions, after a review/proceeding has been instituted.
*Method of Collection:* Applicants must submit the information electronically using Patent Trial and Appeal Case Tracking System filing system. Parties may seek authorization to submit a filing by means other than electronic filing pursuant to 42 CFR 42.6(b)(2).
*Forms:* None.
*Affected Public:* Private sector.
*Respondent's Obligation:* Required to obtain or retain benefits.
*Frequency:* On occasion.
*Estimated Number of Annual Respondents:* 7,897 respondents.
*Estimated Number of Annual Responses:* 11,947 responses.
*Estimated Time per Response:* The USPTO estimates that the responses in this information collection will take the public approximately 18 minutes (0.3 hours) to 170 hours to complete. This includes the time to gather the necessary information, create the document, and submit the completed item to the USPTO.
*Estimated Total Annual Respondent Burden Hours:* 591,930 hours.
*Estimated Total Annual Respondent Hourly Cost Burden:* $264,592,710.
*Estimated Total Annual Respondent Non-Hourly Cost Burden:* $76,099,956. There are no capital start-up costs, maintenance costs, recordkeeping costs, or postage costs associated with this information collection. However, the USPTO estimates that the total annual non-hourly cost burden for this information collection, in the form of filing fees, is $76,099,956.

The USPTO is soliciting public comments to:

(a) Evaluate whether the collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

---

[2] 2023 Report of the Economic Survey, published by the Committee on Economics of Legal Practice of the American Intellectual Property Law Association; pg. F–41. The USPTO uses the average billing rate for intellectual property work in all firms which is $447 per hour (*https://www.aipla.org/home/news-publications/economic-survey*).

[3] Ibid.

(b) Evaluate the accuracy of the agency's estimate of the burden of the collection of information, including the validity of the methodology and assumptions used;

(c) Enhance the quality, utility, and clarity of the information to be collected; and

(d) Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology (*e.g.,* permitting electronic submission of responses).

Please submit comments on the new collection of information requirements at: *www.reginfo.gov/public/do/PRAMain.* Find this particular information collection by selecting ''Currently under Review'' or by using the search function and entering the title of the collection. Please send a copy of your comments to the USPTO using the method described under **ADDRESSES** at the beginning of this document. All comments submitted in response to this proposed rule are a matter of public record. The USPTO will include or summarize the comments received in the request to the OMB to approve the new information collection requirements.

Notwithstanding any other provision of law, no person is required to respond to, nor shall any person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the PRA unless that collection of information displays a currently valid OMB control number.

*P. E-Government Act Compliance:* The USPTO is committed to compliance with the E-Government Act to promote the use of the internet and other information technologies, to provide increased opportunities for citizen access to Government information and services, and for other purposes.

### List of Subjects in 37 CFR Part 42

Administrative practice and procedure, Inventions and patents, Lawyers.

For the reasons set forth in the preamble, the Office proposes to amend 37 CFR part 42 as follows:

### PART 42—TRIAL PRACTICE BEFORE THE PATENT TRIAL AND APPEAL BOARD

■ 1. The authority citation for 37 CFR part 42 continues to read as follows:

**Authority:** 35 U.S.C. 2(b)(2), 3, 6, 21, 23, 41, 134, 135, 143, 153, 311, 312, 314, 316, 318, 321–326, 328; Pub. L. 112–29, 125 Stat. 284; and Pub. L. 112–274, 126 Stat. 2456.

\* \* \* \* \*

■ 2. Amend § 42.108 by adding paragraphs (d) through (e) to read as follows:

### § 42.108   Institution of inter partes review.

\* \* \* \* \*

(d) *Required stipulation for efficiency.* Inter partes review shall not be instituted or maintained unless each petitioner files a stipulation with the Board and any other tribunal where it is litigating or later litigates regarding the challenged patent, stating that if a trial is instituted, the petitioner and any real party in interest or privy of the petitioner will not raise grounds of invalidity or unpatentability with respect to the challenged patent under 35 U.S.C. 102 or 103 in any other proceeding.

(e) *Claims found valid in prior proceedings.* Inter partes review shall not be instituted or maintained if a challenged claim or an independent claim from which a challenged claim depends:

(1) *U.S. District Court Trial*—Was found not invalid under 35 U.S.C. 102 or 103 by a district court or jury following a bench trial or jury trial in a decision or verdict that has not been vacated or reversed in relevant part;

(2) *U.S. District Court Summary Judgment*—Was found not invalid by a district court in a summary judgement decision finding no dispute of material fact under 35 U.S.C. 102 or 103 that has not been vacated or reversed in relevant part;

(3) *U.S. International Trade Commission*—Was found not invalid under 35 U.S.C. 102 or 103 in initial or final determination of the U.S International Trade Commission that has not been vacated or reversed in relevant part;

(4) *PTAB Final Written Decision*—Was found not unpatentable in a final written decision of the Board under 35 U.S.C. 318(a) or 328(a) that has not been vacated or reversed;

(5) *Ex Parte Reexamination*—Was found patentable in an office action or decision by the Board following a reexamination request filed under Chapter 30 of Title 35 United States Code by someone other than the patent owner, the patent owner's real party in interest or privy; or

(6) *Federal Circuit*—Was found unpatentable or invalid under 35 U.S.C. 102 or 103 in a decision, but that decision was reversed in relevant part by the U.S. Court of Appeals for the Federal Circuit.

(f) *Parallel Litigation—Inter partes* review shall not be instituted or maintained if, more likely than not, any of the following will occur, with respect to a challenged claim or an independent claim from which a challenged claim depends, before the due date for the final written decision pursuant to 35 U.S.C. 316(a)(11):

(1) *U.S. District Court*—A district court trial in which a party challenges the patent under 35 U.S.C. 102 or 103;

(2) *U.S. International Trade Commission*—an initial or final determination of the U.S. International Trade Commission with respect to 35 U.S.C. 102 or 103; or

(3) *PTAB Final Written Decision*—issuance of a final written decision by the Board under 35 U.S.C. 318(a) or 328(a).

(g) *Institution in extraordinary circumstances.* If a panel of the Board determines that extraordinary circumstances warrant institution notwithstanding paragraphs (d), (e), or (f) the Panel shall refer to matter to the Director who may personally institute *inter partes* review. Extraordinary circumstances may include a determination by the Director that the prior challenge barring institution was initiated in bad faith, *e.g.,* for the purpose of preventing future challenges, or that the prior challenge is rendered irrelevant in view of a substantial change in a statute or precedent of the Supreme Court of the United States. Unusual and extraordinary circumstances shall not include new or additional prior art, new expert testimony, new caselaw (except as provided above) or new legal argument, or a prior challenger's failure to appeal. Neither the Director nor the Board shall waive the requirements of paragraphs (d), (e), or (f) of this section except as provided in this paragraph. Frivolous or abusive petitions under this paragraph may be appropriately sanctioned, including with an award of attorneys' fees.

**John A. Squires,**

*Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

[FR Doc. 2025–19580 Filed 10–16–25; 8:45 am]

**BILLING CODE 3510–16–P**